IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SELAM SELAH,

                           Plaintiff,

          v.

BRIAN FISCHER, Commissioner;
*et al.,*

                           Defendants.

_____

Civil Action No.
9:09-CV-1363 (GLS/DEP)

APPEARANCES:

FOR PLAINTIFF:                    OF COUNSEL:

SELAM SELAH, *Pro Se*
08-B-2266
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ERIC SCHNEIDERMAN           CHRISTOPHER HALL, ESQ.
Office of the Attorney General   Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Selam Selah, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his rights under the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. In his amended complaint, plaintiff alleges that, *inter alia*, defendants failed to accommodate his religious beliefs and permit him to practice his chosen religion, while members of other religious sects are treated more favorably.

Currently pending before the court is a motion for judgment on the pleadings based on the failure of plaintiff's amended complaint to allege sufficient facts to plausibly implicate the personal involvement of each named defendant. For the reasons set forth below, I recommend that defendants' motion be granted in part and denied in part.

I.    <u>BACKGROUND</u>

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Am. Compl. (Dkt. No. 84). He subscribes to the religious tenets of the Ethiopian Orthodox Christian faith, which is also

known as Ethiopian-Egyptian Coptic Orthodox Christianity. Am. Compl. (Dkt. No. 84) at ¶ 21. Plaintiff's religion has many similarities to Rastafarianism with the exception that its teachings acknowledge Jesus Christ as the Messiah, whereas Rastafarians do not. Am. Compl. (Dkt. No. 84) at ¶ 21.

Plaintiff's amended complaint in this action centers upon defendants' alleged failure to recognize and accommodate his religion. Plaintiff maintains that this failure is manifested in various ways, including through defendants' (1) refusal to permit him to possess and display head gear, a prayer shawl, a prayer girdle, a prayer rug, and other appropriate religious attire and artifacts consistent with his beliefs; (2) refusal to allow members of his sect to observe and commemorate seven specified major holy days and nine minor holy days; (3) denial of the opportunity to participate in congregate religious services and education; (4) failure to provide meals consistent with old testament dietary laws; (5) failure to permit the plaintiff and his fellow Ethiopian Orthodox Christians to wear beards and dreadlocks or braids; and (6) refusal to exempt him from work on Saturdays and Sundays. *See generally* Am. Compl. (Dkt. No. 84). Plaintiff maintains that, despite his complaints to various prison officials

within the DOCCS, his requests for accommodations have not been honored, while Rastafarians are provided all or most of the accommodations now sought. Am. Compl. (Dkt. No. 84) at ¶¶ 27-28.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 7, 2009. Compl. (Dkt. No. 1). Since inception of the action, the court has been besieged with numerous and oftentimes repetitive serial filings by the plaintiff requesting various forms of relief, resulting in a procedural history that, to date, includes 164 docket entries spanning over the three years during which the case has been pending. In addition to his motion for leave to proceed *in forma pauperis*, Dkt. No. 2, that history includes ten motions by the plaintiff for a temporary restraining order and/or preliminary injunction, four requests for the appointment of *pro bono* counsel, one application for certification of the matter as a class action, and five letters requesting the court to make prompt action or to settle. Dkt. Nos. 5, 6, 58, 69, 72, 74, 86, 109, 115, 122, 127, 131, 135, 154, 155, 158, 159, 164.

On September 14, 2011, with leave of court, plaintiff filed an amended complaint, which is the currently operative pleading in the case.[1]

_____

[1]   Both the signed version of plaintiff's amended complaint and the proposed pleading proffered by Selah in support of his motion for leave to file that

4

Am. Compl. (Dkt. No. 84). Plaintiff's complaint, as amended, names as

defendants the DOCCS Commissioner, Brian Fischer; the DOCCS

Rastafarian Religious Advisor, Abuna Foxe; the DOCCS Director of

Ministerial Services, Cheryl Morris; the Director of the DOCCS Inmate

Grievance Program, Karen Bellamy; the Superintendent at Gouverneur,

Justin Taylor; the Senior Chaplain at Gouverneur, T. Killian; and the

DOCCS Director of Ministerial and Family Services, Mark Leonard, all of

whom are sued in both their individual and official capacities. *Id*. Plaintiff's

complaint asserts three claims, including a violation of his right to freely

exercise his chosen religion, as guaranteed under the First Amendment;

the denial of equal protection, in violation of the Fourteenth Amendment;

and infringement of his statutory rights under the RLUIPA. *Id*. Plaintiff

seeks various forms of monetary, declaratory, and injunctive relief. *Id*.

In lieu of an answer, defendants filed a motion to dismiss plaintiff's

original complaint for failure to state a claim pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure. Dkt. No. 111. That motion was

granted to the extent that defendant DOCCS was dismissed, but was

--------------------

amended complaint appear to be lacking page two and the corresponding allegations
included within paragraphs three through a portion of paragraph seven.  Dkt. Nos. 68-1
and 84.

otherwise denied. Dkt. Nos. 125, 126.

On September 17, 2012, defendants moved for the entry of judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 136. In support of the defendants' current motion, they argue that plaintiff's claims should be dismissed because the amended complaint fails to allege facts plausibly suggesting the personal involvement of each named defendant. Defs.' Memo. of Law (Dkt. No. 136-1). Plaintiff has since submitted a response in opposition to defendants' motion. Dkt. Nos. 143, 146.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Legal Standard Governing Motions for Judgment on the Pleadings

Defendants move to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When analyzing a Rule

12(c) motion, the court applies the same standard as that applicable to a motion under Rule 12(b)(6). *See, e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant,

whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

## B. Personal Involvement

In their motion, defendants argue that plaintiff's amended complaint fails to identify the "specific misconduct of each defendant, the date or approximate date of their supposed misconduct, where the misconduct occurred, and the nexus between the misconduct and plaintiff's civil and/or constitutional rights." Defs.' Memo. of Law (Dkt. No. 136-1) at 5. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under [section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991), and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and the actions of that particular defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

Throughout plaintiff's amended complaint, he refers to the defendants collectively, and alleges that, as a group, defendants have discriminated against him and prevented him from his exercising his religious rights. *See generally* Am. Compl. (Dkt. No. 84). A careful review of that pleading reveals that it includes fifteen allegations against the

defendants as a group. Am. Compl. (Dkt. No. 84) at ¶¶ 11-14, 17-20, 28, 31, 39, 42. Such generalized allegations are insufficient to state a claim against an individual defendant. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[T]o state a civil rights claim under [section] 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under [section] 1983."). "This pleading standard applies even to *pro se* litigants." *Praileau v. Fischer*, No. 12-CV-1261, 2013 WL 936447, at *6 (N.D.N.Y. Mar. 8, 2013) (Suddaby, J., *adopting report and recommendation by* Treece, M.J.).

In this case, the fifteen allegations against the defendants as a group accuse them of (1) denying plaintiff his ability to enjoy special feasts, Am. Compl. (Dkt. No. 84) at ¶ 8; (2) exercising coercion to compel plaintiff to accept the other Rastafarian religion, *id.* at ¶ 17; (3) applying pressure on plaintiff to modify his behavior, *id.* at ¶ 18; (4) failing to demonstrate to plaintiff the reasoning behind their policies, *id.* at ¶ 19; (5) treating plaintiff unfairly, *id.* at ¶ 20; and (6) subjecting plaintiff to religious discrimination and deprivations, *id.* at ¶ 31. Although these allegations

may be sufficient to establish a violation of plaintiff's religious rights under the Constitution and the RLUIPA generally, because they do not specify the action taken by each defendant to effectuate these violations, they are not sufficient to allege the personal involvement of any defendants. Accordingly, I will turn to the remaining, specific allegations involving each defendant independently to determine whether plaintiff's amended complaint has sufficiently pleaded his or her personal involvement.

1.    Defendant Fischer

Defendant Fischer is mentioned four times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶¶ 29, 31, 32, 34. Specifically, the pleading alleges that (1) he intends to "keep Defendant[ ] . . . Fischer . . . as [a] named defendant[ ] in this case," *id.* at ¶ 32; (2) the prison staff at the Orleans Correctional Facility report to defendant Fischer, *id.* at ¶ 34; (3) defendant Fischer, as the commissioner of the DOCCS, owed plaintiff "a duty of care" related to "[d]efendant Fischer's responsibility for directing policies," *id.* at ¶ 29; and (4) defendant Fischer has "consulted with and [has] relied on Defendant Abuna Foxe to assist [him] in authoring and promulgating [DOCCS] rules, directives, regulations and policies concerning Rastafarianism and decisions about Ethiopian/Egyptian Coptic

12

Orthodox Christian doctrine, practices, tradition, beliefs, and observances
. . . that the Defendants, the [DOCCS] and its agents, have used to
subject the Plaintiff . . . to religious discrimination and deprivations," *id.* at
¶ 31.

The first two allegations are insufficient to plausibly suggest that
defendant Fischer was personally involved in any conduct that might have
violated plaintiff's religious rights. Both allegations are immaterial to
determining whether defendant Fischer undertook any action towards
plaintiff. The third allegation is similarly insufficient because it suggests
that defendant Fischer is liable in this action based solely on his capacity
as the DOCCS commissioner, a circumstance that standing alone, is not
sufficient to support a finding of personal involvement. *See Vega v. Artus*,
610 F. Supp. 2d 185, 195 (N.D.N.Y. 2009) (Suddaby, J.) ("[T]he doctrine
of respondeat superior is inapplicable in [a section 1983] action.").

The fourth allegation made by the plaintiff against defendant
Fischer, however, stands on different footing. In it, plaintiff alleges that
defendant Fischer created policies that caused him harm. Am. Compl.
(Dkt. No. 84) at ¶ 31. Although plaintiff has not precisely stated which
policies defendant Fischer created and how these policies were acted

upon to cause him harm, I remain mindful of the court's duty at this early juncture to liberally construe plaintiff's complaint. Accordingly, taking all of the plaintiff's allegations into consideration, I find that plaintiff's amended complaint can be construed to allege that defendant Fischer is responsible for promulgating policies that prevented him from (1) possessing and displaying head gear, a prayer shawl, a prayer girdle, a prayer rug, and other appropriate religious attire and artifacts; (2) observing and commemorating holy days; (3) participating in congregate religious services and education; (4) eating meals consistent with old testament dietary laws; (5) wearing beards and dreadlocks or braids; and (6) being exempt from work on Saturdays and Sundays. *See generally* Am. Compl. (Dkt. No. 84). For these reasons, I recommend that defendants' motion for judgment on the pleadings be denied as it relates to the claims asserted against defendant Fischer.

2.    Defendant Morris

Defendant Morris is mentioned four times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶¶ 2, 30, 31, 32. Specifically, the pleading alleges that (1) he seeks to add defendant Morris to the complaint, *id.* at ¶ 2; (2) defendant Morris is employed as the DOCCS

Director of Ministerial Services and is "supposed to enable inmates through the action of paid staff and community volunteers to practice their religious faith and fulfill their religious obligations," *id.* at ¶ 30; (3) defendant Morris "consulted with and [has] relied on Defendant Abuna Foxe to assist [her] in authoring and promulgating [DOCCS] rules, directives, regulations and policies concerning Rastafarianism and decisions about Ethiopian/Egyptian Coptic Orthodox Christian doctrine, practices, tradition, beliefs and observances . . . that the Defendants, the [DOCCS] and its agents, have used to subject the Plaintiff . . . to religious discrimination and deprivations," *id.* at ¶ 31; and (4) he again desires to add defendant Morris to the complaint, *id.* at ¶ 32.

The first, second, and fourth allegations are plainly insufficient to plausibly suggest that defendant Morris was personally involved in any conduct that might have violated plaintiff's religious rights. All three are immaterial to determining whether defendant Morris undertook any action toward the plaintiff.

Plaintiff's third allegation against defendant Morris, however, suffices at this stage to plausibly suggest that he was personally involved in the violations at issue, based upon plaintiff's allegation that he caused his

alleged harm by contributing to the creation and maintenance of the DOCCS policies and practices that allegedly violate his rights. For the same reasons that I found this allegation sufficient to plausibly suggest defendant Fischer's personal involvement, I find it is enough to satisfy the personal involvement pleading requirement as against defendant Morris. Accordingly, I recommend that defendants' motion for judgment on the pleadings be denied as it relates to the claims asserted against defendant Morris.

### 3.   Defendant Foxe

Defendant Foxe is mentioned five times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶¶ 22, 31, 34. Specifically, the pleading alleges that (1) defendant Foxe founded the Ba Beta church of Haile Selassie I sect of Rastafarians, *id.* at ¶ 22; (2) defendant Foxe is not an expert on plaintiff's religion, *id.* at ¶ 31; (3) defendant Foxe was excommunicated from the Ethiopian Orthodox Church, *id.*; (4) defendant Foxe assisted defendants Fischer and Morris in creating the policies and regulations allegedly responsible for violating plaintiff's rights when they consulted with her, *id.*; and (5) defendant Foxe has the authority to approve the requests made by Orleans Correctional Facility staff as they

relate to plaintiff's religious accommodations, *id.* at ¶ 34.

The first three allegations are insufficient to plausibly suggest that defendant Foxe was personally involved in any conduct that might have violated plaintiff's religious rights, and are immaterial to determining whether defendant Foxe undertook any action towards plaintiff. The fifth allegation is also legally insufficient because it suggests that defendant Foxe is liable based solely on his capacity as a supervisor, a circumstances that is insufficient to support a section 1983 claim. *Vega*, 610 F. Supp. 2d at 195.

Plaintiff's fourth allegation against defendant Foxe, however, is sufficient to support a showing of personal involvement, because it alleges that she contributed to creating and maintaining the DOCCS policies and practices that, plaintiff alleges, violate his rights. For the same reasons that I have found this allegation sufficient to plausibly suggest defendant Fischer's personal involvement, I similarly find it is enough to satisfy the personal involvement requirement as against defendant Foxe. Accordingly, I recommend that defendants' motion for judgment on the pleadings be denied as it relates to the claims asserted against defendant Foxe.

### 4.   Defendant Taylor

Defendant Taylor is mentioned three times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶ 32. Specifically, the pleading alleges that (1) defendant Leonard relied on defendant Taylor to continue his discrimination, *id.*; (2) plaintiff would like to keep defendant Taylor as a defendant, *id.*; and (3) defendant Taylor did not afford plaintiff "any meaningful or effective relief and redress to his requests for religious accom[m]odations nor to assist [p]laintiff to resolve the grievances and complaints about the religious discrimination addressed to [him]," *id.*

The first two allegations are insufficient to plausibly suggest that defendant Taylor was personally involved in any conduct that might have violated plaintiff's religious rights. Both of those allegations are clearly immaterial to determining whether defendant Taylor undertook any action towards plaintiff.

Plaintiff's third allegation against defendant Taylor, however, does support a finding that his personal involvement in the violations at issue has been plausibly stated. Although courts in this circuit have long held that the mere allegation that a plaintiff sent a grievance to the superintendent of a prison facility is not enough to plausibly suggest that

superintendent's personal involvement in an alleged constitutional violation, the Second Circuit appears to have held otherwise in its recent decision in *Grullon v. City of New Haven*, -- F.3d ----, No. 11-3184, 2013 WL 3023464 (2d Cir. June 19, 2013). In that case, the court reversed a district court's decision to deny the plaintiff leave to amend his complaint where it was alleged that he sent the prison warden a grievance and the warden failed to respond. The court explained that,

> [a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference – if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at the appropriate address and by appropriate means – that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained.

*Grullon*, 2013 WL 3023464, at *7.

In this case, plaintiff's amended complaint alleges that he sent grievances and complaints to defendant Taylor, but defendant Taylor failed to respond. Am. Compl. (Dkt. No. 84) at ¶ 32. In light of *Grullon*, I am compelled to find that this is sufficient to satisfy the personal involvement pleading requirement. Accordingly, I recommend that defendants' motion for judgment on the pleadings be denied as it relates

to the claims asserted against defendant Taylor.

### 5.    Defendant Killian

Defendant Killian is mentioned three times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶ 32. In it, he alleges that (1) defendant Killian relied on defendant Leonard for his religious discrimination, *id.*; (2) defendant Killian did not afford plaintiff "meaningful or effective relief and redress to his requests" for religious accommodations and also did not assist plaintiff to "resolve the grievance and complaints about the religious discrimination addressed to [defendant Killian]," *id.*; and (3) he would like to keep defendant Killian as a defendant, *id*. In addition, plaintiff has attached materials to his opposition that include the official DOCCS job description for a chaplain,[2] which explains that they are

> assigned the responsibility for coordination of the total facility religious program and related administrative tasks . . . . The Coordinating Chaplains are particularly responsible for *meeting the needs of inmates who ascribe to less well-known religious faiths.*

---

[2]      "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) (citations omitted).

Plf.'s Resp. Exhs. (Dkt. No. 143-1) at 2 (emphasis added).

The first and third allegations made against defendant Killian are insufficient to plausibly suggest that he was personally involved in any conduct that might have violated plaintiff's religious rights. Both allegations are immaterial to determining whether defendant Killian undertook any action towards plaintiff.

Plaintiff's second allegation and the evidence submitted in opposition to the pending motion, however, together are sufficient because he alleges defendant Killian did not accommodate his religious requests, despite the fact that he was aware of the requests and is responsible for accommodating prisoners' religious needs.[3] Accordingly, I recommend that defendant's motion for judgment on the pleadings be denied as it relates to the claims asserted against defendant Killian.

### 6.    Defendant Father Mantzouris

Defendant Mantzouris is referenced four times in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶¶ 2, 31, 32. Specifically, the pleading alleges that (1) plaintiff wishes to add defendant Mantzouris as a

---

[3]    Plaintiff has also submitted evidence that defendant Killian received and responded to plaintiff's requests for accommodations, and that Killian instructed plaintiff to communicate his requests directly to him. Plf.'s Suppl. Resp. (Dkt. No. 146) at 8.

party to the action, *id.* at ¶ 2; (2) defendant Mantzouris is not an expert and other defendants relied on him for representing plaintiff's religion, *id.* at ¶ 31; (3) defendant Mantzouris came to plaintiff "under the guise of being or serving as an employee assistant and confessor father to hear [p]laintiff's requests for religious accom[m]odations, grievances, and spiritual or sacramental needs, but; [sic] instead has turned his position and authority over [p]laintiff into a trick and/or some form or another as a trap, like a Trojan Horse, to continue the religious discrimination and deprivations against the [p]laintiff," *id.*; and (4) again that plaintiff would like to add Mantzouris as a defendant, *id.* at ¶ 32.

The first two allegations are insufficient to plausibly suggest that defendant Mantzouris was personally involved in any conduct that might have violated plaintiff's religious rights. Both allegations are immaterial to determining whether defendant Fischer undertook any action towards plaintiff. The fourth allegation is similarly insufficient because in it plaintiff merely restates his desire to add defendant Mantzouris to be a defendant.

Plaintiff's third allegation against defendant Mantzouris is also insufficient. It does not allege any specific conduct taken by defendant Mantzouris to trick the plaintiff. Plaintiff also does not explain how

defendant Mantzouris continued his religious discrimination and deprivations against him. These statements are impermissibly vague, and plaintiff does not provide any other allegations in support of his claims against this defendant. Accordingly, I recommend that defendants' motion for judgment on the pleadings be granted as it relates to the claims asserted against defendant Mantzouris.

### 7. Defendant Bellamy

Defendant Bellamy's name is mentioned only once in plaintiff's amended complaint. Plaintiff states that he "respectfully seeks to keep Defendant[ ] . . . Karen Bellamy . . . as named defendant[ ] in this case." Am. Compl. (Dkt. No. 84) at ¶ 32. However, there are no specific allegations made against her. Plaintiff's complaint lists Bellamy as a defendant, but does not include any allegations against her other than to state that the plaintiff would like her to remain a defendant. This is insufficient to allege personal involvement. *See Dorsey v. Fisher*, No. 09-CV-1011, 2010 WL 2008966, at *7 (N.D.N.Y. May 19, 2010) (Sharpe, J.) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." (quotation marks omitted)). Accordingly, I recommend that

defendants' motion for judgment on the pleadings be granted as it relates to the claims asserted against defendant Bellamy.

### 8. Defendant Leonard

Defendant Leonard is mentioned twice in plaintiff's amended complaint. Am. Compl. (Dkt. No. 84) at ¶ 32. Specifically, the pleading alleges that (1) some of defendants relied on defendant Leonard for their religious discrimination, *id.*, and (2) plaintiff would like to keep defendant Leonard as a defendant, *id*. Both of these allegations are insufficient to plausibly suggest that defendant Leonard was personally involved in any conduct that might have violated plaintiff's religious rights. Both allegations are immaterial to determining whether defendant Leonard undertook any action towards plaintiff. It is not enough to allege that defendant Leonard did something to allow other defendants to rely on him, without specifying his conduct that led to the reliance. Accordingly, I recommend that defendant's motion for judgment on the pleadings be granted as it relates to the claims asserted against defendant Leonard.

C.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where the court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). In this instance, given the procedural history of this action, the court must determine whether plaintiff is entitled to the benefit of this general rule.

Plaintiff has already been granted leave to file one amended complaint. Discovery in this case has not yet begun, despite the fact the case is already over three-and-a-half years old. Accordingly, I recommend that plaintiff not be permitted leave to further amend his complaint[4].

---

[4]    The many efforts by the plaintiff to secure interim relief, including two requests for a preliminary injunction filed on April 25, and June 12, 2013, suggest his interest in bringing this case to a resolution, and I advise against permitting further amendment given the delay that would inevitably result.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Defendants' motion challenges the sufficiency of plaintiff's amended complaint, arguing that it fails to allege facts plausibly suggesting the personal involvement of each defendant in any of the alleged violations of plaintiff's religious rights. After carefully reviewing plaintiff's most recent pleading, I find that it alleges sufficient facts to plausibly suggest the personal involvement of defendants Fischer, Morris, Foxe, Taylor, and Killian, in the claimed violations, but not that of defendants Mantzouris, Bellamy, and Leonard.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for a judgment on the pleadings (Dkt. No. 136-1) be GRANTED, in part, and to the extent that plaintiff's claims against defendants Mantzouris, Bellamy, and Leonard, be DISMISSED, without leave to replead, but that defendants' motion otherwise be DENIED, leaving intact plaintiff's claims against defendants Fischer, Morris, Foxe, Taylor, and Killian.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 86 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      August 2, 2013
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet Keith,
Otisville Medical Department, Defendants.
No. 91 CIV. 8135.

Jan. 24, 1994.
MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional Institution
in Otisville, New York ("Otisville"), filed this action for
injunctive relief and damages based upon alleged
violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII, and
upon violations of various laws and/or regulations
governing prison administration.[FN1] The Complaint named
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules of
Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure, for failure to state a claim upon which relief

can be granted. Rule 12(c) provides:

After the pleadings are closed but within such time as
not to delay the trial, any party may move for judgment
on the pleadings. If, on a motion for judgment on the
pleadings, matters outside the pleadings are presented to
and not excluded by the court, the motion shall be
treated as one for summary judgment and disposed of as
provided in Rule 56, and all parties shall be given
reasonable opportunity to present all material made
pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state a
claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. See Ad–Hoc Comm. of
the Baruch Black & Hispanic Alumni Ass'n v. Bernard M.
Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see
also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, Federal Practice and Procedure ¶ 1367, at 515–16
(1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. See California Motor Transp.
v. Trucking Unlimited, 404 U.S. 508, 515 (1972).
Moreover, "consideration is limited to the factual
allegations in [the] amended complaint, which are
accepted as true, to documents attached to the complaint
as an exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to documents
either in plaintiff['s] possession or of which plaintiff[ ] had
knowledge and relied on in bringing suit." Brass v.
American Film Technologies, Inc., 987 F.2d 142 (2d
Cir.1993); accord Allen v. Westpoint–Pepperell, Inc., 945
F.2d 40, 44 (2d Cir.1991); Cortec Indus., Inc. v. Sum
Holding L.P., 949 F.2d 42, 47–48 (2d Cir.1991), cert.
denied, 112 S.Ct. 1561 (1992); Frazier v. General Elec.
Co., 930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to state a
claim only if the Court finds beyond a doubt that "plaintiff
can prove no set of facts" to support the claim that
plaintiff is entitled to relief. See Conley v. Gibson, 355
U.S. 41, 45–46 (1957).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

*2 Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

*3 At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

(Cite as: 1994 WL 23069 (S.D.N.Y.))

mentioned by name any of the individual named Defendants. Defs' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have

participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna on 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.

Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
William R. PRAILEAU, Plaintiff,
v.
Brian FISCHER, Comm'r, NY DOCCS; Michael
Ketterer, Parole Officer, Div. of Parole; Amy E.
Burock, Assist. D.A., Schenectady Cnty.; Polly Hoye,
Schenectady Cnty. Court Judge; Karen Drago,
Schenectady Cnty. Court Judge; New York State; and
Schenectady Cnty., Defendants.
No. 1:12–CV–1261 (GTS/RFT).

March 8, 2013.

**Background:** Former prisoner, appearing pro se, filed
civil action against state and municipal employees and
entities for breach of contract, conversion, unjust
enrichment, estoppel, false imprisonment, and fraud,
arising from his entry of agreement regarding conditions
of his post-release supervision that was allegedly invalid
due to his improper indictment.

**Holdings:** The District Court, Glenn T. Suddaby, J.,
adopting report and recommendation of Randolph F.
Treece, United States Magistrate Judge, held that:

(1) diversity jurisdiction was lacking, and
(2) federal question jurisdiction was lacking.

Dismissed.

West Headnotes

**[1] United States Magistrates 394 ☞ 27**

394 United States Magistrates

394k24 Review and Supervision by District Court
394k27 k. De Novo Hearing or Review. Most
Cited Cases

District court will ordinarily refuse to consider
evidentiary material that could have been, but was not,
presented to the magistrate judge in the first instance. 28
U.S.C.A. § 636(b)(1).

**[2] United States Magistrates 394 ☞ 25**

394 United States Magistrates

394k24 Review and Supervision by District Court
394k25 k. Proceedings for Review; Objection to
Report. Most Cited Cases
**United States Magistrates 394 ☞ 29**

394 United States Magistrates

394k24 Review and Supervision by District Court
394k29 k. Clear or Manifest Error. Most Cited
Cases

When an objection to a magistrate judge's report and
recommendation merely reiterates the same arguments
made by the objecting party in its original papers
submitted to the magistrate judge, district court subjects
that portion of the report and recommendation challenged
by those arguments to only a clear error review. Fed.Rules
Civ.Proc.Rule 72(b), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ☞ 852.1**

170A Federal Civil Procedure

170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak852 Effect of Amendment
170Ak852.1 k. In General. Most Cited
Cases

Typically, the filing of an amended complaint
following the filing of a motion to dismiss the initial
complaint moots the motion to dismiss.

**[4] United States Magistrates 394 ☞ 25**

394 United States Magistrates

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

394k24 Review and Supervision by District Court
394k25 k. Proceedings for Review; Objection to Report. Most Cited Cases

The filing of an amended complaint does not moot a magistrate judge's pending report and recommendation that identifies pleading defects in the original complaint when those defects remain in the that amended complaint.

**[5] United States Magistrates 394 ☞ 25**

394 United States Magistrates

394k24 Review and Supervision by District Court
394k25 k. Proceedings for Review; Objection to Report. Most Cited Cases

To the extent that plaintiff's amended complaint corrects the pleading deficiencies identified in the magistrate judge's report and recommendation, the report and recommendation has been rendered moot; however, to the extent that plaintiff's amended complaint does not correct the pleading deficiencies identified in the report and recommendation, the report and recommendation is still applicable, especially where the plaintiff has, in addition to filing an amended complaint, filed objections to the report and recommendation.

**[6] United States Magistrates 394 ☞ 25**

394 United States Magistrates

394k24 Review and Supervision by District Court
394k25 k. Proceedings for Review; Objection to Report. Most Cited Cases

Regardless of whether a pro se plaintiff's amended complaint has mooted a magistrate judge's report and recommendation challenging the pleading sufficiency of the pro se plaintiff's original complaint, a district court retains the authority, and indeed the duty, to sua sponte review the pleading sufficiency of that amended complaint.

**[7] Federal Courts 170B ☞ 5**

170B Federal Courts

170BI Jurisdiction and Powers in General

170BI(A) In General
170Bk3 Jurisdiction in General; Nature and Source
170Bk5 k. Limited Jurisdiction; Dependent on Constitution or Statutes. Most Cited Cases

Federal courts are courts of limited jurisdiction.

**[8] Federal Courts 170B ☞ 30**

170B Federal Courts

170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk29 Objections to Jurisdiction, Determination and Waiver
170Bk30 k. Power and Duty of Court. Most Cited Cases

A claim may be properly dismissed for lack of subject matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.

**[9] Federal Courts 170B ☞ 33**

170B Federal Courts

170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk29 Objections to Jurisdiction, Determination and Waiver
170Bk33 k. Affidavits and Evidence in General. Most Cited Cases

A district court may look to evidence outside of the pleadings when deciding whether to dismiss a claim for lack of subject matter jurisdiction.

**[10] Federal Courts 170B ☞ 34**

170B Federal Courts

170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk29 Objections to Jurisdiction, Determination and Waiver
170Bk34 k. Presumptions and Burden of Proof. Most Cited Cases

When district court decides whether to dismiss a claim for lack of subject matter jurisdiction, all

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

ambiguities must be resolved and inferences drawn in favor of the plaintiff.

**[11]** Federal Courts 170B ⛬ 33

170B Federal Courts

    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk29 Objections to Jurisdiction, Determination and Waiver
          170Bk33 k. Affidavits and Evidence in General. Most Cited Cases

**Federal Courts 170B** ⛬ 34

170B Federal Courts

    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk29 Objections to Jurisdiction, Determination and Waiver
          170Bk34 k. Presumptions and Burden of Proof. Most Cited Cases

    Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.

**[12]** Federal Civil Procedure 170A ⛬ 1771

170A Federal Civil Procedure

    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)3 Pleading, Defects In, in General
          170Ak1771 k. In General. Most Cited Cases

**Federal Civil Procedure 170A** ⛬ 1772

170A Federal Civil Procedure

    170AXI Dismissal
      170AXI(B) Involuntary Dismissal
        170AXI(B)3 Pleading, Defects In, in General
          170Ak1772 k. Insufficiency in General. Most Cited Cases

    A dismissal for failure to state a claim upon which relief can be granted can be based on one or both of two grounds: (1) a challenge to the sufficiency of the pleading

under the notice pleading rule, or (2) a challenge to the legal cognizability of the claim. Fed.Rules Civ.Proc.Rules 8(a)(2), 12(b)(6), 28 U.S.C.A.

**[13]** Federal Civil Procedure 170A ⛬ 673

170A Federal Civil Procedure

    170AVII Pleadings and Motions
      170AVII(B) Complaint
        170AVII(B)1 In General
          170Ak673 k. Claim for Relief in General. Most Cited Cases

    The notice pleading rule requires that the pleading contain a statement that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Fed.Rules Civ.Proc.Rule 8(a)(2), 28 U.S.C.A.

**[14]** Federal Civil Procedure 170A ⛬ 657.5(2)

170A Federal Civil Procedure

    170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
        170Ak654 Construction
          170Ak657.5 Pro Se or Lay Pleadings
            170Ak657.5(2) k. Civil Rights Proceedings in General. Most Cited Cases

    While the special leniency afforded to pro se civil rights litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relieve a pro se plaintiff of the duty to satisfy the pleading standards under the federal rules of civil procedure. Fed.Rules Civ.Proc.Rules 8, 10, 12, 28 U.S.C.A.

**[15]** Federal Civil Procedure 170A ⛬ 657.5(1)

170A Federal Civil Procedure

    170AVII Pleadings and Motions
      170AVII(A) Pleadings in General
        170Ak654 Construction
          170Ak657.5 Pro Se or Lay Pleadings
            170Ak657.5(1) k. In General. Most Cited Cases

    When a plaintiff is proceeding pro se, all normal rules of pleading are not absolutely suspended. Fed.Rules

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

Civ.Proc.Rules 8, 10, 12, 28 U.S.C.A.

**[16] United States Magistrates 394 ☞ 25**

394 United States Magistrates

    394k24 Review and Supervision by District Court
       394k25 k. Proceedings for Review; Objection to Report. Most Cited Cases
    Magistrate judge's report and recommendation was not rendered moot by filing of amended complaint by pro se plaintiff, where amended complaint repeated same two pleading defects identified in original complaint, and plaintiff failed to specifically object to either of magistrate judge's findings regarding those two pleading defects.

**[17] Civil Rights 78 ☞ 1098**

78 Civil Rights

    78I Rights Protected and Discrimination Prohibited in General
       78k1089 Prisons
        78k1098 k. Other Particular Cases and Contexts. Most Cited Cases
    Former prisoner's theory of civil rights liability against state and municipality, on grounds that his name with trademark symbol referred to corporation while his name with copyright symbol referred to him as individual, was so irrational as to be frivolous.

**[18] Federal Courts 170B ☞ 30**

170B Federal Courts

    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk29 Objections to Jurisdiction, Determination and Waiver
        170Bk30 k. Power and Duty of Court. Most Cited Cases

**Federal Courts 170B ☞ 542**

170B Federal Courts

    170BVIII Courts of Appeals
      170BVIII(B) Appellate Jurisdiction and Procedure

in General
       170Bk542 k. Determination of Question of Jurisdiction. Most Cited Cases
    A federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction.

**[19] Federal Courts 170B ☞ 30**

170B Federal Courts

    170BI Jurisdiction and Powers in General
      170BI(A) In General
        170Bk29 Objections to Jurisdiction, Determination and Waiver
        170Bk30 k. Power and Duty of Court. Most Cited Cases
    When subject matter jurisdiction of the district court is lacking, dismissal is mandatory.

**[20] Federal Courts 170B ☞ 282**

170B Federal Courts

    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(B) Controversies Between Citizens of Different States
        170Bk282 k. What Constitutes Citizenship; Domicile and Residence Distinguished; Change of Domicile. Most Cited Cases
    For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: (1) physical presence in a state and (2) the intent to make the state a home. 28 U.S.C.A. § 1332(a).

**[21] Federal Courts 170B ☞ 317**

170B Federal Courts

    170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(D) Evidence
       170Bk317 k. Presumptions and Burden of Proof. Most Cited Cases
    The party seeking to invoke the district court's

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

jurisdiction bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete. 28 U.S.C.A. § 1332(a).

**[22] Federal Courts 170B** ☞ **287**

170B Federal Courts

170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
170BIV(B) Controversies Between Citizens of Different States
170Bk286 Coplaintiffs and Codefendants
170Bk287 k. Particular Cases. Most Cited Cases

Diversity jurisdiction was lacking over former prisoner's civil rights action against state and municipal employees and entities for breach of contract, conversion, unjust enrichment, estoppel, false imprisonment, and fraud, where all parties resided in same state. 28 U.S.C.A. § 1332(a).

**[23] Civil Rights 78** ☞ **1088(5)**

78 Civil Rights

78I Rights Protected and Discrimination Prohibited in General
78k1088 Police, Investigative, or Law Enforcement Activities
78k1088(5) k. Criminal Prosecutions. Most Cited Cases

In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus; a claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. 42 U.S.C.A. § 1983.

**[24] Civil Rights 78** ☞ **1088(5)**

78 Civil Rights

78I Rights Protected and Discrimination Prohibited in General
78k1088 Police, Investigative, or Law Enforcement Activities
78k1088(5) k. Criminal Prosecutions. Most Cited Cases

**Civil Rights 78** ☞ **1096**

78 Civil Rights

78I Rights Protected and Discrimination Prohibited in General
78k1089 Prisons
78k1096 k. Release. Most Cited Cases

Former prisoner's § 1983 civil rights attacks on conditions of his supervised release and on his underlying indictment were barred by *Heck*, where prisoner's conviction or sentence had not been overturned. 42 U.S.C.A. § 1983.

William R. Praileau, Schenectady, NY, pro se.

### *MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this civil action filed *pro se* by William R. Praileau ("Plaintiff") against the six above-captioned state and municipal employees and entities ("Defendants"), are (1) United States Magistrate Judge Randolph F. Treece's Report–Recommendation recommending that Plaintiff's Complaint be dismissed, (2) Plaintiff's Objections to the Report–Recommendation, and (3) Plaintiff's Amended Complaint. (Dkt. Nos. 3, 5, 6.) For the reasons set forth below, Magistrate Judge Treece's Report–Recommendation is accepted and adopted, and Plaintiff's Amended Complaint is *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B), Fed.R.Civ.P. 12(h)(3), Fed.R.Civ.P. 12(b)(6), and Fed.R.Civ.P. 12(b)(1).

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, in his original Complaint, Plaintiff asserts a claim for breach-of-contract against Defendants, under

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

the Court's jurisdiction to entertain diversity-of-citizenship suits (pursuant to 28 U.S.C. § 1332), arising from his entry (under duress) into a May 2012 agreement regarding his conditions of his post-release supervision, which is defunct or invalid because it stems from a March 2007 indictment that was improper. (*See generally* Dkt. No. 1.)

**B. Magistrate Judge Treece's Report–Recommendation**

Generally, in his Report–Recommendation, Magistrate Judge Treece recommends that Plaintiff's Complaint be dismissed for each of the following two alternative reasons: (1) Plaintiff has not met his burden of showing that diversity-of-citizenship jurisdiction exists under 28 U.S.C. § 1332, because Defendants are residents of New York State, and both Plaintiff's mailing address and his approved release address are in Schenectady, New York; (2) in any event, no federal-question jurisdiction exists under 28 U.S.C. § 1331, because the only conceivable claim that he could have (consistent with the factual allegations of his Complaint) would arise under 42 U.S.C. § 1983, but is barred by the fact that he has failed to show that this conviction or sentence has been overturned, as required by *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). (*See generally* Dkt. No. 3.)

**C. Plaintiff's Objections**

Generally, in his Objections, Plaintiff asserts the following six arguments: (1) his Complaint cannot be dismissed because it was never properly filed by the Clerk of the Court in accordance with by Fed.R.Civ.P. 3; (2) his Complaint cannot be dismissed because the Court has "corrupt[ed]" his name, given that the nominal plaintiff in this action—"William R. Praileau" is "an artificial person" or "corporation," while that plaintiff's "authorized representative" or "attorney in fact"—"William R. Praileau©"—is "a natural person" of "flesh and blood"; (3) his Complaint cannot be dismissed because, by designating him as "pro se" in this action, the Court has denied his right to effective assistance of counsel; (4) his Complaint cannot be dismissed because he never consented Magistrate Judge Treece's participation in this proceeding; (5) Magistrate Judge Treece's finding regarding Plaintiff's underlying sentence in this action is improper because it was based, in part, on information

found on the internet at http://nysdoccslookup.doccs.ny.gov; and (6) Magistrate Judge Treece's Report–Recommendation is moot, given that Plaintiff is filing an Amended Complaint. (*See generally* Dkt. No. 5.)

**D. Plaintiff's Amended Complaint**

**\*2** Three days after filing his Objections to Magistrate Judge Treece's Report–Recommendation, Plaintiff filed an Amended Complaint in this action. (Dkt. No. 6.) Four days after that, Plaintiff filed exhibits to his Amended Complaint. (Dkt. No. 7.)

Construed with the utmost of special liberality, Plaintiff's Complaint and exhibits continues to assert claims against Defendants arising from his entry (under duress) into a May 2012 agreement regarding his conditions of his post-release supervision, which is defunct or invalid because it stems from a March 2007 indictment that was improper. (Dkt. Nos. 6, 7.) The only real differences between Plaintiff's original Complaint and his Amended Complaint are as follows: (1) in addition to asserting a breach-of-contract claim against Defendants, Plaintiff's Amended Complaint asserts five other claims (specifically, conversion, unjust enrichment, estoppel, false imprisonment, and fraud); (2) in addition to invoking the Court's diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332, Plaintiff invokes the Court's federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and "15 U.S.C. § 1692e(1)(4)"; (3) Plaintiff lengthens his pleading, inserting an introductory paragraph, "Venue" section, a "Parties" section, and a "Brief History of the Case" section; and (4) Plaintiff expands on his theory that, pursuant to the Uniform Commercial Code, the nominal plaintiff in this action—"William R. Praileau™" (a/k/a "William Robert Best")—is "a corporation distinct from [his] authorized representative"—"William R. Praileau©"—who "does NOT reside within the *federal* United States." (*Id.* [emphasis in original].)

**II. GOVERNING LEGAL STANDARDS**

**A. Standard Governing Review of a Report–Recommendation**

[1] When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

*novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[FN1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN2]

[2] When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2), (3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[FN4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [FN5]

**\*3** After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

**B. Circumstances Under Which Report–Recommendation Challenging Pleading Sufficiency of Complaint Is Not Mooted by Filing of Amended Complaint**

[3] Granted, Fed.R.Civ.P. 15 gives a plaintiff an absolute right to file an amended complaint under the circumstances presented in this case Fed.R.Civ.P. 15(a)(1). Furthermore, the filing of an amended Complaint supersedes a plaintiff's original complaint in all respects. N.D.N.Y. L.R. 7.1(a)(4); *see also Int'l Controls Corp. v.*

*Vesco,* 556 F.2d 665, 668 (2d Cir.1977); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). As a result, "[t]ypically, the filing of an amended complaint following the filing of a motion to dismiss the initial complaint moots the motion to dismiss." *Johnson v. Brown,* 11–CV–0188, 2011 WL 4565923, at *2 (N.D.N.Y. Sept. 29, 2011) (Homer, M.J.) (internal quotation marks and citations omitted).

[4][5] However, the filing of an amended complaint does not moot a pending report-recommendation that identifies pleading defects in the original complaint when those defects remain in the that amended complaint. As this Court has previously explained,

> to the extent that Plaintiff's Amended Complaint corrects the pleading deficiencies identified in the Report–Recommendation, the Report–Recommendation has been rendered moot. However, to the extent that Plaintiff's Amended Complaint does not correct the pleading deficiencies identified in the Report–Recommendation, the Report–Recommendation is still applicable.

*Gasaway v. Williams,* 11–CV–0549, 2012 WL 264611 at *4 (N.D.N.Y. Jan. 30, 2012) (Suddaby, J.). This is especially the case where the plaintiff has, in addition to filing an amended complaint, filed objections to the report-recommendation. *See L.C. 1 v. Delaware,* 07–CV–0675, 2009 WL 3806335, at *1 (D.Del. Nov. 13, 2009) ("On Plaintiffs' view, if their Objections to the R & R are sustained, Plaintiffs get to proceed on their Complaint; if their Objections are overruled, they get to proceed on their Amended Complaint—even if it suffers from the same problems as the original Complaint-and require the defendants, the magistrate judge, and the district court judge to begin anew with assessing the sufficiency of the Amended Complaint.").

A contrary interpretation of Fed.R.Civ.P. 15 would conflict with Fed.R.Civ.P. 1, which requires that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Proc. 1; *accord, L.C. 1,* 2009 WL 3806335, at *1 (rejecting same mootness argument on same ground).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

In addition, such a contrary interpretation would be inconsistent with Fed.R.Civ.P. 72, which provides a process by which a party may object to a ruling of a magistrate judge and obtain review by a district court judge. Fed.R.Civ.P. 72(b); *see also L.C. 1,* 2009 WL 3806335, at *1, n. 1 ("[N]othing about Rule 15(a) (or any other Rule) permits Plaintiffs to require the Court to evaluate the sufficiency of their original Complaint (on review of Objections to an R & R recommending the dismissal of such Complaint) and, thereafter, upon receiving a Court determination that the Complaint is deficient, tell the Court its evaluation was inconsequential because the original Complaint had been replaced by an Amended Complaint at the time of the Court's review.").

**\*4** Finally, such a contrary interpretation would frustrate the purpose of the Magistrates Act. *Cf. Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638–39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992).

**C. Authority to *Sua Sponte* Review *Pro Se* Pleadings**

[6] In any event, regardless of whether a *pro se* plaintiff's amended complaint has mooted a magistrate judge's report-recommendation challenging the pleading sufficiency of the *pro se* plaintiff's original complaint, a district court retains the authority—and indeed the duty—to *sua sponte* review the pleading sufficiency of that amended complaint.

This is because, as correctly noted by Magistrate Judge Treece in his Report–Recommendation, Section 1915 directs, in pertinent part, that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Moreover, Fed.R.Civ.P. 12 directs, in pertinent part, that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action." Fed.R.Civ.P. 12(h)(3).

**D. Standard Governing Dismissal for Lack of Subject–Matter Jurisdiction**

[7][8][9][10][11] "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000). A district court may look to evidence outside of the pleadings when deciding whether to dismiss a claim for lack of subject-matter jurisdiction. *Makarova,* 201 F.3d at 113. When a court decides whether to dismiss a claim for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (citing *Makarova,* 201 F.3d at 113). However, the plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 [2d Cir.1996] ).

**E. Standard Governing Dismissal for Failure to State a Claim**

[12] It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

**\*5** Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

pleading standard established by Fed.R.Civ.P. 8(a)(2).

[13] On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified,

the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*6** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

[14][15] This pleading standard applies even to *pro*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

*se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [FN6] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [FN7] Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted]. [FN8]

### III. ANALYSIS

[16] The Court begins by finding that Magistrate Judge Treece's Report–Recommendation has not been mooted by the filing of Plaintiff's Amended Complaint, because the Amended Complaint repeats the two pleading defects identified in the original Complaint. *See, supra,* Parts I.A., I.B., I.D. and II.B. of this Decision and Order. Moreover, the Court finds that, despite filing numerous Objections, Plaintiff has failed to specifically object to either of Magistrate Judge Treece's findings regarding those two pleading defects. *See, supra,* Parts I.B. and I.C. of this Decision and Order. As a result, the Court need review the Report–Recommendation for only clear-error review. *See, supra,* Part II.A. of this Decision and Order.

*7 After carefully reviewing all of the papers in this action, the Court concludes that Magistrate Judge Treece's Report–Recommendation is correct in all respects. (Dkt. No. 3.) Magistrate Judge Treece employed the proper standards, accurately construed Plaintiff's claim and allegations, and reasonably applied the law to that claim and those allegations. (*Id.*) Indeed, Magistrate Judge Treece's thorough Report–Recommendation would survive even *de novo* review. As a result, the Court adopts the Report–Recommendation in its entirety for the reasons stated therein.

Of course, this does not end the Court's analysis, because, as described above in Part I.D. of this Decision and Order, Plaintiff's Amended Complaint expands somewhat on his original Complaint. As explained above in Part I.C. of this Decision and Order, the Court is able to

*sua sponte* review the new claims and factual allegations contained in Plaintiff's Amended Complaint, under 28 U.S.C. § 1915(e)(2)(B), Fed.R.Civ.P. 12(h)(3). The Court will now do so.

With regard to Plaintiff's new claims of conversion, unjust enrichment, estoppel, false imprisonment, and fraud, each of those state law claims is subject to the same lack-of-diversity-jurisdiction challenge leveled by Magistrate Judge Treece. Furthermore, to the extent those claims could be construed as constitutional violations under 42 U.S.C. § 1983, they are subject to the same *Heck v. Humphrey* challenge leveled by Magistrate Judge Treece.

With regard to Plaintiff's attempt to invoke the Court's federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and "15 U.S.C. § 1692e(1)(4)"—presumably meaning 15 U.S.C. § 1692e(1), (4)—that attempt fails because he has failed to allege facts plausibly suggesting that a violation of 15 U.S.C. § 1692e(1), (4) occurred. Those two subsections prohibit a "debt collector" from "false[ly] represent[ing] or impl[ying] that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof," and "represent [ing] or impl[ying] that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(1), (4).

[17] With regard to Plaintiff's identity theory of liability (i.e., that he is entitled to relief because his name with a trademark symbol refers to a corporation while his name with a copyright symbol refers to him as an individual), that theory is so irrational as to be frivolous. Indeed, the Court notes that similar such theories have previously been so recognized. *See, e.g., People v. Parenteau,* 09–CV–0681, 2009 WL 2256924, at *3–4 (N.D.N.Y. filed July 28, 2009) (Suddaby, J.) (rejecting as frivolous defendant's argument that the State of New York had no authority to charge him with criminal personation because his name "Ed Parenteau" is a "fraud[ ]" and/or "fiction [ ]," his true name being "ed-george"); *Henderson*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

*v. Clover Field,* 08–CV–0504, Order (N.D.N.Y. Aug. 27, 2008) (Lowe, M.J.) (rejecting for filing documents submitted by *pro se* plaintiff, named Shawndell Lamar Henderson, who had annotated Court's Orders by writing word "VOID" on them and asserting that his name "Shawn Henderson" was a "straw man").

**\*8** Finally, the Court's conclusions that Plaintiff's Amended Complaint must be dismissed are also supported by (1) the doctrine of sovereign immunity under the Eleventh Amendment, (2) the doctrine of absolute immunity under 42 U.S.C. § 1983, (3) the doctrine of qualified immunity under 42 U.S.C. § 1983, (4) limitations on municipal liability pursuant to *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and (5) Plaintiff's failure to allege facts plausibly suggesting that the amount in controversy exceeds the jurisdictional amount of $75,000 pursuant to 28 U.S.C. § 1332.

For all of these numerous reasons, Plaintiff's Amended Complaint is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report–Recommendation (Dkt. No. 3) is **ACCEPTED** and **ADOPTED;** and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is *sua sponte* **DISMISSED** in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B), Fed.R.Civ.P. 12(h)(3), Fed.R.Civ.P. 12(b)(6), and Fed.R.Civ.P. 12(b)(1).

*The Court certifies, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from this Decision and Order would not be taken in good faith.*

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

The Clerk has sent to the Court a civil rights Complaint brought by *pro se* Plaintiff William R. Praileau. Praileau has not paid the filing fee and instead seeks permission to proceed with this matter *in forma pauperis*

(IFP). Dkt. No. 2, IFP App.

## I. DISCUSSION

### A. Application to Proceed *In Forma Pauperis*

After reviewing Plaintiff's IFP Application, we find that he may properly proceed *in forma pauperis.*

### B. Allegations Contained in the Complaint

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action.

Plaintiff asserts that he brings this action for breach of contract under the Court's jurisdiction to entertain diversity of citizen suits, pursuant to 28 U.S.C. § 1332. In his Complaint, he asserts that, under duress, he entered into a contract with the Defendants; a copy of this document is attached to the Complaint and appears to be a Post Release Supervision Form, dated May 4, 2012, that details the conditions of his post-release supervision. Praileau further claims that the document/contract is defunct or invalid because it stems from an indictment handed down on March 28, 2007, which Praileau claims was improper and against the New York State constitution. Praileau contends that his entire incarceration was therefore unlawful, as is any supervisory or conditional release.

[18][19] It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its own jurisdiction, thus, we must first examine whether diversity jurisdiction exists. *City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 512, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *see also Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte* ). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. 226, 229, 58 S.Ct. 601, 82

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

L.Ed. 764 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

**\*9** For diversity jurisdiction to exist, the matter in controversy must exceed $75,000 and must be between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

[20] For diversity jurisdiction purposes, an individual's citizenship is the individual's domicile, which is determined on the basis of two elements: "(1) physical presence in a state and (2) the intent to make the state a home." *See Zimak Co. v. Kaplan,* 1999 WL 38256, at \*2 (S.D.N.Y. Jan. 28, 1999) (quoting 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 102.34[2] (3d ed. 1998)).

Upon information and belief, Praileau was received into custody of the New York State Department of Corrections and Community Supervision on December 26, 2007, following a conviction in Schenectady County for Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Assault in the Second Degree, for which he received a determinate sentence of five years incarceration. *See* DOCCS Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.gov (information for Inmate William Praileau, DIN 07–A–7059) (last visited August 22, 2012). On May 7, 2012, Praileau was conditionally released on parole from Great Meadow Correctional Facility. *Id.* In support of his contention that diversity exists, Praileau states that he is a "corporation and a citizen of the United States" and that the Defendants

are "THE STATE OF NEW YORK and public officers/agents thereof, with its principal place of business in Albany, New York." Compl. at ¶ 1(a) & (b). Praileau provides the Court with a post office box address located in Schenectady, New York, which is also the address indicated at the end of his Complaint. According to the Conditions of Release Form issued by the New York State Division of Parole, which was executed on May 4, 2012, and attached to the Complaint, the approved release address for Mr. Praileau is at the Schenectady City Mission, 425 Hamilton Street, Schenectady, New York 12305.

[21][22] The party seeking to invoke the court's jurisdiction bears the burden of "demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co., Inc. v. SCS Commc'n, Inc.,* 251 F.3d 315, 322–23 (2d Cir.2001) (citations omitted). Based on the above, it is clear that all parties reside, for purposes of diversity jurisdiction, in the same state. Because Plaintiff has failed to establish the basis for the Court's subject matter jurisdiction, dismissal is mandated.

**\*10** Nevertheless, in light of his *pro se* status, we also consider whether Plaintiff can bring this action pursuant to the Court's authority to hear issues arising under the jurisdiction set forth in 28 U.S.C. § 1331. In this respect, we review whether Praileau can bring this action under 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (stating that " § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

By his Complaint, Plaintiff attacks the validity of his parole by attacking the validity of the indictment which ultimately brought about his conviction and sentence. Thus, it appears that the issues raised in the Complaint relate to the sentence Plaintiff is currently serving.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

[23] The Supreme Court has held that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

[24] Plaintiff's attacks on both the conditions of his supervised release and on the underlying indictment are barred under § 1983 because he has fails to show that this conviction or sentence has been overturned. See Duamutef v. Morris, 956 F.Supp. 1112, 1115–18 (S.D.N.Y.1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under Heck where the plaintiff's underlying conviction had not been overturned). Unless, and until, the conviction is challenged and adjudicated in Plaintiff's favor, Plaintiff's claims are barred under Heck and we would recommend dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as the claim lacks an arguable basis in law.

**WHEREFORE,** it is hereby

**\*11 ORDERED,** that Plaintiff's *In Forma Pauperis* Application (Dkt. No. 2) is **granted; and** it is further

**RECOMMENDED,** that Plaintiff's cause of action for breach of contract and attack on the validity of his parole conditions and indictment should be dismissed for lack of subject matter jurisdiction; and it is further

**RECOMMENDED,** in the alternative, that pursuant to the Court's review under 28 U.S.C. § 1915, to the extent Plaintiff is bringing a civil rights action challenging his parole conditions and indictment, such claim should be

dismissed as barred by Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); and it is further

**ORDERED,** that the Clerk serve a copy of this Report–Recommendation and Order on Plaintiff by certified mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.* Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir.1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, & 6(a).

August 23, 2012

FN1. See also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

FN2. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted];

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

*Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

FN3. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

FN4. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 728 F.Supp.2d 168, 172 & n. 3 (N.D.N.Y.2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

FN5. *See also Batista v. Walker,* 94–CV–2826,

1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

FN6. *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN7. *See Rosendale v. Brusie,* 374 Fed.Appx. 195, 196 (2d Cir.2010) ("[A]lthough the courts remain obligated to construe a pro se complaint liberally, ... the complaint must contain sufficient factual allegations to meet the plausibility standard."); *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

FN8. It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. at 1965, n. 3 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. 99) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)

(Cite as: 2013 WL 936447 (N.D.N.Y.))

*See* *Rusyniak, 629 F.Supp.2d at 214 & n. 35*
(explaining holding in *Erickson* ).

N.D.N.Y.,2013.

Praileau v. Fischer
--- F.Supp.2d ----, 2013 WL 936447 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

**H**

Only the Westlaw citation is currently available.
United States Court of Appeals,

Second Circuit.
Raymond GRULLON, Plaintiff–Appellant,
v.
CITY OF NEW HAVEN, New Haven C.C.C. Facility,
and Warden, New Haven C.C.C. Facility,
Defendants–Appellees.
Docket No. 11–3184.

Argued: Jan. 11, 2013.
Decided: June 19, 2013.

**Background:** Pretrial detainee brought pro se § 1983 action against warden of city correctional center in his individual capacity, challenging jail conditions. The United States District Court for the District of Connecticut, Stefan R. Underhill, J., 2011 WL 2680843, dismissed for failure to state claim. Detainee appealed.

**Holding:** The Court of Appeals, Kearse, Circuit Judge, held that District Court erred in dismissing claim with prejudice and without leave to file amended complaint.

Affirmed in part, vacated in part, and remanded.

West Headnotes

**[1] Civil Rights 78 ☞ 1335**

78 Civil Rights

   78III Federal Remedies in General
    78k1334 Persons Liable in General
     78k1335 k. In general. Most Cited Cases
   To establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation. 42 U.S.C.A. § 1983.

**[2] Federal Courts 170B ☞ 794**

170B Federal Courts

   170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
     170BVIII(K)3 Presumptions
      170Bk794 k. Pleadings. Most Cited Cases
   In reviewing the dismissal of a complaint for failure to state a claim on which relief can be granted, the Court of Appeals views the facts alleged in the complaint in the light most favorable to the appellant, construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Courts 170B ☞ 794**

170B Federal Courts

   170BVIII Courts of Appeals
    170BVIII(K) Scope, Standards, and Extent
     170BVIII(K)3 Presumptions
      170Bk794 k. Pleadings. Most Cited Cases
   In reviewing the dismissal of a claim for failure to state a claim, the Court of Appeals must interpret the factual allegations of a pro se complaint to raise the strongest arguments that they suggest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Civil Rights 78 ☞ 1395(7)**

78 Civil Rights

   78III Federal Remedies in General
    78k1392 Pleading
     78k1395 Particular Causes of Action
      78k1395(7) k. Prisons and jails; probation and parole. Most Cited Cases
   Pretrial detainee's § 1983 complaint failed to sufficiently allege warden's personal involvement in or awareness of health, safety, and communications issues

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

raised by pretrial detainee, and thus failed to state cause of action for constitutional violations against warden in his individual capacity, where there were no such direct allegations, and there were no indirect allegations sufficient to permit inference that warden had acted or failed to act in ways that would subject him to personal liability. 42 U.S.C.A. § 1983.

**[5] Federal Civil Procedure 170A**  833

170A Federal Civil Procedure

    170AVII Pleadings
        170AVII(E) Amendments
            170Ak833 k. Liberality in allowing amendment. Most Cited Cases
    When a party requests leave to amend his complaint, permission generally should be freely granted. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A**  1838

170A Federal Civil Procedure

    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
        170AXI(B)5 Proceedings
            170Ak1837 Effect
                170Ak1838 k. Pleading over. Most Cited Cases
    A pro se complaint should not be dismissed without the district court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A**  851

170A Federal Civil Procedure

    170AVII Pleadings
        170AVII(E) Amendments
            170Ak851 k. Form and sufficiency of amendment; futility. Most Cited Cases
    Leave to amend may properly be denied if the amendment would be futile. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

**[8] Federal Courts 170B**  817

170B Federal Courts

    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)4 Discretion of Lower Court
            170Bk817 k. Parties; pleading. Most Cited Cases
    A district court's denial of a request for leave to amend is reviewed for abuse of discretion. Fed.Rules Civ.Proc.Rule 15(a)(2), 28 U.S.C.A.

**[9] Federal Courts 170B**  812

170B Federal Courts

    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)4 Discretion of Lower Court
            170Bk812 k. Abuse of discretion. Most Cited Cases
    An "abuse of discretion" may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a decision that cannot be located within the range of permissible decisions.

**[10] Federal Civil Procedure 170A**  1838

170A Federal Civil Procedure

    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
        170AXI(B)5 Proceedings
            170Ak1837 Effect
                170Ak1838 k. Pleading over. Most Cited Cases
    District court erred in dismissing pretrial detainee's pro se § 1983 action against warden of city correctional center in his individual capacity for failure to state claim, with prejudice and without leave to file amended complaint, where court did not, other than indicating that leave to amend could be denied if it would be futile, discuss other principles governing motions to amend, pretrial detainee had asked that he "be allowed to amend his complaint" if court found his allegations as to warden

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

insufficient, pretrial detainee submitted copy of letter he claimed he had sent to warden complaining of conditions, and, even if there were fewer than 15 days between warden's receipt of letter and pretrial detainee's filing of his complaint, that would not have affected complaint's sufficiency. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rules 12(b)(6), 15(a)(2), 28 U.S.C.A.

**[11]** Civil Rights 78 ◄═══ 1426

78 Civil Rights

78III Federal Remedies in General
78k1425 Questions of Law or Fact
78k1426 k. In general. Most Cited Cases
Personal involvement in an alleged constitutional violation, required for liability of a supervisory official in his individual capacity under § 1983, is a question of fact. 42 U.S.C.A. § 1983.

**[12]** Federal Civil Procedure 170A ◄═══ 1828

170A Federal Civil Procedure

170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1828 k. Time of determination; reserving decision. Most Cited Cases
When a pro se plaintiff brings a colorable § 1983 claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery. 42 U.S.C.A. § 1983.

**[13]** Prisons 310 ◄═══ 320

310 Prisons

310II Prisoners and Inmates
310II(H) Proceedings
310k316 Exhaustion of Other Remedies
310k320 k. Pleading. Most Cited Cases

Although claims relating to prison conditions are subject to the PLRA's exhaustion requirement, failure to exhaust is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

Katherine Swan, New York, NY (Guy Miller Struve, New York, NY, on the brief), for Plaintiff–Appellant.

Michael K. Skold, Assistant Attorney General, Hartford, CT (George Jepsen, Attorney General of the State of Connecticut, Hartford, CT, on the brief), for Defendant–Appellee Warden.

Before: KEARSE and KATZMANN, Circuit Judges, RAKOFF, District Judge [FN*].

KEARSE, Circuit Judge:

**\*1** Plaintiff Raymond Grullon, who commenced this action *pro se* as a pretrial detainee, appeals from a judgment of the United States District Court for the District of Connecticut, Stefan R. Underhill, *Judge,* dismissing his complaint brought under 42 U.S.C. § 1983 against defendants City of New Haven (the "City"), the New Haven C.C.C. Facility ("NHCC" or the "Correctional Center"), and the Warden of the New Haven C.C.C. Facility (the "Warden"), alleging, *inter alia,* denial of visitation rights, telephone usage, and access to a law library, and deprivation of proper temperature control, ventilation, and various amenities. The district court dismissed Grullon's claims against the City and the Correctional Center pursuant to 28 U.S.C. § 1915A(b)(1) as lacking an arguable basis in fact or law. The court dismissed Grullon's claims against the Warden in his official capacity pursuant to Fed.R.Civ.P. 12(b)(1) on grounds of sovereign immunity and mootness; it dismissed the claims against the Warden in his individual capacity pursuant to Rule 12(b)(6) for lack of any allegation from which the Warden's personal involvement could be inferred. On appeal, Grullon contends that the district court erred in dismissing his individual-capacity claims against the Warden without granting leave to amend the complaint to add a plausible allegation that the Warden had been informed of the alleged denials and deprivations.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

For the reasons that follow, we conclude that Grullon should have been allowed to amend his complaint, and we vacate in part and remand for further proceedings.

## I. BACKGROUND

Grullon's complaint, the factual allegations of which we take as true for purposes of reviewing a dismissal for failure to state a claim on which relief can be granted, *see, e.g., DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110–11 (2d Cir.2010),* alleged principally as follows.

In January 2010, Grullon, who was in custody in New York, was transferred to NHCC because of an outstanding arrest warrant against him in Connecticut. At NHCC, Grullon "was not afforded a phone call, toothpaste, soap, p[e]n, [or] paper." (Complaint at 8 (capitalization omitted).) Grullon was informed that NHCC did not have a law library and did not provide legal materials; Grullon did not otherwise have "access to the courts, or adequate assistance by a trained advisor." (*Id.* (capitalization omitted).) Grullon was "placed into a cold cell" with "no ... blankets etc., sheets," or other sleeping supplies. (*Id.* (capitalization omitted); *see also id.* at 5–A (alleging "dismal conditions" including "Excessive Heat").) Grullon was placed in a cell with another inmate and bunk beds, but with "no ladder[ ]," and "no way of getting up-top"; and for the top bunk there were "no [ ]guard rails," producing "a dangerous condition." (*Id.* at 8 (capitalization omitted).) Grullon's cell had dangerously poor "ventilation"; and the jail had an inadequate supply of food. (*Id.* (capitalization omitted).)

**\*2** As required by the Prison Litigation Reform Act ("PLRA"), the district court promptly reviewed the complaint, *see 28 U.S.C. § 1915A* (district court is required, as soon as practicable, to review a complaint by a prisoner or detainee seeking redress against a governmental entity, officer, or employee, to determine whether it contains a cognizable claim). In an Initial Review Order dated August 17, 2010, the court dismissed the action against the City pursuant to *§ 1915A(b)(1)* on the ground that the complaint contained no allegations against the City; and it dismissed the action against the Correctional Center on the ground that the Correctional Center—an institution of the State of Connecticut—is not a suable "person" under *§ 1983.* The court did not immediately dismiss Grullon's action against the Warden.

The Warden thereafter moved pursuant to *Fed.R.Civ.P. 12(b)(1)* to dismiss the claims against him in his official capacity, arguing that the damages claims were barred by the Eleventh Amendment and that the requests for equitable relief were moot because Grullon was no longer being detained at NHCC, having been transferred to another facility. The Warden moved pursuant to *Rule 12(b)(6)* to dismiss the claims against him in his individual capacity on the grounds that the complaint failed to assert a plausible claim of any constitutional violation and failed to allege the Warden's personal involvement in any of the alleged deprivations.

Grullon, in opposition to the motion, argued that one means of establishing a supervisory official's liability for a constitutional violation is to show that the official "after learning of the violation through a report or appeal, failed to remedy the wrong." (Grullon Response to Defendant's Motion to Dismiss ("Grullon Response" or "Response") ¶ 6 (citing *Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986))* (capitalization omitted).) Grullon attached to his Response a copy of a letter he had written and addressed to the Warden, bearing the handwritten notation "Sent 4/18/10" ("Grullon Letter" or "Letter"). In the Letter, Grullon complained of, *inter alia,* the lack of a law library, thick dust clogging the vents in his cell, and inadequate volume on the telephones available to inmates. In his opposition to the motion to dismiss, Grullon requested that, if the court found the allegations in his complaint insufficient with respect to the Warden's personal responsibility, he "be allowed to amend his complaint." (Grullon Response ¶ 11 (capitalization omitted).)

In a Ruling on Motion To Dismiss, dated July 8, 2011, reported at *2011 WL 2680843,* the district court granted the Warden's motion to dismiss all of Grullon's claims. The court ruled that as to the claims against the Warden in his official capacity, the claims for damages were barred by the Eleventh Amendment and the claims for equitable relief were moot because Grullon was no longer being detained at NHCC. *See id.* at \*2. As to the claims against the Warden in his individual capacity, the court ruled that Grullon had failed to state a claim on which relief can be granted because he did not show that

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Warden was personally involved in the alleged constitutional deprivations. *See id. at *3–*4.*

**\*3** With regard to the individual-capacity claims, the district court stated, *inter alia,* that

> Grullon does not mention the Warden of NHCC other than in the caption of the complaint and description of defendants. Grullon does not allege that the Warden was directly involved in or knew about the alleged unconstitutional conditions of confinement at NHCC. *Nor does Grullon claim that he made the Warden aware of the objectionable conditions.*

*Id. at *3* (emphasis added). The court noted that "[i]n response to the motion to dismiss, Grullon submits a copy of a letter that he claims to have sent to the Warden on April 18, 2010 regarding certain conditions of confinement at NHCC." *Id.* But the court stated that it could not consider the Letter on the motion to dismiss:

> In reviewing a motion to dismiss, ... the Court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.... This letter was not attached to the complaint or referenced in the complaint and does not constitute a matter of which the court may take judicial notice.
> *Id.* (internal quotation marks omitted).

The court added that even if it were to take judicial notice of the Letter, the complaint would fail because "Grullon d[id] not allege that the Warden actually received the letter or whether he took any action in response to the letter." *Id. at *4.* The court further stated that, in any event,

> a supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (prison official who received letter from inmate and forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right).... Accordingly, the

motion to dismiss is granted on the ground that Grullon did not allege the personal involvement of the Warden in the claimed unconstitutional conditions of confinement at NHCC.

2011 WL 2680843, at *4.

The district court denied Grullon's request for leave to amend his complaint to add allegations of notice to the Warden based on the Letter, ruling that there was an insufficient interval between the date of the letter and the filing of the complaint for Grullon to have exhausted his administrative remedies:

> It is apparent that any attempt to amend the complaint to add Grullon's claim that he sent a letter to the Warden on April 18, 2010 would be futile because Grullon did not allow the Warden sufficient time to respond to the letter *before filing* this case. State of Connecticut Administrative Directive 9.6(6)(A) requires an inmate to attempt to informally resolve his complaints about conditions prior to filing a formal grievance. A prison official is to respond to an informal written attempt at resolution within fifteen calendar days of receipt of the written request. If the letter to the Warden is construed as Grullon's attempt to informally resolve his complaints about various conditions at New Haven Correctional and *it is assumed that the Warden received it at the earliest on April 18, 2010,* the day it was written, the Warden was required to respond on or before May 3, 2010. *The complaint is dated May 1, 2010.* Furthermore, Grullon does not allege that he took any other steps to exhaust his administrative remedies *prior to filing* this lawsuit.

**\*4** 2011 WL 2680843, at *4 n. 2 (emphases added).

Judgment was entered dismissing the complaint in its entirety, with prejudice. Grullon appealed and moved in this Court for *in forma pauperis* status and the assignment of counsel. We granted the motions with respect to Grullon's claims against the Warden in his individual capacity, dismissing the appeal with respect to the official-capacity claims. Our order did not mention the other defendants named in the complaint; and Grullon's brief on appeal makes no argument that the district court

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

erred in dismissing claims against those defendants.

## II. DISCUSSION

On appeal, Grullon, now represented by counsel, pursues the claims asserted against the Warden in his individual capacity, arguing principally that the district court erred in dismissing those claims without granting leave to file an amended complaint to allege that, based on Grullon's April 2010 Letter, the Warden had sufficient notice of the conditions complained of to expose him to personal liability. The Warden urges us to uphold the district court's rulings or, in the alternative, to affirm on the basis that Grullon's "conclusory allegations are insufficient to state a plausible claim that any constitutional violations actually occurred" (Warden's brief on appeal at 6). For the reasons that follow, we conclude that Grullon's request to file an amended complaint should have been granted.

A. *The Sufficiency of the Complaint*

[1] It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia,* the defendant's personal involvement in the alleged constitutional deprivation. *See, e.g., Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 122 (2d Cir.2004); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir.1997)* ( " *Sealey* "); *Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995)* ( " *Colon* )"; *Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986)* ( " *Williams* "). We have previously held that

[t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) *the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,* (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) *the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.*

*Colon, 58 F.3d at 873* (emphases added); *see Williams, 781 F.2d at 323–24.* Although the Supreme Court's decision in *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),* may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal's* impact on *Colon* in this case, for Grullon's initial complaint did not adequately plead the Warden's personal involvement even under *Colon.*

**\*5** [2][3] In reviewing the dismissal of a complaint for failure to state a claim on which relief can be granted, "we view the facts alleged in the complaint in the light most favorable to the appellant[ ]," *Chase Group Alliance LLC v. City of New York Department of Finance, 620 F.3d 146, 148 (2d Cir.2010),* "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *id. at 150* (internal quotation marks omitted). Further, we must interpret the factual allegations of a *pro se* complaint "to raise the strongest arguments that they suggest." *Harris v. City of New York, 607 F.3d 18, 24 (2d Cir.2010)* (internal quotation marks omitted); *see, e.g., Sims v. Blot, 534 F.3d 117, 133 (2d Cir.2008)* ("courts are ... to construe a *pro se* litigant's pleadings and motions liberally").

[4] Even within this framework, we agree with the district court that Grullon's complaint, as filed, did not sufficiently allege the Warden's personal involvement in or awareness of the health, safety, and communications issues raised by Grullon. There were no such direct allegations; there were no indirect allegations sufficient to permit an inference the Warden had acted or failed to act in any of the ways that would subject him to personal liability for the deprivations alleged by Grullon. We conclude that the district court did not err in dismissing Grullon's claims against the Warden in his individual capacity for lack of sufficient allegations of the Warden's personal involvement.

We reach a different conclusion with respect to the denial of Grullon's request to amend.

B. *The Denial of Permission To Amend*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

[5][6][7] When a party requests leave to amend his complaint, permission generally should be freely granted. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "A *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)); *see, e.g., J.S. v. T'Kach,* 714 F.3d 99, 103 (2d Cir.2013); *Shomo v. City of New York,* 579 F.3d 176, 183 (2d Cir.2009); *id.* at 184 (upholding district court's ruling that *pro se* plaintiff's complaint failed to allege that supervisors "were aware of the violations, that grievances sent to the supervisors notified them of constitutional violations, or that the supervisors acted or failed to act in a way that caused any constitutional violations," but vacating the with-prejudice dismissal and remanding with the instruction that the plaintiff be given leave to replead because "[i]t is possible that [he] could remedy the inadequacies identified by the district court" (internal quotation marks omitted)). Leave to amend may properly be denied if the amendment would be "futil[e]." *Foman,* 371 U.S. at 182, 83 S.Ct. 227.

**\*6** [8][9] A district court's denial of a request for leave to amend is reviewed for abuse of discretion. *See, e.g., id.; Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162, 185 (2d Cir.2012) (" *Anderson* "), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 846, 184 L.Ed.2d 655 (2013); *Starr v. Sony BMG Music Entertainment,* 592 F.3d 314, 321 (2d Cir.2010) (" *Starr* "), *cert. denied,* ––– U.S. ––––, 131 S.Ct. 901, 178 L.Ed.2d 803 (2011). "An abuse of discretion may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a decision that cannot be located within the range of permissible decisions." *Anderson,* 680 F.3d at 185; *see, e.g., Sims v. Blot,* 534 F.3d at 132.

[10] In the present case, although the district court properly described the standard for dismissal for failure to state a claim, the court did not—other than indicating that leave to amend could be denied if it would be futile—discuss other principles governing motions to amend, *e.g.,* that motions to amend should be granted

freely in the interests of justice, that a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once, and that a *pro se* plaintiff's proposed amended complaint should be construed to raise the strongest arguments it suggests.

Although Grullon had not proffered a formal proposed amended complaint, he had asked that he "be allowed to amend his complaint" if the court found his allegations as to the Warden to be insufficient (Grullon Response ¶ 11 (capitalization omitted)), and he had submitted a copy of the April 18, 2010 Letter he claims he sent to the Warden complaining of the NHCC conditions. The Letter to the Warden plus the allegations of Grullon's initial complaint were sufficient to "give[ ] an[ ] indication that a valid claim might be stated," *Chavis v. Chappius,* 618 F.3d at 170 (internal quotation marks omitted).

[11] We disagree with the district court's decision to disregard the Letter on the basis that Grullon did "not allege that the Warden actually received the letter or whether he took any action in response to the letter," 2011 WL 2680843, at \*4. "[P]ersonal involvement is a question of fact," *Williams,* 781 F.2d at 323; and *Sealey,* the principal case invoked by the district court (and by the Warden (*see* Warden's brief on appeal at 9)), did not involve a dismissal pursuant to Rule 12(b)(6) for failure to state a claim. Rather, the pertinent claim in that case was dismissed on summary judgment, *see Sealey,* 116 F.3d at 51, following discovery, *see id.* at 50. As the district court noted in the present case, the supervisory official in *Sealey* "who received [the] letter from [the] inmate [had] forwarded it to [a] subordinate for investigation and response," 2011 WL 2680843, at \*4; *see Sealey,* 116 F.3d at 51. Thus the dismissal of the claim against the supervisor in *Sealey* was affirmed neither on the basis of the pleading nor on the ground that the supervisor had merely received the inmate's letter; rather, the dismissal was affirmed on the ground that, after discovery, the record warranted summary judgment in favor of the supervisor because it showed that he had in fact taken steps to have the prisoner's grievance resolved.

**\*7** [12] Here, the district court dismissed Grullon's action with prejudice on the basis of his initial pleading, denying him leave to file an amended complaint alleging

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

that he in fact sent his Letter to the Warden complaining of prison conditions. At the pleading stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference—if his amended complaint contained factual allegations indicating that the Letter was sent to the Warden at an appropriate address and by appropriate means—that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained. It is of course possible that the Warden read the Letter and took appropriate action or that an administrative procedure was in place by which the Warden himself would not have received the Letter addressed to him; but those are potential factual issues as to personal involvement that likely cannot be resolved without development of a factual record. As we have previously held, "when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery." *Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998). We conclude that the district court should not have denied leave to amend for lack of allegations as to the Warden's actual receipt of the Letter and as to his response.

Finally, the district court erred in denying leave to amend the complaint on the ground that amendment would be "futile because" the complaint was dated May 1, and assuming that the Warden received the Letter on April 18, Grullon failed to give the Warden 15 days to act "prior to filing this lawsuit," 2011 WL 2680843, at *4 n. 2. First, although the court assumed *arguendo* (quite generously) that Grullon's Letter dated April 18 would have been received by the Warden on that date, the finding that the complaint that was "dated" May 1, *id.,* was "fil[ed]" on May 1, *id.,* is contrary to the district court records. The complaint as it appears in the record was date-stamped by the district court as "FILED 2010 MAY 18"; and the district court docket sheets state that the complaint was filed on May 18.

[13] More importantly, the court's legal framework

for assessing the sufficiency of Grullon's proposal to amend his complaint was flawed, because although claims relating to "prison conditions" are subject to the PLRA's exhaustion requirement, *see, e.g., Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), "failure to exhaust is an affirmative defense," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *see, e.g., Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999). Thus, even if there were fewer than 15 days between the Warden's receipt of Grullon's Letter and Grullon's filing of his complaint, that would not have affected the complaint's sufficiency. For all of the above reasons, we conclude that the district court did not properly exercise its discretion in refusing to allow Grullon to amend his complaint.

**\*8** We reject the Warden's contention that, without regard to the issue of personal responsibility, we should affirm the judgment dismissing the complaint with prejudice and without leave to amend on the ground that Grullon has failed to allege constitutional violations. Allegations that a prisoner or detainee was denied meaningful access to the courts, leaving him unable to assert an allegedly legitimate legal claim, *see generally Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and allegations of deliberate indifference to serious threats to the well-being or safety of a person in custody, such as unhealthy extremes in temperature, *see generally Gaston v. Coughlin,* 249 F.3d 156, 165–66 (2d Cir.2001), or unhealthy air conditions in his cell, *see, e.g., Benjamin v. Fraser,* 343 F.3d 35, 52 (2d Cir.2003), *overruled on other grounds, Caiozzo v. Koreman,* 581 F.3d 63, 71 (2d Cir.2009), have been held sufficient to withstand a motion to dismiss for failure to state a claim on which relief can be granted.

CONCLUSION

We have considered all of the Warden's contentions on this appeal and have found them to be without merit. The judgment of the district court is vacated to the extent that it dismissed the claims against the Warden in his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))

(Cite as: 2013 WL 3023464 (C.A.2 (Conn.)))

individual capacity with prejudice and without leave to file an amended complaint, and the matter is remanded for further proceedings not inconsistent with this opinion. In all other respects, the judgment of the district court is affirmed.

> FN* Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

C.A.2 (Conn.),2013.

Grullon v. City of New Haven
--- F.3d ----, 2013 WL 3023464 (C.A.2 (Conn.))
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. New York.
Leroy DORSEY, Plaintiff,
v.
Brian FISHER; Dale Artus; Racette; and T. LaValley, Defendants.
No. 9:09–CV–1011 (GLS)(DEP).

May 19, 2010.

Leroy Dorsey, Dannemora, NY, pro se.

**DECISION and ORDER**

GARY L. SHARPE, District Judge.

**I. Background**

**\*1** Plaintiff Leroy Dorsey commenced this action by filing a *pro se* civil rights complaint. Dkt. No. 1. By Decision and Order of this Court filed on December 15, 2009 ("December Order"), the Court found that Dorsey's Complaint failed to set forth facts plausibly suggesting that any of the defendants were personally involved with the alleged violation of Dorsey's constitutional rights or that any of Dorsey's constitutional rights were violated. Dkt. No. 15 at 11. In light of his *pro se* status, Dorsey was afforded an opportunity to submit an amended complaint. *Id.* at 15. Presently before the Court is plaintiff's amended complaint. Dkt. No. 17. Plaintiff has again named Fisher, Artus, Racette, and LaValley as defendants as well as twenty-one new defendants, many of whom are John/Jane Doe defendants.[FN1] *Id.* at 3, 4, 7. For the reasons set forth below, the amended complaint is dismissed for failure to state a claim upon which relief may be granted under Section 1983.

> FN1. The newly named defendants are Sargent Furneau; Sargent Keenan; Sargent Hicks; Corr. Counselor Recore; John Doe, 7–3–A–Officer,

E–Block; C.O. Defire; C.O. Terrell; C.O. Hardy; C.O. Farrow; C.O. Terry; C.O. D.Lucia; C.O. Beeman; C.O. John Doe, 3–11, E–Block (1–11–10); C.O. John Doe 3–11, E–Block (1–12–10); C.O. John Doe, 3–11, E–Block (1–9 and 10–10); C.O. John Doe, 7–3, E–Block; C.O. Russell, Lower F–1; Sargent Derkin, 7–3, Lower F–1–15; Sargent John Doe, Escort to O.M.H., 7–3, Lower F–1–15; O.M.H. Chief Berman; and O .M.H. Jane Doe, 3rd Floor Satelite Unit. *See* Dkt. No. 17 at 3, 4, 7.

**II. Legal standards**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[FN2] 28 U.S.C. § 1915(e)(2). Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (per curiam) (citation omitted).

> FN2. To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998)* (*quoting* *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995)* (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft,* 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 129 S.Ct. at 1949 (citing *Twombly,* 127 S.Ct.1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.' " *Ashcroft,* 129 S.Ct. at 1949 (citing Fed. Rule Civ. Proc. 8(a) (2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 129 S.Ct. at 1949. Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown,* No. 08–0102–cv, 2009 WL 1762856, at *1 (2d Cir. Jun. 23, 2009).

## III. Summary of Amended Complaint

**\*2** In his amended complaint, Dorsey alleges that

beginning with his arrival at Clinton from November 2008 to 2010, Fisher and all named defendants violated plaintiff's civil and constitutional rights and his rights under Federal and state laws and state rules. Dkt. No. 17 at 8. Defendants falsified records; retaliated against plaintiff; denied plaintiff accessories for his breathing machine and daily medications, as well as state clothes, cosmetics, and legal personal supplies; and stole his property. *Id.*

Dorsey alleges that defendants Furneau, Keanan, Hicks were supervisors in charge of E–Block and allowed the correctional officers—specifically defendants John Doe A–Officer, Defire, Terry, Hardy, Farrow, D. Lucia, Beeman, John Doe, 3–11 (1–11–10); John Doe 3–11 (1–12–10); and John Doe, 3–11 (1–9 and 10–10)—to "commit numerous civil rights violations"[FN3] and state and federal crimes, including federal mail stealing and the "Crime of First Degree Murder–Att. Murder" on Dorsey. *Id.* at 10. Dorsey claims that the attempted murder occurred on July 13, 2009 when the E–Block defendants put "D.N.A.—Infected Body Fluid" in Dorsey's food. *Id.* Dorsey claims that the aforesaid E–Block defendants used their "Snitch Informer" and "Four 4 Inmate Porter's—Some Homosexuals" to violate Dorsey's rights. *Id.* After eating the poisoned food, Dorsey's mouth became swollen with sores and the "Medication Nurse—Escort C.O." refused to provide Dorsey with medical emergency sick call. *Id.*

> FN3. Throughout his amended complaint, Dorsey frequently encloses words or phrases in quotation marks. When quoting from the amended complaint, the Court will omit internal quotation marks.

Dorsey alleges that the defendants used inmate porters, who have been released to immigration for deportation, to pass rumors, lies, and personal information about Dorsey. *Id.* Defendants also let these inmate porters into Dorsey's cell when he was not there to steal Dorsey's property, plant weapons in Dorsey's cell, and infect Dorsey's food, and rewarded them for their actions against Dorsey. *Id.* at 10–11. Dorsey claims that the actions of the inmate porters stopped when Dorsey was confined to his cell for 24 hours. *Id.* at 11.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

Defendants on E–Block during the 7 to 3 shift purposely opened Dorsey's cell so he could be assaulted as he slept by the "Loyal C.O. Inmates." *Id.* at 11. Dorsey claims that the defendants whom he collectively refers to as defendants "E–T" [FN4] are "Responsible" for the aforesaid acts. *Id.* at 11. Dorsey also states that defendants E–T "stole 2 vendor packages" [FN5] from Dorsey. *Id.* at 11.

> **FN4.** Defendants "E–T" consist of Furneau; Keanan; Hicks; Recore; John Doe, 7–3 A–Officer, E–Block; Defire; Terrell; Hardy; Farrow; Terry; Lucia; Beeman; C.O. John Doe, 3–11, E–Block (1–11–10); C.O. John Doe 3–11, E–Block (1–12–10); C.O. John Doe, 3–11, E–Block (1–9 and 10–10); and C.O. John Doe, 7–3, E–Block. *See* Dkt. No. 17 at 3–4.

> **FN5.** It appears that the stolen vendor packages included cigarette papers and seven cassette classic tapes. Dkt. NO. 17 at 11.

Dorsey alleges that defendant LaValley is a "criminal." Dkt. No. 17 at 12. Dorsey complains that the Court should have, as soon as Dorsey filed this action, planted federal undercover agents "near" Dorsey to "catch" and "record" the "N.Y.S." cover-up of defendants' continuing violations of Dorsey's constitutional rights. *Id.*

Dorsey claims that defendant Commissioner Fisher was personally involved in wrongdoing against Dorsey because in October 2006, while Dorsey was incarcerated at Sing Sing Correctional Facility, Fisher denied Dorsey the right to participate in Family Reunion Program visits and that the denial was in retaliation for "petitioning Fisher" for entry into the program. Dkt. No. 17 at 12–13. Dorsey also alleges that Fisher illegally changed the rules of the Family Reunion Program to exclude Dorsey from the program. *Id.* Dorsey also seems to allege that after Fisher became acting commissioner of the Department of Correctional Services in 2007, Fisher failed to address Dorsey's letters of complaint regarding problems that Dorsey was having at Woodbourne Correctional Facility and claimed that Fisher's response was always the same—"Let the Prison ... Investigate." *Id.* at 13.

**\*3** On December 15, 2009, defendant Russell issued

Dorsey a false misbehavior report and "keeplocked" Dorsey. Dkt. No. 17 at 15. Dorsey claims that the false misbehavior report was issued in retaliation for "petitioning." *Id.* at 17. Defendant Russell also lied at the subsequent disciplinary hearing. *Id.*

Dorsey alleges that on December 20, 2008, after his property was "stolen", he asked defendant Artus to send a "search team" but Artus refused the request. Dkt. No. 17 at 14. Dorsey states that the next day he realized why Artus would not send a search team because all of the E–Block cells were full of stolen property and he alleges that some of the stolen property was his because he "was hearing [his] cassette tapes." *Id.* Dorsey appears to allege that inmate cells on E–Block were opened so that the inmates could be assaulted while inmate porters stole their property. *Id.* In 2009, Dorsey stopped Artus when he was touring E–Block and told him about all of the stolen property and what was happening on E–Block, but Artus did nothing about it, and "never walked toured again." *Id.* Plaintiff then faced more staff set-ups and was moved to another block to "hinder prosecution" of getting the "thousands" of legal documents out to courts by his deadlines. *Id.* On December 25, 2009, defendant Artus "worked" as an officer as part of a job swap. Dkt. No. 17 at 15. While Artus was touring, Dorsey complained to him about legal mail that was "not confirmed mailed to the court", but Artus merely told Dorsey to write to him about it. *Id.* Defendant Artus said he did not know Dorsey, which was a "lie." *Id.*

On December 29, 2009, a hearing was held regarding the false misbehavior report issued by defendant Russell; Dorsey was found guilty of the charges based upon "lies" on the tape and because of "retaliation" by defendant Artus. *Id.* Dorsey claims that Artus's retaliation was not over. *Id.* Dorsey alleges that after his hearing, officers locked Dorsey in a "small confined shower" for thirty minutes while four young officers "trashed" his cell, threw away legal mail, and took his breathing machine accessories, daily medications, cosmetics, legal supplies, pens, and tape. *Id.* at 15–16.

Dorsey alleges that during either breakfast or lunch on a weekend, Dorsey tried to speak to the Deputy Superintendent of Security, who was in the cafeteria at the

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

time, about library call-outs on weekends but "the Escort C.O." said "No," pulled Dorsey to the side and threatened him, saying he did not care about Dorsey's court deadlines. *Id.* at 15.

Dorsey alleges that defendant Racette is the son of a former Clinton Correctional Facility warden and makes tours of E–Block, and has received letters from Dorsey, but does nothing to help Dorsey. Dkt. No. 17 at 16. Defendant Racette is like his father and lets officers beat and kill inmates then covers up the crimes. *Id.* Defendant Racette "is also behind" the violations of Dorsey's constitutional rights. *Id.* Defendant Hardy toured Dorsey's block one day with Racette and told Racette that Dorsey was going to the Special Housing Unit. *Id.*

**\*4** Dorsey alleges that defendant LaValley is the "son of past warden" and that his father was apparently involved with "bodies found." Dkt. No. 17 at 16. Defendant LaValley was the first head official to greet Dorsey in November 2008 and promised a "fresh start", but when Dorsey was moved to E–Block, "trouble" began. *Id.* In July, defendant LaValley signed off on a "stolen tape notice" which he knew was false, "which is a felony charge." *Id* . at 16–17.

Defendant Recore violated Dorsey's rights under the Fourteenth Amendment by releasing some personal information about Dorsey which went from officers to inmates in E–Block. Dkt. No. 17 at 17. Dorsey also claims that defendant Recore "eavesdropped" on Dorsey's legal conference call to a Judge and an attorney general. *Id.*

While not entirely clear, it appears that Dorsey alleges that defendant Derkin allowed defendant Russell to falsely accuse Dorsey of misbehavior. Dkt. No. 17 at 17. Dorsey alleges that defendant Defire was the property draft officer at Clinton and that when Dorsey was drafted to Clinton, some of his draft bags had been opened and some of his property stolen. *Id.* at 18.

Dorsey claims that between 2008 and 2010, as a result of the foregoing, he was subjected to cruel and unusual punishment, denied due process and equal protection, denied the opportunity to "petition the government," purposely contaminated with "infected D.N.A." and food

poisoning, and denied medical attention after his face and mouth became swollen inside and out. Dkt. No. 17 at 18. Dorsey claims that no security was called to investigate his attempted murder and the crime was covered-up. *Id.* Dorsey seeks substantial monetary relief and transfer to Fishkill Correctional Facility. Dkt. No. 17 at 19. Dorsey also wants the Court to "take away" defendants' immunities and fifth amendment protections because they are criminals involved in "Enterprise Corruption." *Id.*

**IV. Review of amended complaint**

In reviewing Dorsey's amended complaint, the Court recognizes that it must construe *pro se* complaints liberally. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). Even after allowing for due deference to Dorsey's *pro se* status, Dorsey's conclusory allegations are insufficient to meet the standards set forth in either *Ashcroft* or *Twombly.* Dorsey's amended complaint also fails to give defendants "fair notice" of the grounds upon which Dorsey's claims are based. Significantly, the amended complaint's failure to provide such notice followed a district court order that, in dismissing Dorsey's original complaint, explained its deficiencies and provided Dorsey with an opportunity to cure the defects. The order also advised Dorsey that failure to do so would result in dismissal. Dorsey has not complied with the Court's directions set forth in the December Order. The amended complaint contains a litany of conclusory statements which amount to nothing more than legal conclusions and hollow allegations that all of the defendants conspired to harm Dorsey by stealing his property, attempting to murder him, retaliating against him, and denying him due process and medical care. *See generally* Dkt. No. 17.

**\*5** The Court finds that Dorsey's allegations fail to state a claim upon which relief may be granted and in many instances are frivolous, both legally and factually, and the amended complaint is therefore subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A(b). Any vague claims that can be discerned from the amended complaint are discussed below.

**A. Personal Involvement**

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986).

**1. Defendant Fisher**

**\*6** Dorsey alleges that after defendant Fisher became acting commissioner, he failed to respond to Dorsey's complaints and his response was always to let the prison investigate and deal with its own situation. Dkt. No. 17 at 13. These allegations fail to demonstrate the personal involvement of Fisher in any wrongdoing against Dorsey. An allegation that an official ignored a prisoner's letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations. *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002) (citing *Greenwaldt v. Coughlin,* 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995); *see also Boddie v. Morganthau,* 342 F.Supp.2d 193, 203 (S.D.N.Y.2004) (Even if a supervisory official ignores an individual's letter, this fact alone is insufficient to establish personal responsibility).

**2. Defendants Furneau, Keanan, Hicks**

Plaintiff alleges that defendants Furneau, Keanan, and Hicks, as supervisors of E–Block, allowed correctional officers on E–Block to violate plaintiff's civil rights and commit crimes including mail stealing and attempted murder. Construed liberally, Dorsey alleges that Furneau, Keanan, and Hicks failed to properly supervise their subordinates. Here, Dorsey provides nothing but his bare assertion that Furneau, Keanan, and Hicks allowed the correctional officers in their charge to violate Dorsey's civil rights. Dkt. No. 17 at 10.

Even under the liberal "notice pleading standard" ... a Section 1983–based complaint must still allege particular facts indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere "bald assertions and conclusions of law" do not suffice. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). A complaint that essentially regurgitates the relevant "personal involvement" standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal.

*Davis v. County of Nassau,* 355 F.Supp.2d 668, 676–77 (E.D.N.Y.2005). Dorsey's conclusory allegations against defendants Furneau, Keanan, or Hicks fail to allege any claim against these defendants on the basis of supervisory liability or otherwise.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

### 3. Sgt. John Doe (Escort to OMH), OMH Chief Berman, and OMH Jane Doe

Dorsey includes Sgt. John Doe (Escort to OMH), OMH Chief Berman, and OMH Jane Doe as defendants in the caption of his complaint and in the listing of defendants but the complaint does not assert allegations of wrongdoing by them. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi,* No. 9:06–CV–889, 2007 WL 607341, at *1 (N .D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New* York, No. 97 CIV. 2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998); *Crown v. Wagenstein,* No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); ( *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same)). Because Dorsey has failed to allege any personal involvement on the part of Sgt. John Doe (Escort to OMH), OMH Chief Berman, and OMH Jane Doe, they are dismissed as defendants.

### B. Failure to state a claim

### 1. Conspiracy

**\*7** Dorsey seems to allege that he has been the victim of a massive conspiracy by the New York State Department of Correctional Services and its employees, including all of the defendants named herein and that the conspiracy amounted to "Enterprise Corruption." *See generally* Dkt. No. 17. Dorsey alleges the defendants' criminal conduct has been covered-up. *Id.*

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello,* 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion

to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir.1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief). Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but also the "actual deprivation of constitutional rights." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363–64 (S.D .N.Y.2000) (citing *Malsh v. Austin,* 901 F.Supp. 757, 765 (S.D.N .Y.1995). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *See id.*

Dorsey alleges in conclusory fashion that all of the defendants were involved in a conspiracy against him. Dorsey does not assert any plausible facts giving rise to a conspiracy, but instead makes vague and shocking statements that defendants tried to murder him by poisoning his food with infected DNA, stealing his property, releasing his personal information to everyone on E–Block, and ignoring his complaints about, and covering up, all of the aforesaid wrongdoing. Plaintiff has not alleged, except in conclusory fashion, that a conspiracy existed or that any meeting of the minds occurred between any of the defendants. Moreover, many of the alleged conspiratorial acts, *i.e.* stealing Dorsey's property or not responding to his letters of complaint, do not rise to the level of constitutional violations. Additionally, many of the allegations raised in the amended complaint in support of a conspiracy are wholly unbelievable. For example, Dorsey claims that (1) inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCS officials and that DOCS supervisors rewarded them for doing so and (2) his entire prison block was full of stolen property that was taken from inmates by inmate porters at the behest of DOCS officials.

**\*8** The amended complaint does not contain any allegations to support a "plausible" conspiracy claim involving any of the defendants. "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v.. Levy,* No. 07–CV–3753, 2008 WL 4394681, at *9

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

(E.D.N.Y. Sep. 23, 2008) (citing *Twombly,* 127 S.Ct. at 1965). Additionally, many of the allegations raised in the amended complaint in support of a conspiracy are wholly unbelievable. For example, Dorsey claims that (1) inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCS officials and that DOCS supervisors rewarded them for doing so and (2) his entire prison block was full of stolen property that was taken from inmates by inmate porters at the behest of DOCS officials.

The conspiracy claims are wholly conclusory and, as such, are insufficient even at the pleading stage to state a claim for relief pursuant to Section 1983.

**2. Defendant Artus**

Dorsey alleges that defendant Artus failed to investigate his complaints of stolen property or mail; failed to send a "search team" to look for the stolen property, in an apparent attempt to cover up a massive theft of inmate property on E–Block; and retaliated against Dorsey. Dkt. No. 17 at 14–16.

Even if true, the fact that Artus ignored Dorsey's complaints regarding theft of his property and other violations of Dorsey's rights by various staff at Clinton Correctional Facility is insufficient to state a claim against Artus. *See Woods v. Goord,* No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases) (For purposes of Section 1983, personal involvement cannot be established based on the receipt of a letter or grievance.); *Swindell v. Supple,* No. 02 Civ. 3182RWS, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[C]orrespondence to and from [DOCS Commissioner] Goord does not demonstrate [his] personal involvement."); *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1233 (S.D.N.Y.2003) ("[A]llegations that an official ignored a prisoner's letter" are insufficient to impose liability under Section 1983.).

As to Dorsey's claim that Artus retaliated against him, Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v.*

*Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quoting *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992 (2002)); *see also Colon,* 58 F.3d at 872 (courts should "examine prisoners' claims of retaliation with skepticism and particular care" given "the ease with which claims of retaliation may be fabricated."). In order to allege a viable retaliation claim, a plaintiff must advance "non-conclusory" allegations establishing:

***9** (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

*Davis,* 320 F.3d at 352 (quoting *Dawes,* 239 F.3d at 492). Recognizing the possibilities for abuse with respect to retaliation claims, the Circuit has insisted "on a higher level of detail in pleading them." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987). "[A] complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

Reading the amended complaint generously, Dorsey may allege that Artus retaliated against him because of Dorsey's complaints to Artus concerning staff misconduct. Since the filing of prison grievances is a constitutionally protected activity, Dorsey may meet the first prong of the retaliation test. *See Graham,* 89 F.3d at 80; *see also Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (prisoner's have the right to petition for redress of grievances). Dorsey alleges that he was found guilty of charges at a disciplinary hearing on December 29, 2009 because of "Dale Artus Retaliation" and then alleges that he realized that Artus's retaliation was "Not Over" when later that day his cell was ransacked by "4 Young Officers." Dkt. No. 17 at 15. Dorsey has not plausibly alleged any causal connection between Dorsey's complaints to Artus and the conduct of the remaining defendants or the "4 Young Officers", or any details regarding how Artus retaliated against him. Dorsey's allegations of retaliation by Artus are wholly conclusory and lack sufficient facts to satisfy the requirement for a "higher level of detail" required by the Second Circuit, *see*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

*Gill,* 824 F.2d at 194, therefore Dorsey has failed to allege a plausible retaliation claim against Artus.

### 3. Defendant Fisher

Dorsey alleges that in October 2006, while Fisher was Superintendent of Sing Sing, Fisher denied Dorsey entry into the Family Reunion Program. Dkt. No. 17 at 12–13. Dorsey fails to state a claim against Fisher in this regard. *See Leevon v. Goord,* No. 99–CV–6208, 2003 WL 22384787, at *7 (W.D.N.Y. Sept. 4, 2003) (inmate's liberty interests were not implicated by the forfeiture of his participation in the Family Reunion Program); *see also Gatson v. Selsky,* No. 94–CV–292, 1997 WL 159258, at *3 (N.D.N.Y. Apr. 4, 1997) (inmate's loss of Family Reunion Program visits does not give rise to liberty interest). Dorsey also claims that Fisher denied him entry into the program "in Retaliation for Petitioning Fisher, et al, Sing Sing." Dkt. No. 17 at 13. These wholly conclusory or vague statements of retaliation by Fisher do not satisfy the requirement for a "higher level of detail" required by the Second Circuit. *See Gill,* 824 F.2d at 194; *see also* Section IV.B.2, *supra.*

### 4. Eighth Amendment medical claim

**\*10** Dorsey alleges that a "Medication Nurse" and "Escort C.O." denied him adequate medical treatment when his food was infected or poisoned, causing his mouth to become swollen inside and out with sores. Dkt. No. 17 at 10. Dorsey also claims that "4 Young Officers" threw away his "Breathing Machine Accessories" and "3 Daily Medications." *Id.* at 16. Apart from being unable to identify the defendants involved by name, the complaint fails to state a claim under the Eighth Amendment as it fails to allege that any defendant was deliberately indifferent to a serious medical need of Dorsey.

A prisoner may allege an Eighth Amendment claim arising out of inadequate medical care; to do so, the prisoner must allege "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate; claims of malpractice or disagreement with treatment are not actionable under § 1983. *Murphy v. Grabo,* No. 94–CV–1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, D.J.). Dorsey's conclusory allegation that

an unidentified Medication Nurse and escort correctional officer refused Dorsey access to emergency sick call on one occasion fails to state a claim upon which relief may be granted under the Eighth Amendment. *See Brown v. Sheridan,* 894 F.Supp. 66, 71 (N.D.N.Y.1995) ("[O]ne isolated failure to provide medical treatment to a prisoner, without more, is generally not actionable" unless the "surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment.") Dorsey has made no factual, non-conclusory allegations to suggest any degree of deliberateness on the part of the unidentified nurse or the escort officer, especially in light of the implausibility of the underlying claim that he was deliberately poisoned with infected DNA. Therefore Dorsey has failed to allege a constitutional violation under the Eighth Amendment against these defendants.

### 5. Defendant LaValley

Dorsey alleges that Defendant LaValley is a "criminal" and seems to allege that LaValley's father—a former superintendent of Clinton Correctional Facility—was a murderer or somehow connected with "bodies found." Dkt. No. 17 at 12, 16. Dorsey alleges that LaValley made a false statement, "which is a felony charge." *Id* . at 16–17. Besides being decidedly vague and inflammatory, the allegations that defendant LaValley engaged in criminal conduct or made a false statement do not rise to the level of a constitutional violation and therefore Dorsey has failed to state a claim against defendant LaValley.

### 6. Theft of personal property

Dorsey alleges that various items of his personal property were stolen. Dkt. No. 17 at 11, 14–16. Dorsey also alleges that defendant Defire, the property draft officer, may have been responsible for opening and stealing property from Dorsey's draft bags. *Id.* at 18. Construed liberally, Dorsey may be alleging that he was deprived of his property without due process. As an initial matter, Dorsey does not clearly allege which of the twenty-five defendants named in his amended complaint were actually responsible for the theft of his property from his cell. Dorsey merely alleges that the defendants allowed inmate porters into his cell to steal property. These conclusory allegations against multiple defendants simply

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

does not state a plausible claim for relief, nor does it give fair notice of the actual claim to any defendant. Even if Dorsey had identified which particular defendant was responsible for the theft, his claim would still fail.

**\*11** Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as "adequate state post-deprivation remedies are available." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). New York law provides such a remedy in the form of an action before the New York Court of Claims. *See* N.Y. Ct. Cl. Act § 9 (McKinney 1989 & Supp.2005); *Diaz v. Coughlin,* 909 F.Supp. 146, 150 (S.D.N.Y.1995) (dismissing property deprivation due process claim because inmate could bring action in Court of Claims); *McCorkle v. Juchenwicz,* No. 94 Civ. 6363(TPG), 1999 WL 163205, at \*4 (S.D.N.Y. Mar. 23, 1999) (same); *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at \*7 (S.D.N.Y. Nov. 17, 1997) (same); *Ifill [v. Goord,* No. 03–CV–355S], 2005 WL 2126403, at \*6 [W.D.N.Y. Sept. 1, 2005] (same).

*Collins v. Goord,* 438 F.Supp.2d 399, 418–19 (S.D.N.Y.2006); *see also Leitzsey v. Coombe,* 998 F.Supp. 282, 289 (W.D.N.Y.1998) ("[A] claim for the loss of property does not lie in federal court if the state courts offer an adequate remedy for such a deprivation.") (citing *Hudson v. Palmer,* 468 U.S. 517, 533 (1984).[FN6] For the same reasons, Dorsey's claim that Defire stole property from Dorsey's draft bags is equally infirm. Dorsey may not pursue his theft of property claim in this Court.

FN6. New York Court of Claims Act, Section 9, permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims and therefore provides a remedy for such claims. *Leitzsey,* 998 F.Supp. at 289–90.

**7. Legal mail**

Dorsey alleges that "4 Young Officers" threw away his legal mail and legal supplies. Dkt. No. 17 at 15–16. Construing Dorsey's amended complaint liberally, Dorsey may be claiming that he is being denied access to the courts because of mail tampering and denial of "legal supplies." In the first instance, the Court notes that none of the defendants are alleged to be responsible for this conduct; instead Dorsey alleges that his mail and legal supplies were taken by "4 Young Officers." That being said, even if Dorsey could establish that any of the defendants were personally involved with these alleged actions, Dorsey's claim would still fail. All persons, including prisoners, have a constitutional right of access to the courts. *See Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir.1997). To establish a violation of this right, "a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' " *Id.* at 247 (quoting *Lewis v. Casey,* 518 U.S. 343, 349 (1996)). In this case, Dorsey has alleged no actual injury in connection with his access to the courts claim and therefore fails to state a claim pursuant to Section 1983.

**8. Defendant Russell**

Dorsey alleges that the defendant Russell issued a false misbehavior report against him. Dkt. No. 17 at 15. However, the mere allegation that a defendant filed a false disciplinary charge is insufficient to state a claim for the violation of a plaintiff's rights. "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citation omitted). Dorsey therefore fails to state a claim against defendant Russell with respect to the misbehavior report that he issued to Dorsey.

**\*12** However, Dorsey also claims that defendant Russell issued the misbehavior report to Dorsey in retaliation for "petitioning." Dkt. No. 17 at 17. Construing Dorsey's complaint liberally, he may be alleging that he was retaliated against for filing a grievance or complaint and may therefore meet the first prong of the retaliation test. *See Graham,* 89 F.3d at 80. Dorsey has not however proffered non-conclusory allegations showing any sort of causal connection between the alleged retaliatory conduct by defendant Russell, namely the issuance of a misbehavior report, with any alleged "petition" by Dorsey. Dorsey's allegations of retaliation which are conclusory and unsupported by any facts, cannot serve to elevate his fabricated misbehavior report claim to the level of a constitutional violation. *See Section IV.B.2, supra.* Dorsey has failed to state a claim against defendant Russell

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

pursuant to Section 1983.

### 9. Defendants Racette and Hardy

Dorsey alleges that defendant Racette is the "son of Past Clinton Warden" and like his father, lets officers beat and kill inmates and then covers it up. Dkt. No. 17 at 16. These conclusory allegations fail to state a plausible claim against Racette pursuant to Section 1983. Dorsey also claims that all letters that he sends to the Superintendent are forwarded to Racette, yet he does nothing to help Dorsey. *Id.* An allegation that an official ignored a prisoner's letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations. *Johnson,* 234 F.Supp.2d at 363; *see also Boddie v. Morganthau,* 342 F.Supp.2d at 203 (Even if a supervisory official ignores an individual's letter, this fact alone is insufficient to establish personal responsibility).

Dorsey alleges that, while on tour with Racette, defendant Hardy told Racette that Dorsey was going to the Special Housing Unit. Dkt. No. 17 at 16. This allegation does not state a claim of constitutional dimension; in fact it states no claim whatsoever.

### 10. Defendant Derkin

Dorsey alleges that defendant Derkin "lied" to him regarding how many bags of property an inmate may possess. Dkt. No. 17 at 17. While not entirely clear, Dorsey also appears to allege that defendant Derkin did not properly supervise his subordinate, defendant Russell, because he told Russell to "Do whatever you want to do." *Id.* These allegations are wholly conclusory and fail to state a claim of constitutional dimension. Dorsey may also allege that Derkin should be responsible for failing to properly supervise Russell because he allowed Russell to falsely accuse Dorsey of misconduct. Since the Court has already determined that Russell did not violate Dorsey's constitutional rights, *see* Section IV.B.8, *supra,* there is no unconstitutional conduct for which Derkin, as a supervisor, can be held responsible. *See Toole v. Connell,* No. 9:04–CV–0724, Report–Recommendation, 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *adopted,* 2008 WL 4186334, at *1 (Kahn, J.) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not

actionable under section 1983); *see also Linares v. Mahunik,* No. 05 Civ. 625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (Sharpe, D.J. and Treece, M.J.) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

### 11. Defendant Escort C.O.

**\*13** Dorsey alleges that on one occasion, while taking Dorsey to a weekend meal, defendant Escort C.O. refused to let Dorsey speak to the Deputy Superintendent of Security about weekend library call outs even though the Deputy Superintendent of Security was in the prison cafeteria at the time. Dkt. No. 17 at 15. Defendant Escort C .O. also verbally threatened Dorsey, stating that he did not care about Dorsey's court deadlines. *Id.*

Defendant's refusal to allow Dorsey to speak to the Deputy Superintendent of Security in the prison cafeteria does not state any sort of claim under Section 1983. Moreover, allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 Fed. Appx. 140, 143 (2d Cir.2001) (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.")).

### 12. Defendant Recore

Dorsey alleges that defendant Recore violated Dorsey's Fourteenth Amendment rights by "telling [Dorsey's] personal information in E–Block, which went from Officers to Inmates" and eavesdropping on a telephone conference call between Dorsey, a Judge, and an attorney general. Dkt. No. 17 at 17.

Under certain circumstances the disclosure by prison officials of inherently confidential and sensitive information regarding an inmate can support a due process violation claim under the Fourteenth Amendment. *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (recognizing limited right of privacy shielding information that a person is infected with Human Immunodeficiency Virus ("HIV")); *see also Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir.1999) (extending Doe to information regarding an inmate's transexualism). In this instance, plaintiff's confidentiality claim is wholly conclusory and does not plausibly suggest that any deeply personal, confidential information regarding the plaintiff was either

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

overheard, or disclosed to others, by defendant Recore. The limited, due process right to privacy in this case therefore does not apply.

**13. Remaining defendants and claims**

Despite the liberal "notice pleading standard" ... a Section 1983–based complaint must still allege particular facts indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere "bald assertions and conclusions of law" do not suffice. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *see also Wright v. Smith,* 21 F.3d at 501 (A plaintiff asserting a claim under 42 U.S.C. § 1983 must demonstrate that **each defendant** was personally involved in violating his or her constitutionally protected rights.).

Even under the most generous of readings, Dorsey's conclusory allegations that all of the correctional officers from E–Block and lower F–1–15, together with their supervisors, violated Dorsey's civil rights fail to state any claim against the remaining defendants or to give any of the defendants fair notice of any claims against them.

**C. Frivolous claims**

**\*14** A court may dismiss an *in forma pauperis* complaint if it determines that the complaint is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1833 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotations omitted) (citing *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833)).

A complaint is factually frivolous if the facts alleged are clearly baseless, a category that includes allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez,* 504 U .S. 25, 32–33, 112 S.Ct. 1728, 1733 (1992) (citing *Neitzke,* 490 U .S. at 325–28, 109 S.Ct. at 1833). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially

noticeable facts available to contradict them." *Denton,* 504 U.S. at 33, 112 S.Ct. at 1733. A complaint is based on an "indisputably meritless" legal theory when either the claim lacks an arguable basis in law, *Benitez v. Wolff,* 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. *See Pino v. Ryan,* 49 F.3d 51, 53 (2d Cir.1995). Although the Court must accept the truth of plaintiff's allegations when considering dismissal for failure to state a claim, the federal *in forma pauperis* statute grants the Court "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual allegations are clearly baseless." *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833.

Moreover, the law in this Circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (other citations omitted)); *Pourzandvakil v. Humphry,* 94–CV–1594, 1995 WL 316935, at \*7 (N.D .N.Y. May 22, 1995) (Pooler, J.) (citation omitted).

Many of the allegations set forth in Dorsey's amended complaint are factually frivolous. Dorsey claims that he was purposely infected with bodily fluids, DNA, and poison by inmate porters under the direction of DOCS employees. Dorsey alleges that some of the defendants, along with their fathers, are criminals or are aware of past murders. Dorsey also alleges that inmate porters and correctional officers stole inmate property and then stored it on E–Block at Clinton Correctional Facility with the knowledge and acquiescence of DOCS employees and officials. These allegations, among others, are so outrageous and unbelievable as be factually frivolous.

**V. Conclusion**

**\*15** Upon review, the Court finds that Dorsey has (1) failed to comply with the Court's December Order, (2) not alleged sufficient facts in his amended complaint to state a claim for which relief may be granted under Section 1983, and (3) set forth many factually frivolous claims.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)

(Cite as: 2010 WL 2008966 (N.D.N.Y.))

Therefore, this action is **dismissed without prejudice.**

**WHEREFORE,** for the above-stated reasons, it is hereby

**ORDERED,** that this action is **dismissed without prejudice** due to plaintiff's failure to comply with the December Order and for failure to state a claim upon which relief may be granted; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on Dorsey.

N.D.N.Y.,2010.

Dorsey v. Fisher
Not Reported in F.Supp.2d, 2010 WL 2008966 (N.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.