# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

SELAM SELAH,

                 Plaintiff,

      v.

BRIAN FISCHER, *et al.*,

                 Defendants.

Civil Action No.
9:09-CV-1363 (GLS/DEP)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

<u>APPEARANCES</u>:

<u>FOR PLAINTIFF</u>:

SELAM SELAH, *Pro Se*
08-B-2266
Cape Vincent Correctional Facility
P.O. Box 739
Cape Vincent, NY 13618

<u>FOR DEFENDANTS</u>:

HON. ERIC SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>OF COUNSEL</u>:

CHRISTOPHER W. HALL, ESQ.
Assistant Attorney General

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Selam Selah, a New York State prison inmate, has brought this action against the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") and several present or past DOCCS employees, pursuant to 42 U.S.C. § 1983, alleging that they have deprived him of his civil rights. In his complaint, as amended, plaintiff alleges, *inter alia*, that defendants have failed to accommodate his religious beliefs and permit him to practice his chosen religion, while members of other religions are treated more favorably, and have thereby violated his constitutional rights to freely exercise his chosen religion and to equal protection in violation of the First and Fourteenth Amendment, as well as the Religious Land Use and Institutionalized Person Acts ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*

Now that discovery in the action is closed, the defendants remaining in the action have moved for summary judgment dismissing plaintiff's claims on the basis of lack of personal involvement and on the merits, additionally asserting their entitlement to qualified immunity from suit. For the reasons set forth below, I recommend that defendants' motion be granted.

# I.    BACKGROUND[1]

Plaintiff is a prison inmate currently in the custody of the DOCCS. Dkt. No. 84. While it is clear from plaintiff's prolific filings in this case that he believes the failure to accommodate his religious beliefs is systemic throughout the DOCCS and the many facilities which it operates, the claims set forth in plaintiff's amended complaint stem from events occurring at Gouverneur Correctional Facility ("Gouverneur"), where he was confined

---

[1]    Although plaintiff has opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1(a)(3) Statement of Material Facts. By its terms, Local Rule 7.1 provides, in part, that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced this portion of Local Rule 7.1 in cases involving a non-movant's failure to properly respond.  See, e.g., Elgamil v. Syracuse Univ., No. 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, pro se litigants are entitled to some measure of forbearance when defending against summary judgment motions. Jemzura v. Public Svc. Comm'n, 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, J.). The deference owed to pro se litigants, however does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. Robinson v. Delgado, No. 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., adopting report and recommendation by Hurd, M.J.). Stated differently, "a pro se litigant is not relieved of his duty to meet the requirements necessary to defeat a motion for summary judgment." Latouche v. Tompkins, No. 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, J.). Here, because plaintiff was warned of the consequences of failing to properly respond to defendants' Local Rule 7.1 Statement, Dkt. No. 198 at 3, and he has failed to do so, I will deem defendants' facts contained in their Local Rule 7.1(a)(3) Statement as having been admitted to the extent they are supported by accurate record citations. See, e.g., Latouche, 2011 WL 1103045, at *1; see also Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996). As to any facts not contained in defendants' Local Rule 7.1(a)(3) Statement, in light of the procedural posture of this case, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff. Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003).

from May 1, 2009, until May 17, 2010.[2] Dkt. No. 84 at 15; *see also* Dkt. No. 198-4 at 3.

Plaintiff subscribes to the religious tenets of the Ethiopian Orthodox Christian faith, also known as Ethiopian/Egyptian Coptic Orthodox Christianity ("EOC"). Dkt. No. 84 at 9. According to plaintiff, EOC is "similar to Orthodox Judaism" and "virtually identical" to Rastafarianism, with the exception that Jesus Christ is recognized by EOC followers as the Messiah, but is not by Rastafarians and Jews. *Id.* at 5, 9. Members of EOC observe several major and minor holy days, including (1) Ethiopian Christmas, (January 7) to celebrate the birth of Jesus; (2) Ethiopian Epiphany/Revelation of Holy Trinity (January 19); (3) Ethiopian Empress Menen's birthday/Annunciation to Virgin Mary (March 25); (4) Palm Sunday; (5) Holy Friday; (6) Ascension Thursday (40 days following the Ethiopian Easter); (7) Ethiopian Emperor Haile Selassie's birthday (July 23); (8) the Ethiopian New Year (September 11); (9) the Coronation of Haile Selassie I (November 2); and (10) Ethiopian Liberation Day (May 5). Dkt. No. 84 at 2, 5. In addition, EOC followers observe Wednesdays and Fridays as holidays when they must fast, and Saturdays and Sundays as days of rest during which they are forbidden from "perform[ing] secular tasks of menial or servile labor[.]" *Id.* at

---

[2]     Plaintiff's amended complaint also raises issues concerning the alleged failure to accommodate his religious beliefs following his transfer into the Orleans Correctional Facility. Dkt. No. 84 at 15-16.

5. The followers of EOC subscribe to Old Testament dietary laws, similar to those followed by Orthodox Jews, with heavy emphasis placed on observing "Kosher" dietary requirements. *Id.*

In his amended complaint, plaintiff alleges that he and other EOC followers have been discriminated against by prison officials in various ways, including through defendants' (1) refusal to recognize EOC as a religion in the DOCCS statewide correctional system database; (2) refusal to permit him and other EOC followers to possess and display headgear, a prayer shawl, prayer girdle, prayer rug, and other religious attire and artifacts consistent with their beliefs; (3) refusal to allow members of his sect to observe and commemorate the major and minor holy days; (4) failure to permit plaintiff to participate in EOC congregate religious services and education; (5) failure to provide meals consistent with Old Testament dietary laws; (6) failure to permit the plaintiff and other EOC believers to wear beards and dreadlocks or braids; and (7) refusal to exempt the plaintiff and other EOC members from work on Saturdays and Sundays. *See generally* Dkt. No. 84.

The policies and practices regarding ministerial services and religious programs in the New York prison system are governed by DOCCS Directives Nos. 4200 and 4202, as well as the DOCCS's religious holy day calendar. Dkt. No. 198-4 at 2; Dkt. No. 198-5 at 2-3. Responsibility for implementation of those policies is entrusted to the DOCCS Office of Family, Ministerial, and

Volunteer Services ("OFMVS") which, in turn, relies upon chaplains at the various individual correctional facilities to meet the pastoral needs of inmates of varying religious faiths.[3] [Dkt. No. 198-4 at 2](). At the local facility level it is the prison superintendent's duty, in the first instance, to ensure compliance with DOCCS religious policies. [Dkt. No. 198-8 at 2](). In the case of Gouverneur, that responsibility was delegated to the deputy superintendent for programs, who in turn relied upon the coordinating chaplain to attend to the pastoral needs of the facility's inmates. *Id.*

Plaintiff complained to various DOCCS officials claiming that his religious beliefs were not being accommodated, while Rastafarians were provided many of the same accommodations sought by him. [Dkt. No. 84 at 5](), 6-7, 11-13. The alleged failure of prison officials to accommodate plaintiff's religious beliefs was the subject of multiple grievances filed by Selah while at Gouverneur. [Dkt. No. 198-8 at 3](); [Dkt. No. 198-9](); [Dkt. No. 198-10](); [Dkt. No. 198-11](); [Dkt. No. 198-12](); [Dkt. No. 198-13](). The first two, which were addressed separately by the Inmate Grievance Review Committee ("IGRC") at Gouverneur and the facility superintendent before being consolidated on review by the Central Office Review Committee ("CORC"), are identified as GOV-14596-09 and GOV-14611-09, and were filed on May 4, 2009, and May 11, 2009, respectively. [Dkt. No. 198-9 at 4](), 11. Those grievances alleged

---

[3]     The OFMVS operates under the auspices of the DOCCS Deputy Commissioner for Programs. [Dkt. No. 198-2 at 2](); [Dkt. No. 198-5 at 1]().

religious discrimination generally and requested that EOC be recognized by the DOCCS.[4] *Id.* Following the IGRC's denial of both grievances, defendant Justin Taylor, the superintendent at Gouverneur at the time, advised plaintiff that, to the extent the grievances sought to establish policy concerning a departmental issue, neither the IGRC nor he had the authority to make those changes. Dkt. No. 198-9 at 8, 18. The superintendent's determinations were upheld on review to the CORC on July 8, 2009. Dkt. No. 198-9 at 2. In its decision, the CORC noted the following:

> [T]he grievant is free to practice his chosen religion and although the department takes no position on it, ministerial services staff will attempt to accommodate the grievant if feasible. This will, however, require that the grievant provide ministerial staff with the name and address of his church and a clergy member whom they may contact to verify religious tenets. Having done so, the grievant may then request approval for head wear, a beard permit and clergy visitation. CORC notes that the grievant has been advised that proselytizing is prohibited by Directive #4202. CORC advises the grievant to address any further concerns regarding the Cold Alternative Diet (CAD) to the Food Service Administrator and any specific religious concerns to the Coordinating Chaplain for the most expeditious means of resolution.

*Id.*

---

[4]      Defendants did not submit a copy of either grievance number GOV-14596-09 or GOV-14611-09 in support of their motion for summary judgment. *See generally* Dkt. No. 198-9. My description of those grievances, as set forth above, is based upon an official Gouverneur document entitled "Case History and Record." *Id.* at 4, 15. The identity of the individual that prepared the documents is not disclosed. *Id.*

Plaintiff's second grievance, GOV-14641-09, was filed on May 28, 2009, and alleged that he was wrongfully denied his request to the Food Service Administrator at Gouverneur that he be provided fish, poultry, nuts or fruits, instead of beef or lamb, on Wednesdays and Fridays, which, according to plaintiff, are fasting days for EOC followers. Dkt. No. 198-10 at 6. Plaintiff also complained in the grievance that he was precluded from "enjoy[ing] congregate religious services," claimed that he should be exempt from the DOCCS initial haircut and beard-length policies and the "ppd T.B. skin test," and also contended that he should be permitted to wear a crown in accordance with his faith.[5] *Id.* at 8. The IGRC and defendant Taylor both again denied plaintiff's grievance because, based on their interpretation of plaintiff's grievance, he was seeking a change to a departmental policy, a matter beyond the authority of both the IGRC and superintendent. *Id.* at 4, 10. The CORC upheld that determination by memorandum dated July 8, 2009, with the same notation included in response to grievance numbers GOV-14596-09 and GOV-14611-09. *Id.* at 2; Dkt. No. 198-9 at 2.

On October 19, 2009, plaintiff filed yet another grievance at Gouverneur, identified as GOV-15011-09, involving religion, on this occasion

---

[5]     Because defendants included a copy of grievance number GOV-14641-09 in support of their motion, my description above is based on my review of the grievance. Dkt. No. 198-10 at 5-9.

requesting clarification of the religious holidays recognized by the DOCCS.[6] Dkt. No. 198-11 at 4. In response, defendant Taylor noted that "[a]ll required holidays and religious celebrations are determined by [the DOCCS] Central Office," whose dictates in that regard are followed at each particular facility. Dkt. No. 198-11 at 6. Defendant Taylor also referred plaintiff to the DOCCS religious holy day calendar.[7] Dkt. No. 198-11 at 6. The CORC affirmed defendant Taylor's determination on January 13, 2010, and Selah was advised "to address any further concerns regarding religious and cultural holidays to the Director of Ministerial, Family and Volunteer Services in [the DOCCS] Central Office." Dkt. No. 198-11 at 2.

In his fifth grievance, GOV-15083-09, filed on November 18, 2009, plaintiff requested that EOC be recognized by the DOCCS throughout the statewide correctional system as a legitimate religion, and that he and other EOC followers be afforded the right to celebrate and observe EOC religious and national holidays, be exempted from assigned work on recognized holy days, and be allowed to participate in religious fasts, feasts and festivals.[8]

---

[6]     Because defendants did not provide a copy of the original grievance number GOV-15011-09, my description above is based on the "Case History and Record" document submitted in connection with the grievance. *See generally* Dkt. No. 198-11.

[7]     A copy of that document, entitled Religious Holy Day Calendar for the year 2014, was submitted as an exhibit to defendant Morris' declaration in support of defendants' motion. Dkt. No. 198-7.

[8]     Although defendants submitted a copy of the original grievance number GOV-15083-09, the second page is not legible. Dkt. No. 198-12 at 11. The first page of the

[Dkt. No. 198-12 at 4](). On December 2, 2009, the IGRC responded by advising plaintiff to discuss his problems or concerns with the facility chaplain. [Dkt. No. 198-12 at 5](). That determination was upheld by defendant Taylor, who reiterated the reminder to plaintiff that he should direct concerns regarding religious dietary constraints to "the Food Service Administrator and any specific religious concerns to the coordinating Chaplain[.]" [Dkt. No. 198-12 at 6](). The CORC rejected plaintiff's appeal of defendant Taylor's determination on February 24, 2010. [Dkt. No. 198-12 at 2](). In its determination, the CORC "note[d] that the grievant is free to practice his chosen religion and although the department takes no position on it, ministerial services staff will attempt to accommodate the grievant if feasible." *Id.* The CORC further stated that any accommodation would require that Selah provide "ministerial staff with the name and address of his church and a clergy member whom they may contact to verify his religion's tenets." *Id.* Addressing plaintiff's concern regarding the DOCCS's recognition of his religion, the "CORC further note[d] that it is not possible to include every religion on the NYS DOCs computer system[,]" and for that reason, plaintiff's "religious designation is indicated as 'other.'"

Plaintiff's sixth and seventh grievances at Gouverneur concerning his religious rights, identified as GOV-15184-10 and GOV-15219-10, were filed

---

grievance explicitly threatens to sue the DOCCS if it "fail[s] to remedy the wrongs" described in the grievance. *Id.* at 10.

on January 19, 2010, and February 8, 2010, respectively. Dkt. No. 198-13 at 7-11, 18-24, 47-50. Grievance number GOV-15184-10 generally alleges that Selah was the subject of an improper misbehavior report charging him with, *inter alia*, smuggling food from the mess hall. *Id.* at 47- 50. Plaintiff alleged that he intended to bring food out of the mess hall because he was observing a fast and intended to eat the food later in the day in accordance with EOC doctrine. *See generally id.* In grievance number GOV-15219-10, plaintiff complains that the DOCCS does not recognize his religion and has unfairly placed the responsibility on him to notify the DOCCS of his religious needs.[9] *See generally id.* at 7-11, 18-24. The facility's IGRC responded to grievance number GOV-15219-10, on February 18, 2010, recommending that plaintiff correspond in writing directly to defendant Thomas Kilian, the Senior Chaplin at Gouverneur, concerning any issues regarding policies or procedures related to religious practices.[10] *Id.* at 12. Similarly, the IGRC responded to grievance number GOV-15184-10 on January 28, 2010, by advising plaintiff to correspond with defendant Kilian. *Id.* at 39. The determinations by the IGRC regarding those two grievances were affirmed by defendant Taylor in

---

[9]     Defendants have submitted a copy of grievance numbers GOV-15184-10 and GOV-15219-10 in support of their motion for summary judgment. Dkt. No. 198-13 at 7-11, 18-24, 47-50.

[10]     According to the documents submitted in support of defendants' motion, plaintiff has misspelled this individual's name as "T. Killian." *Compare* Dkt. No. 84 *with* Dkt. No. 198-4. The clerk of the court is respectfully directed to modify the court's records to reflect the correct spelling of defendant Kilian's name.

his responses dated February 16 and 24, 2010, which in relevant part, instructed plaintiff to coordinate his religious needs with defendant Kilian. *Id.* at 25, 40. Defendant Taylor's determinations were upheld by the CORC on August 4, 2010, in a decision that consolidated both grievance numbers GOV-15184-10 and GOV-15219-10. *Id.* at 2. In its decision, the CORC noted that, pursuant to DOCCS Directive No. 4202, in cases where a religion is not represented by certified chaplains, the DOCCS "will seek advice on matters of religious doctrine, practice and tradition from recognized religious authorities in the outside community." *Id.* The CORC further noted that a DOCCS Chaplain had met with the plaintiff on July 6, 2010, to discuss his religious demands, and the Chaplain contacted "a recognized religious authority in the outside community." *Id.* The CORC concluded that it "has not been presented with sufficient evidence to support the grievant's claim that the Department has not accommodated the legitimate spiritual needs of the grievant as reasonably as possible in a manner which is commensurate with its legitimate correctional interests and the safety and security of its respective facilities."[11] *Id.*

---

[11] It appears that, by the time the CORC's decision was rendered with respect to grievance numbers GOV-15184-10 and GOV-15219-10, plaintiff had been transferred out of Gouverneur into another facility. Dkt. No. 198-13 at 2. In its decision, the CORC "advise[d] [plaintiff] to address any further religious concerns to the Facility Coordinating Chaplain at his current facility." *Id.*

In his position as coordinating chaplain at Gouverneur, defendant Kilian serves as the principal advisor to the superintendent on matters regarding religious programs and practices and is responsible for planning the overall religious program at the facility, in collaboration with other chaplains assigned there. Dkt. No. 198-4 at 1. Defendant Kilian interacted with the plaintiff while he was at Gouverneur and repeatedly advised that, in order for him to obtain his assistance in accommodating Selah's beliefs, plaintiff needed to inform defendant Kilian, in writing, of his dietary requirements, the holy days he wished to observe, and the religious books and articles that he desired to possess. *Id.* at 2-3. Defendant Kilian also repeatedly asked Selah to provide the name of a clergy person he wished to have visit, and indicated that, if possible, he would facilitate the visit. *Id.* at 3.

Defendant Kilian met with Selah on February 11, 2010. Dkt. No. 198-4. During that meeting, Kilian informed Selah that he was to correspond directly with Kilian concerning religious matters and was instructed to provide a specific list or request concerning the facilitation of any religious observants. Dkt. No. 198-4 at 6. On the day of the meeting, plaintiff signed a memorandum from defendant Kilian specifically instructing him to provide any religious-based requests to Kilian, as the coordinating chaplain, in writing. Dkt. No. 201 at 27. Plaintiff acknowledged that he would provide defendant Kilian with a list of EOC holy days. *Id.* Plaintiff's failure to comply with that

directive resulted in the issuance of a misbehavior report for not following facility procedures. *Id.* at 25.

Between February 12 and February 15, 2010, Kilian received "voluminous responses" from the plaintiff concerning his needs. Dkt. No. 198-4 at 6. The materials submitted by Selah were forwarded by Kilian to Omega Austin, the Assistant Director of OFMVS with a notation that Selah's religion was listed in departmental records as "other" and that he was placed on an Cold Alternative Diet ("CAD") to accommodate his religious dietary requirements, and additionally had been relieved of work and programs for the holy day of Ethiopian Christmas. *Id.*; Dkt. No. 201 at 35. Kilian requested that Austin provide additional instructions regarding plaintiff's requests. Dkt. No. 201 at 35. Further correspondence from Selah was forwarded by defendant Kilian on March 25, 2010, to Deacon Donald T. Sharrow, at the DOCCS Central Office. Dkt. No. 198-4 at 6-7. In his cover letter accompanying those materials, defendant Kilian indicated he would advise plaintiff of the need to provide a name and address of an EOC clergy as directed by the CORC. Dkt. No. 201 at 106. Defendant Kilian did not receive any further correspondence regarding plaintiff through the date of Selah's transfer out of Gouverneur on May 17, 2010. Dkt. No. 198-4 at 7.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on December 7, 2009. Dkt. No. 1. Since its inception, the action has had an extensive and tortured procedural history that includes over 200 docket entries, and features repetitive serial filings by plaintiff, including, but not limited to, twenty-nine requests for injunctive relief or supplemental materials in support of previously filed requests for injunctive relief, Dkt. Nos. 5, 69, 74, 76, 86-89, 91, 95-96, 99, 102-103, 105-07, 109-10, 131, 155, 157, 164, 176, 182, 189, 211, 214, 220; eight requests for the appointment of *pro bono* counsel or supplemental materials in support of previously filed requests for counsel, Dkt. Nos. 6, 115, 118, 122, 135, 208-09, 211; and twenty-one miscellaneous submissions that seek no relief, seek relief that cannot be obtained from the court, include discovery-related materials but request no specific court intervention, relate to settlement, and/or request copies from the court of voluminous materials submitted earlier by plaintiff, Dkt. Nos. 58, 72, 80-81, 83, 108, 117, 119, 142, 144, 147, 150-51, 154, 158, 160, 166, 184, 187, 197, 206.

On September 14, 2011, with leave of court, plaintiff filed an amended complaint, which serves as the currently operative pleading in the case.[12]

---

[12] Both the signed version of plaintiff's amended complaint and the proposed pleading proffered by Selah in support of his motion for leave to file that amended complaint appear to be lacking page two and the corresponding allegations included within paragraphs three through a portion of paragraph seven. Dkt. Nos. 68-1 and 84.

Dkt. No. 84. As defendants, plaintiff's amended complaint names (1) the DOCCS; (2) the former DOCCS Commissioner, Brian Fischer; (3) the retired DOCCS Chaplain to Rastafarian inmates, Abuna Ammanuel Foxe; (4) the DOCCS Director of the OFMVS, Cheryl Morris; (5) the DOCCS Greek Orthodox Christian Chaplain, Fr. Mantzouris; (6) the Director of the DOCCS Inmate Grievance Program, Karen Bellamy; (7) the Superintendent at Gouverneur, Justin Taylor; (8) the Coordinating Chaplain at Gouverneur, Thomas Kilian; and (9) the former DOCCS Director of OFMVS, Mark Leonard, all of whom are sued in both their individual and official capacities. *See generally id.* Plaintiff's amended complaint asserts three claims, including (1) a violation of his right to freely exercise his chosen religion as guaranteed under the First Amendment; (2) the denial of equal protection in violation of the Fourteenth Amendment; and (3) infringement of his statutory rights under the RLUIPA. *Id.* Plaintiff seeks various forms of monetary, declaratory, and injunctive relief. *Id.*

Since the filing of plaintiff's amended complaint, the defendants have brought three dispositive motions seeking dismissal of the action. In the first, filed on November 21, 2011, they sought dismissal of plaintiff's original complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 111. That motion was granted only to the limited extent of ordering dismissal

of all claims against the DOCCS. Dkt. Nos. 125, 126. Defendants then filed a motion for judgment on the pleadings on September 17, 2012, pursuant to Rule 12(b)(c) of the Federal Rules of Civil Procedure. Dkt. No. 136. That second motion resulted in dismissal of plaintiff's claims against defendants Mantzouris, Bellamy, and Leonard, without leave to replead, but was otherwise denied. Dkt. Nos. 165, 177.

On March 31, 2014, following the close of discovery, defendants moved for the entry of summary judgment dismissing plaintiff's remaining claims, arguing that the record does not adequately reflect the personal involvement of two of the defendants, the plaintiff's claims lack merit, and, alternatively, defendants are all entitled to qualified immunity from suit. Dkt. No. 198. Plaintiff has since responded in opposition to defendants' motion. Dkt. Nos. 207, 212, 219. Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute

17

as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553;

*Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B.  Personal Involvement

In their motion, defendants first contend that the record evidence does not support a finding that defendants Fischer and Foxe were personally involved in the alleged violations of plaintiff's rights under the Constitution or RLUIPA. Dkt. No. 198-14 at 3-6.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff

must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[13]

### 1. Defendant Fischer[14]

Defendant Fischer, the Commissioner of the DOCCS, is mentioned only four times in plaintiff's amended complaint. Dkt. No. 84 at 13, 14, 15-16. Plaintiff alleges that (1) he intends to "keep Defendant[ ] . . . Fischer . . . as [a] named defendant[ ] in this case," *id.* at 15; (2) members of the prison staff at the Orleans Correctional Facility report to defendant Fischer, *id.*; (3) defendant Fischer, as the Commissioner of the DOCCS, owed plaintiff "a duty of care" related to "[d]efendant Fischer's responsibility for directing policies," *id.* at 13; and (4) defendant Fischer has "consulted with and [has] relied on Defendant Abuna Foxe to assist [him] in authoring and promulgating [DOCCS] rules, directives, regulations and policies concerning Rastafarianism and decisions about Ethiopian/Egyptian Coptic Orthodox

---

[13]     All unreported decisions cited to in this report have been appended for the convenience of the *pro se* plaintiff.

[14]     Anthony Annucci has replaced defendant Fischer as the Acting Commissioner of the DOCCS. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Annucci is automatically substituted for defendant Fischer to the extent defendant Fischer has been sued in his official capacity for purposes of any declaratory or injunctive relief. Fed. R. Civ. P. 25(d).

Christian doctrine, practices, tradition, beliefs, and observances . . . that the Defendants, the [DOCCS] and its agents, have used to subject the Plaintiff . . . to religious discrimination and deprivations," *id.* at 14*.*

It appears that plaintiff's claims against defendant Fisher are predicated largely upon his supervisory role as the DOCCS Commissioner. It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*" *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In my prior report, addressing plaintiff's motion for judgment on the pleadings, I found that only the fourth allegation listed above against

defendant Fischer could give rise to a plausible claim. In doing so, in light of the procedural posture of the case, I generously construed plaintiff's complaint as alleging that defendant Fischer is responsible for promulgating policies that have prevented the plaintiff from (1) possessing and displaying head gear, a prayer shawl, a prayer girdle, a prayer rug, and other appropriate religious attire and artifacts; (2) observing and commemorating holy days; (3) participating in congregate religious services and education; (4) eating meals consistent with Old Testament dietary laws; (5) wearing beards and dreadlocks or braids; and (6) being exempt from work on Saturdays and Sundays. *See generally* Dkt. No. 84; Dkt. No. 165 at 14.

Despite the opportunity for plaintiff to engage in discovery, the record before the court fails to reveal any evidence from which a reasonable factfinder could conclude that defendant Fischer was aware of and failed to remedy any of the constitutional or statutory violations alleged by plaintiff. At this stage of the litigation, the burden is on plaintiff to come forward with evidence giving rise to a genuine dispute of material fact regarding whether defendant Fischer created or enforced DOCCS policies that specifically precluded plaintiff from possessing religious accoutrements, observing and celebrating holy days, participating in congregate services and the appropriate dietary restrictions for EOC, wearing his hair in dreadlocks and/or

braids and wearing his beard a certain length, and working on Saturdays and Sundays.

In his response in opposition to defendants' motion, plaintiff includes the following argument:

> [W]hile the Defendants claim that they have not . . . created, implemented, nor carried out any discriminatory prison policies . . .[,] in actuality [the DOCCS] **Directive #4040, §701.5, (d) (2) (ii) (7/12/06)** states in pertinent part: **The CORC functions on behalf of the Commissioner and under his authority. CORC decisions have the [same] effect of [Departmental] directives** . . . . The Departmental Directives are in other words **prison policies** . . . .

Dkt. No. 207 at 8 (emphasis and bracketed text in original). This argument appears to suggest that, because the CORC acts on behalf of the DOCCS Commissioner and under his authority, any decision by the CORC has the same force and effect as a departmental directive from the Commissioner, which then becomes controlling prison policy. Even liberally construed, however, this argument misses the mark and merely serves to underscore the fact that defendant Fischer's personal involvement in this case is based on his role as the DOCCS Commissioner. This is not enough at the summary judgment stage to give rise to a dispute of fact regarding personal involvement. Because the record is lacking in any evidence of defendant Fischer's personal involvement in the decisions rendered that allegedly

denied plaintiff the right to exercise his chosen religion, I recommend that all claims against him be dismissed.[15]

## 2. Defendant Foxe

Defendant Foxe is mentioned five times in plaintiff's amended complaint. Dkt. No. 84 at 10, 14-16. Plaintiff alleges that defendant Foxe (1) founded the Ba Beta church of Haile Selassie I sect of Rastafarians, *id.* at 10; (2) is not an expert on plaintiff's religion, *id.* at 14; (3) was excommunicated from the Ethiopian Orthodox Church, *id.*; (4) assisted defendants Fischer and Morris in creating the policies and regulations allegedly responsible for violating plaintiff's rights when they

consulted with him, *id.*; and (5) possessed the authority to approve the requests made by Orleans Correctional Facility staff as they relate to plaintiff's religious accommodations, *id.* at 15-16.

Plaintiff's allegations against defendant Foxe were also addressed in my prior report addressing defendants' motion for judgment on the pleadings. I concluded that the first, third, and fifth allegations were legally insufficient to support a finding of liability for damages on the part of defendant Foxe. Dkt.

---

[15]     To the extent the assigned district judge does not dismiss this action in its entirety, I recommend dismissal of only the damage claims against defendant Fischer at this time. Because plaintiff also seeks declaratory relief, which could impact DOCCS policies, Anthony Annuci, as defendant Fischer's successor, should remain in the action, in his official capacity, in the event it is necessary to affect declaratory and injunctive relief with respect to the agency.

No. 165 at 16-17. I further found, however, that given the early procedural stage at which the issue was being raised, the allegations that defendant Foxe contributed to creating and maintaining the DOCCS policies and practices, which, plaintiff alleges, violated his rights were sufficient at that point to state a plausible claim against that defendant. *Id.* at 17.

Now that defendants have moved for summary judgment, the procedural setting has been altered, and the pending motion now requires a careful review of the record to determine whether any evidence has been presented to inculpate defendant Foxe in the violations alleged. Based upon that review, I find that the record now before the court is lacking in evidence to support a finding that defendant Foxe was personally involved in the alleged violations. In his declaration, defendant Foxe denies consulting with defendants Fischer or Morris "concerning the policies of the Division of Family, Ministerial, and Volunteer Services" or "communicat[ing] with [defendants Fischer or Morris] regarding [plaintiff]'s complaints."[16] Dkt. No. 198-3 at 3. Moreover, aside from a single discussion between Foxe and the plaintiff "[i]n the latter part of 2010," after plaintiff had been transferred out of Gouverneur, defendant Foxe had "no further contact, in person or in writing,

---

[16]    It is worth noting that both defendants Fischer and Morris also deny "consult[ing] with or rely[ing] on defendant Abuna Foxe . . . to assist [them] in authoring and promulgating rules, directives, regulations and policies concerning Rastafarianism and decisions about [EOC] doctrine, practices tradition, beliefs and observances." Dkt. No. 198-2 at 3; Dkt. No. 198-5 at 8.

with [plaintiff]." *Id.* In light of the fact that plaintiff has failed to come forward with evidence to contradict these statements, I recommend that his claims against defendant Foxe be dismissed based upon a lack of personal involvement.

### 3. Defendant Morris[17]

Based on my review of the record, it is not clear how defendant Morris was involved in the alleged violations of plaintiff's rights under the Constitution and RLUIPA. Although in part I. of this report and in my previous report and recommendation, Dkt. No. 165 at 14-16, I generously construed plaintiff's amended complaint as suggesting that defendant Morris is responsible for various specific conduct, I find there is no record evidence to support plaintiff's allegations against that defendant. In defendant Morris' declaration submitted in support of defendants' motion, she provides the court with information regarding her role as the Director of the OFMVS, the individuals to whom she reports, and the role the OFMVS serves within the DOCCS, and refers the court to the declarations of defendants Kilian and

---

[17]    Defendants' motion does not challenge the sufficiency of plaintiff's evidence regarding the personal involvement of defendant Morris in connection with the violations alleged. This notwithstanding, I have addressed the personal involvement of defendant Morris *sua sponte* pursuant to the court's inherent authority. *See Williams v. Fischer*, No. 13-CV-0118, 2013 WL 2945396, at *3 (W.D.N.Y. June 12, 2013) ("A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal.); *Winfield v. Bishop*, No. 09-CV-1055, 2010 WL 2773343, at *2 (N.D.N.Y. June 21, 2010) (Lowe, M.J.), *report and recommendation adopted by* 2010 WL 2773346 (N.D.N.Y. July 12, 2010) (Kahn, J.), (recommending dismissal of a defendant *sua sponte* based on lack of personal involvement).

Taylor for specific examples of how plaintiff's religious needs were attempted to be served while he was confined at Gouverneur. *See generally* Dkt. No. 198-5. As was mentioned above, defendant Morris denies ever consulting with defendant Foxe concerning plaintiff's requests. *Id.* at 8. As for plaintiff's proof, he has offered no evidence to support his allegations regarding defendant Morris' involvement. While general and conclusory allegations occasionally will permit a plaintiff's claim to pass muster in connection with a motion dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, at the summary judgment stage he is required to set forth evidence that gives rise to a genuine dispute of material fact. Plaintiff's failure to do so in this case is fatal to his claim against defendant Morris. Because I find there is no record evidence from which a reasonable factfinder could conclude that defendant Morris was personally involved in the constitutional and statutory violations alleged, I recommend the dismissal of all claims asserted against her.

### C. Qualified Immunity

Defendants contend that they are entitled to qualified immunity from suit in this action based on their conduct as alleged by plaintiff. Dkt. No. 198-14 at 21-22. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v.*

*Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly

established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citing *Reichle*, 132 S. Ct. at 2093). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). "To this end, a plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Terebesi*, 764 F.3d at 230 (quoting *al-Kidd*, 131 S. Ct. at 2083). However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

After carefully considering the record evidence and the parties' memoranda submitted in connection with defendants' motion, I recommend a finding that defendants are entitled to qualified immunity in this action. Under

the circumstances, and even assuming, without deciding, that defendants Kilian and Taylor violated plaintiff's clearly established rights, I conclude that it was objectively reasonable for them to believe that their conduct did not violate plaintiff's rights under the First Amendment or RLUIPA.

       1.    <u>Defendant Kilian</u>

According to the record, as early as December 1, 2009, plaintiff was instructed by Deputy Commissioner Kenneth S. Perlman to refer his requests regarding his religious needs to defendant Kilian, the coordinating chaplain at Gouverneur. Dkt. No. 201 at 2. On December 23, 2009, plaintiff was again advised by R. Pirie, the DOCCS Deputy Superintendent for Program Services, to refer his religious needs to defendant Kilian. *Id.* at 6. Pirie's memorandum explained that, in order to obtain assistance in having his religious beliefs met, plaintiff must provide defendant Kilian "specific requests," which would enable him to consult with "those who are authorities on such religious matters, as well as Central Office staff in Ministerial Services[.]" *Id.*

According to a letter from plaintiff, dated January 2, 2010, and addressed to several individuals, including defendant Kilian and Pirie, defendant Kilian met with plaintiff in or around that date. Dkt. No. 102 at 8. During that meeting, defendant Kilian asked plaintiff "to draft a list of some of the various things and ways that [he] desire[s] and/or request[s] to exercise

[his] freedom of religion[.]" *Id.* Plaintiff's letter then asks for EOC to be listed as a religion in the DOCCS database, that EOC "duly be recognized as a bonifide [sic] and legitimate religious designation and religion by the [DOCCS]," that he "and similarly situated inmates" that adhere to EOC be permitted to celebrate "major and minor holy days of significance . . . and to be allocated daily kosher meals (at least one hot meal per day) and special holy days meals." *Id.* It appears from the record that defendant Kilian did not receive this letter from plaintiff. Instead, it appears that the letter was sent to and received by Pirie, who responded to the letter in a memorandum dated January 6, 2010, in which Pirie wrote as follows:

> As Deacon Kilian advised you at [your] meeting [with him], you should direct any and all requests for religious assistance to him because he is the Coordinating Chaplain and in the best position to assist you. Therefore, I am forwarding your letter to him so that he may investigate and respond to your requests . . . .

*Id.* at 21.

Less than a month later, plaintiff again met with defendant Kilian again. Dkt. No. 198-4 at 6; Dkt. No. 201 at 27. Defendant Kilian provided plaintiff with a memorandum that stated the following:

> Please be advised that I am in receipt of copies of your recent religious requests and grievance filing.

31

> In order to best help you with any religious/faith group matters you may have you must follow these procedures:
>
> > 1. You are to correspond, in writing, with me DIRECTLY regarding any religious/faith group concerns you may have so that I may best serve you in a timely manner.
> >
> > 2. You are to provided me DIRECTLY with a specific list or request regarding any matter of religious/faith group practice that you claim is part of your religious observance that you want facilitated on your behalf. Any list or request will be submitted to Ministerial and Family Services, Central Office, for their recommendation and approval.

*Id.* Plaintiff signed and acknowledged receipt of this memorandum on the same day. *Id.*

Following this meeting, plaintiff provided defendant Kilian with "voluminous" submissions dated February 12, 2010, and February 15, 2010. Dkt. No. 198-4 at 6; Dkt. No. 201 at 36-104. Defendant Kilian forwarded plaintiff's submissions to Omega Alston, the Assistant Director Ministerial Services, seeking guidance as to "what further action is to be taken regarding [plaintiff's] religious requests[.]" Dkt. No. 201 at 35. Similarly, defendant Kilian submitted additional correspondence received by plaintiff to Deacon Donald T. Sharrow at the Central Office on March 25, 2010. Dkt. No. 106-19. According to defendant Kilian, "[a]s of May 17, 2010, the date of [plaintiff]'s

transfer out of Gouverneur, [he] had not received further correspondence concerning [plaintiff]." Dkt. No. 198-4 at 7.

Aside from the evidence described above, there is nothing in the record before the court regarding defendant Kilian's conduct in this matter. Although plaintiff's amended complaint, liberally construed, alleges defendant Kilian is responsible for denying him various specific religious requests, there is no record to support those allegations. Even assuming, however, that plaintiff's allegations are true, and assuming for the sake of argument that the allegations were sufficient to support a reasonable factfinder's conclusion that defendant Kilian violated plaintiff's rights under the First Amendment and RLUIPA, I find that it was reasonable for defendant Kilian to believe that his responses to plaintiff's letters did not violate his rights. Based on the record before me, it appears defendant Kilian met with plaintiff on two occasions, instructed him to put in writing his specific requests regarding his religious exercise, and forwarded plaintiff's demands to the appropriate personnel within the DOCCS for further guidance. Because I find that no reasonable factfinder could conclude that it was objectively unreasonable for defendant Kilian to believe that his conduct in this case did not violate plaintiff's clearly established constitutional and statutory rights, I recommend defendant Kilian be afforded qualified immunity from suit and the claims asserted against him be dismissed.

2.     Defendant Taylor

The record evidence reflects that defendant Taylor affirmed the IGRC's denials of each of plaintiff's grievances described in part I. of this report. Dkt. No. 198-8 at 3-5; Dkt. No. 198-9 at 8, 18; Dkt. No. 198-10 at 6; Dkt. No. 198-11 at 6; Dkt. No. 198-12 at 6; Dkt. No. 198-13 at 25, 40. In addition, defendant Taylor instructed defendant Kilian and Deputy Superintendent Pirie to take specific steps to address plaintiff's religious requests and cooperate with the OFMVS to this end. Dkt. No. 198-8 at 3, 5. Having had an opportunity to review plaintiff's grievances and defendant Taylor's responses, I find that no reasonable factfinder could conclude that his conduct was objectively unreasonable or that he knew or should have known that his conduct violated plaintiff's rights under the Constitution or RLUIPA. As defendant Taylor emphasizes, he denied plaintiff's appeals in connection with the grievances based on his belief that plaintiff was seeking relief that he was not authorized to provide, and he provided plaintiff with instructions regarding how to seek the relief requested. *Id.* at 3-5. Moreover, defendant Taylor responded in accordance with DOCCS policies that were in place at the time. *Id.* at 5; *see Green v. Bauvi*, 46 F.3d 189, 195 (2d Cir. 1995) ("[A]dherence to [state regulations] may be pertinent in considering whether a reasonable official would have known his actions violated the Constitution."). Accordingly, even assuming that defendant Taylor violated plaintiff's clearly established

rights by denying his appeals from each of his grievances, I recommend defendant Taylor be afforded qualified immunity from suit and the claims asserted against him be dismissed.[18]

## IV.   SUMMARY AND RECOMMENDATION

In this action, plaintiff complains of a host of actions taken by DOCCS employees that allegedly imposed substantial burdens upon his right to freely exercise his chosen religion. After a careful review of the record in the case, I find the record fails to give rise to a genuine dispute of fact regarding whether defendants Fischer, Foxe, and Morris were personally involved in the alleged conduct. In addition, even assuming plaintiff's allegations are true, and without rendering any finding regarding whether defendants did, in fact, violate plaintiff's rights under the First Amendment and RLUIPA, I find that no reasonable factfinder could conclude that it was unreasonable for defendants Kilian and Taylor to believe that their conduct did not violate plaintiff's rights.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No.198) be granted, and that all remaining claims set forth in plaintiff's complaint be DISMISSED.

---

[18]   Although defendants seek dismissal of plaintiff's claims on a variety of grounds, because I find their arguments concerning personal involvement and qualified immunity dispositve, I have not addressed the other grounds upon which they rely.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further hereby ORDERED that the clerk serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     March 24, 2015
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dale HENDRICKSON, Plaintiff,
v.
UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
Jan. 24, 1994.

MEMORANDUM AND ORDER
McKENNA, District Judge.

*1 On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an in-
mate then in confinement at the Federal Correction-
al Institution in Otisville, New York ("Otisville"),
filed this action for injunctive relief and damages
based upon alleged violations of his rights under
the United States Constitution, Amendments I, IV,
V, VI, IX, and XIII, and upon violations of various
laws and/or regulations governing prison adminis-
tration.[FN1] The Complaint named as defendants
G.L. Hershberger ("Hershberger"), the United
States Attorney General ("Attorney General"), Gary
Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith
("Keith"), the Bureau of Prisons ("BOP"), and the
Otisville Medical Department ("OTV Medical De-
partment") (collectively "Defendants"). Defendants
moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure,
or, in the alternative, for summary judgment pursu-
ant to Rule 56 of the Federal Rules of Civil Proced-
ure. For the reasons set out below, Defendants' Rule
12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Com-
plaint, pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, for failure to state a claim upon

which relief can be granted. Rule 12(c) provides:

After the pleadings are closed but within such
time as not to delay the trial, any party may move
for judgment on the pleadings. If, on a motion for
judgment on the pleadings, matters outside the
pleadings are presented to and not excluded by
the court, the motion shall be treated as one for
summary judgment and disposed of as provided
in Rule 56, and all parties shall be given reason-
able opportunity to present all material made per-
tinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that
are employed for dismissing a complaint for failure
to state a claim under Fed.R.Civ.P. 12(b)(6) are ap-
plicable" to a Rule 12(c) motion to dismiss for fail-
ure to state a claim upon which relief can be gran-
ted. *See Ad–Hoc Comm. of the Baruch Black &
Hispanic Alumni Ass'n v. Bernard M. Baruch Col-
lege,* 835 F.2d 980, 982 (2d Cir.1987); *see also Vi-
acom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Ar-
thur R. Miller, *Federal Practice and Procedure* ¶
1367, at 515–16 (1990). Thus, the Court must read
the Complaint generously, drawing all reasonable
inferences from the complainant's allegations. *See
California Motor Transp. v. Trucking Unlimited,*
404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations
in [the] amended complaint, which are accepted as
true, to documents attached to the complaint as an
exhibit or incorporated in it by reference, to matters
of which judicial notice may be taken, or to docu-
ments either in plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied on in bringing
suit." *Brass v. American Film Technologies, Inc.,*
987 F.2d 142 (2d Cir.1993); *accord Allen v. West-
point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d
Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112
S.Ct. 1561 (1992); *Frazier v. General Elec. Co.,*
930 F.2d 1004, 1007 (2d Cir.1991). Defendants,
therefore, are entitled to dismissal for failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

state a claim only if the Court finds beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [FN2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint

must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

FN1. The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

FN2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

S.D.N.Y.,1994.
Hendrickson v. U.S. Atty. Gen.
Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1994 WL 23069 (S.D.N.Y.)
**(Cite as: 1994 WL 23069 (S.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Lisa ELGAMIL, Plaintiff,
v.
SYRACUSE UNIVERSITY, Defendant.
**No. 99-CV-611 NPMGLS.**

Aug. 22, 2000.

Joch & Kirby, Ithaca, New York, for Plaintiff, Joseph Joch, of counsel.

Bond, Schoeneck & King, LLP, Syracuse, New York, for Defendant, John Gaal, Paul Limmiatis, of counsel.

MEMORANDUM-DECISION AND ORDER

MCCURN, Senior J.

INTRODUCTION

**\*1** Plaintiff brings suit against defendant Syracuse University ("University") pursuant to 20 U.S.C. § 1681etseq. ("Title IX") claiming hostile educational environment, and retaliation for complaints of same. Presently before the court is the University's motion for summary judgment. Plaintiff opposes the motion.

LOCAL RULES PRACTICE

The facts of this case, which the court recites below, are affected by plaintiff's failure to file a Statement of Material Facts which complies with the clear mandate of Local

Rule 7.1(a)(3) of the Northern District of New York. This Rule requires a motion for summary judgment to contain a Statement of Material Facts with specific citations to the record where those facts are established. A similar obligation is imposed upon the non-movant who

shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.... *Any facts set forth in the [movant's] Statement of material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

L.R. 7.1(a)(3) (emphasis in original).

In moving for summary judgment, the University filed an eleven page, twenty-nine paragraph Statement of Material Facts, replete with citations to the record in every paragraph. Plaintiff, in opposition, filed a two page, nine paragraph statement appended to her memorandum of law which failed to admit or deny the specific assertions set forth by defendant, and which failed to contain a single citation to the record. Plaintiff has thus failed to comply with Rule 7.1(a)(3).

As recently noted in another decision, "[t]he Local Rules are not suggestions, but impose procedural requirements upon parties litigating in this District." *Osier v. Broome County,* 47 F.Supp.2d 311, 317 (N.D.N.Y.1999). As a consequence, courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f) [FN1] by deeming the facts asserted in a movant's proper Statement of Material Facts as admitted, when, as here, the opposing party has failed to comply with the Rule. *See,e.g., Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551, 556-57 (N.D.N.Y.1999); *DeMar v. Car-Freshner Corp.,* 49 F.Supp.2d 84, 86 (N.D.N.Y.1999); *Osier,* 47 F. Supp .2d at 317; *Nicholson v. Doe,* 185 F.R.D. 134, 135 (N.D.N.Y.1999); *TSI Energy,*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

*Inc. v. Stewart and Stevenson Operations, Inc.*, 1998 WL 903629, at *1 n. 1 (N.D. N.Y.1998); *Costello v.. Norton,* 1998 WL 743710, at *1 n. 2 (N.D.N.Y.1998); *Squair v. O'Brien & Gere Engineers, Inc.,* 1998 WL 566773, at *1 n. 2 (N.D.N.Y.1998). As in the cases just cited, this court deems as admitted all of the facts asserted in defendant's Statement of Material Facts. The court next recites these undisputed facts.

FN1. Amended January 1, 1999.

BACKGROUND

*2 Plaintiff became a doctoral student in the University's Child and Family Studies ("CFS") department in the Spring of 1995. Successful completion of the doctoral program required a student to (1) complete 60 credit hours of course work; (2) pass written comprehensive examinations ("comp.exams") in the areas of research methods, child development, family theory and a specialty area; (3) after passing all four comp. exams, orally defend the written answers to those exams; (4) then select a dissertation topic and have the proposal for the topic approved; and (5) finally write and orally defend the dissertation. Plaintiff failed to progress beyond the first step.

Each student is assigned an advisor, though it is not uncommon for students to change advisors during the course of their studies, for a myriad of reasons. The advisor's role is to guide the student in regard to course selection and academic progress. A tenured member of the CFS department, Dr. Jaipaul Roopnarine, was assigned as plaintiff's advisor.

As a student's comp. exams near, he or she selects an examination committee, usually consisting of three faculty members, including the student's advisor. This committee writes the questions which comprise the student's comp. exams, and provides the student with guidance and assistance in preparing for the exams. Each member of the committee writes one exam; one member writes two. Two evaluators grade each exam; ordinarily the faculty member who wrote the question, and one other faculty member

selected by the coordinator of exams.

Roopnarine, in addition to his teaching and advising duties, was the coordinator of exams for the entire CFS department. In this capacity, he was generally responsible for selecting the evaluators who would grade each student's comp. exam, distributing the student's answer to the evaluators for grading, collecting the evaluations, and compiling the evaluation results.

The evaluators graded an exam in one of three ways: "pass," "marginal" or "fail." A student who received a pass from each of the two graders passed that exam. A student who received two fails from the graders failed the exam. A pass and a marginal grade allowed the student to pass. A marginal and a fail grade resulted in a failure. Two marginal evaluations may result in a committee having to decide whether the student would be given a passing grade. In cases where a student was given both a pass and a fail, a third evaluator served as the tie breaker.

These evaluators read and graded the exam questions independently of each other, and no indication of the student's identity was provided on the answer. FN2 The coordinator, Roopnarine, had no discretion in compiling these grades-he simply applied the pass or fail formula described above in announcing whether a student passed or failed the comp. exams. Only after a student passed all four written exam questions would he or she be permitted to move to the oral defense of those answers.

FN2. Of course, as mentioned, because one of the evaluators may have written the question, and the question may have been specific to just one student, one of the two or three evaluators may have known the student's identity regardless of the anonymity of the examination answer.

*3 Plaintiff completed her required course work and took the comp. exams in October of 1996. Plaintiff passed two of the exams, family theory and specialty, but failed two, child development and research methods. On each of the exams she failed, she had one marginal grade, and one failing grade. Roopnarine, as a member of her committee,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

authored and graded two of her exams. She passed one of them, specialty, and failed the other, research methods. Roopnarine, incidently, gave her a pass on specialty, and a marginal on research methods. Thus it was another professor who gave her a failing grade on research methods, resulting in her failure of the exam. As to the other failed exam, child development, it is undisputed that Roopnarine neither wrote the question, nor graded the answer.

Pursuant to the University's procedures, she retook the two exams she failed in January of 1997. Despite being given the same questions, she only passed one, child development. She again failed research methods by getting marginal and fail grades from her evaluators. This time, Roopnarine was not one of the evaluators for either of her exam questions.

After this second unsuccessful attempt at passing research methods, plaintiff complained to the chair of the CFS department, Dr. Norma Burgess. She did not think that she had been properly prepared for her exam, and complained that she could no longer work with Roopnarine because he yelled at her, was rude to her, and was otherwise not responsive or helpful. She wanted a new advisor. Plaintiff gave no indication, however, that she was being sexually harassed by Roopnarine.

Though plaintiff never offered any additional explanation for her demands of a new advisor, Burgess eventually agreed to change her advisor, due to plaintiff's insistence. In March of 1997, Burgess and Roopnarine spoke, and Roopnarine understood that he would no longer be advising plaintiff. After that time period, plaintiff and Roopnarine had no further contact. By June of that year, she had been assigned a new advisor, Dr. Mellisa Clawson.

Plaintiff then met with Clawson to prepare to take her research methods exam for the third time. Despite Clawson's repeated efforts to work with plaintiff, she sought only minimal assistance; this was disturbing to Clawson, given plaintiff's past failures of the research methods exam. Eventually, Clawson was assigned to write plaintiff's third research methods exam.

The first time plaintiff made any mention of sexual harassment was in August of 1997, soon before plaintiff made her third attempt at passing research methods. She complained to Susan Crockett, Dean of the University's College of Human Development, the parent organization of the CFS department. Even then, however, plaintiff merely repeated the claims that Roopnarine yelled at her, was rude to her, and was not responsive or helpful. By this time Roopnarine had no contact with plaintiff in any event. The purpose of plaintiff's complaint was to make sure that Roopnarine would not be involved in her upcoming examination as exam coordinator. Due to plaintiff's complaints, Roopnarine was removed from all involvement with plaintiff's third research methods examination. As chair of the department, Burgess took over the responsibility for serving as plaintiff's exam coordinator. Thus, Burgess, not Roopnarine, was responsible for receiving plaintiff's answer, selecting the evaluators, and compiling the grades of these evaluators; [FN3] as mentioned, Clawson, not Roopnarine, authored the exam question.

[FN3.] Plaintiff appears to allege in her deposition and memorandum of law that Roopnarine remained the exam coordinator for her third and final exam. *See* Pl.'s Dep. at 278; Pl.'s Mem. of Law at 9. The overwhelming and undisputed evidence in the record establishes that Roopnarine was not, in fact, the coordinator of this exam. Indeed, as discussed above, the University submitted a Statement of Material Facts which specifically asserted in paragraph 18 that Roopnarine was removed from all involvement in plaintiff's exam, including the role of exam coordinator. *See* Def.'s Statement of Material Facts at ¶ 18 (and citations to the record therein). Aside from the fact that this assertion is deemed admitted for plaintiff's failure to controvert it, plaintiff cannot maintain, without any evidence, that Roopnarine was indeed her exam coordinator. Without more than broad, conclusory allegations of same, no genuine issue of material fact exists on this question.

*4 Plaintiff took the third research methods examination

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

in September of 1997. Clawson and another professor, Dr. Kawamoto, were her evaluators. Clawson gave her a failing grade; Kawamoto indicated that there were "some key areas of concern," but not enough for him to deny her passage. As a result of receiving one passing and one failing grade, plaintiff's research methods exam was submitted to a third evaluator to act as a tie breaker. Dr. Dean Busby, whose expertise was research, was chosen for this task. Busby gave plaintiff a failing grade, and began his written evaluation by stating that

[t]his is one of the most poorly organized and written exams I have ever read. I cannot in good conscience vote any other way than a fail. I tried to get it to a marginal but could not find even one section that I would pass.

Busby Aff. Ex. B.

The undisputed evidence shows that Clawson, Kawamoto and Busby each evaluated plaintiff's exam answer independently, without input from either Roopnarine or anyone else. Kawamoto and Busby did not know whose exam they were evaluating. [FN4] Importantly, it is also undisputed that none of the three evaluators knew of plaintiff's claims of sexual harassment.

> [FN4.] Clawson knew it was plaintiff's examination because she was plaintiff's advisor, and wrote the examination question.

After receiving the one passing and two failing evaluations, Burgess notified plaintiff in December of 1997 that she had, yet again, failed the research methods exam, and offered her two options. Although the University's policies permitted a student to only take a comp. exam three times (the original exam, plus two retakes), the CFS department would allow plaintiff to retake the exam for a fourth time, provided that she took a remedial research methods class to strengthen her abilities. Alternatively, Burgess indicated that the CFS department would be willing to recommend plaintiff for a master's degree based on her graduate work. Plaintiff rejected both offers.

The second time plaintiff used the term sexual harassment in connection with Roopnarine was six months after she was notified that she had failed for the third time, in May of 1998. Through an attorney, she filed a sexual harassment complaint against Roopnarine with the University. This written complaint repeated her allegations that Roopnarine had yelled at her, been rude to her, and otherwise had not been responsive to her needs. She also, for the first time, complained of two other acts:

1. that Roopnarine had talked to her about his sex life, including once telling her that women are attracted to him, and when he attends conferences, they want to have sex with him over lunch; and

2. that Roopnarine told her that he had a dream in which he, plaintiff and plaintiff's husband had all been present.

Prior to the commencement of this action, this was the only specific information regarding sexual harassment brought to the attention of University officials.

The University concluded that the alleged conduct, if true, was inappropriate and unprofessional, but it did not constitute sexual harassment. Plaintiff then brought this suit. In her complaint, she essentially alleges two things; first, that Roopnarine's conduct subjected her to a sexually hostile educational environment; and second, that as a result of complaining about Roopnarine's conduct, the University retaliated against her by preventing her from finishing her doctorate, mainly, by her failing her on the third research methods exam.

**\*5** The University now moves for summary judgment. Primarily, it argues that the alleged conduct, if true, was not sufficiently severe and pervasive to state a claim. Alternatively, it argues that it cannot be held liable for the conduct in any event, because it had no actual knowledge of plaintiff's alleged harassment, and was not deliberately indifferent to same. Finally, it argues that plaintiff is unable to establish a retaliation claim. These contentions are addressed below.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

DISCUSSION

The principles that govern summary judgment are well established. Summary judgment is properly granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party. See Torres v. Pisano, 116 F.3d 625, 630 (2d Cir.1997). As the Circuit has recently emphasized in the discrimination context, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir.1998). Rather, there must be either an absence of evidence that supports plaintiff's position, see Norton v. Sam's Club, 145 F.3d 114, 117-20 (2d Cir.), cert. denied, 525 U.S. 1001 (1998), "or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer, 151 F.3d at 54. Yet, as the Circuit has also admonished, "purely conclusory allegations of discrimination, absent any concrete particulars," are insufficient to defeat a motion for summary judgment. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985). With these principles in mind, the court turns to defendant's motion.

*I. Hostile Environment*

Title IX provides, with certain exceptions not relevant here, that

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

Recently, the Supreme Court reiterated that Title IX is enforceable through an implied private right of action, and that monetary damages are available in such an action.

See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, , 118 S.Ct. 1989, 1994 (1998) (citing Cannon v. University of Chicago, 441 U .S. 677 (1979) and Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992)).

A. Severe or Pervasive

Provided that a plaintiff student can meet the requirements to hold the school itself liable for the sexual harassment,[FN5] claims of hostile educational environment are generally examined using the case law developed for hostile work environment under Title VII. See Davis, 119 S.Ct. at 1675 (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986), a Title VII case). Accord Kracunas v. Iona College, 119 F.3d 80, 87 (2d Cir.1997); Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 249 (2d Cir.1995), both abrogated on other grounds by Gebser, 118 S.Ct. at 1999.

FN5. In Gebser, 118 S.Ct. at 1999, and Davis v. Monroe County Bd. of Educ., 526 U.S. 629, , 119 S.Ct. 1661, 1671 (1999), the Supreme Court explicitly departed from the *respondeat superior* principles which ordinarily govern Title VII actions for purposes of Title IX; in a Title IX case it is now clear that a school will not be liable for the conduct of its teachers unless it knew of the conduct and was deliberately indifferent to the discrimination. Defendant properly argues that even if plaintiff was subjected to a hostile environment, she cannot show the University's knowledge and deliberate indifference. This argument will be discussed below.

It bears noting that courts examining sexual harassment claims sometimes decide first whether the alleged conduct rises to a level of actionable harassment, before deciding whether this harassment can be attributed to the defendant employer or school, as this court does here. See, e.g., Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir.1998). Sometimes, however, courts first examine whether the defendant can be held liable for the conduct,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

and only then consider whether this conduct is actionable. *See,e.g.,Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 n. 8 (2d Cir.1998). As noted in *Quinn,* the Circuit has not instructed that the sequence occur in either particular order. *Seeid.*

**\*6** In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993), the Supreme Court stated that in order to succeed, a hostile environment claim must allege conduct which is so "severe or pervasive" as to create an " 'objectively' hostile or abusive work environment," which the victim also "subjectively perceive[s] ... to be abusive." *Richardson v. New York State Dep't of Corr. Servs .,* 180 F.3d 426, 436 (alteration in original) (quoting *Harris,* 510 U.S. at 21-22). From this court's review of the record, there is no dispute that plaintiff viewed her environment to be hostile and abusive; hence, the question before the court is whether the environment was "objectively" hostile. *Seeid.* Plaintiff's allegations must be evaluated to determine whether a reasonable person who is the target of discrimination would find the educational environment "so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim['s] educational experience, that [this person is] effectively denied equal access to an institution's resources and opportunities." *Davis,* 119 S.Ct. at 1675.

Conduct that is "merely offensive" but "not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive" is beyond the purview of the law. *Harris,* 510 U.S. at 21. Thus, it is now clear that neither "the sporadic use of abusive language, gender-related jokes, and occasional teasing," nor "intersexual flirtation," accompanied by conduct "merely tinged with offensive connotations" will create an actionable environment. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998). Moreover, a plaintiff alleging sexual harassment must show the hostility was based on membership in a protected class. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 77 (1998). Thus, to succeed on a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of ... sex." *Id.* at 81 (alteration

and ellipses in original).

The Supreme Court has established a non-exclusive list of factors relevant to determining whether a given workplace is permeated with discrimination so severe or pervasive as to support a Title VII claim. *SeeHarris,* 510 U.S. at 23. These include the frequency of the discriminatory conduct, its severity, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with plaintiff's work, and what psychological harm, if any, resulted from the conduct. *Seeid.;Richardson,* 180 F.3d at 437.

Although conduct can meet this standard by being either "frequent" or "severe," *Osier,* 47 F.Supp.2d at 323, "isolated remarks or occasional episodes of harassment will not merit relief [ ]; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." ' *Quinn,* 159 F.3d at 767 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995)). Single or episodic events will only meet the standard if they are sufficiently threatening or repulsive, such as a sexual assault, in that these extreme single incidents "may alter the plaintiff's conditions of employment without repetition." *Id.AccordKotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992) ("[t]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.").

**\*7** The University quite properly argues that the conduct plaintiff alleges is not severe and pervasive. As discussed above, she claims that she was subjected to behavior by Roopnarine that consisted primarily of his yelling at her, being rude to her, and not responding to her requests as she felt he should. This behavior is insufficient to state a hostile environment claim, despite the fact that it may have been unpleasant. *See,e.g.,Gutierrez v. Henoch,* 998 F.Supp. 329, 335 (S.D.N.Y.1998) (disputes relating to job-related disagreements or personality conflicts, without more, do not create sexual harassment liability); *Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 303 (S.D.N.Y.1987) ("there is a crucial difference between personality conflict ... which is unpleasant but legal ... [and sexual harassment] ... which is despicable and illegal."). Moreover, the court notes that plaintiff has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

failed to show that this alleged behavior towards her was sexually related-an especially important failing considering plaintiff's own testimony that Roopnarine treated some males in much of the same manner. *See,e.g.,* Pl.'s Dep. at 298 ("He said that Dr. Roopnarine screamed at him in a meeting"). As conduct that is "equally harsh" to both sexes does not create a hostile environment, *Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir.1999), this conduct, while demeaning and inappropriate, is not sufficiently gender-based to support liability. *See Osier,* 47 F.Supp.2d at 324.

The more detailed allegations brought forth for the first time in May of 1998 are equally unavailing. These allegations are merely of two specific, isolated comments. As described above, Roopnarine told plaintiff of his sexual interaction(s) with other women, and made a single, non-sexual comment about a dream in which plaintiff, plaintiff's husband, and Roopnarine were all present. Accepting as true these allegations, the court concludes that plaintiff has not come forward with evidence sufficient to support a finding that she was subject to abuse of sufficient severity or pervasiveness that she was "effectively denied equal access to an institution's resources and opportunities." *Davis,* 119 S.Ct. at 1675.

*Quinn,* a recent Second Circuit hostile work environment case, illustrates the court's conclusion well. There, plaintiff complained of conduct directed towards her including sexual touching and comments. She was told by her supervisor that she had been voted the "sleekest ass" in the office and the supervisor deliberately touched her breasts with some papers he was holding. 159 F.3d at 768. In the Circuit's view, these acts were neither severe nor pervasive enough to state a claim for hostile environment. *See id.* In the case at bar, plaintiff's allegations are no more severe than the conduct alleged in *Quinn,* nor, for that matter, did they occur more often. Thus, without more, plaintiff's claims fail as well.

**\*8** Yet, plaintiff is unable to specify any other acts which might constitute sexual harassment. When pressed to do so, plaintiff maintained only that she "knew" what Roopnarine wanted "every time [she] spoke to him" and that she could not "explain it other than that's the feeling [she] had." Pl.'s Dep. at 283-85, 287, 292. As defendant

properly points out, these very types of suspicions and allegations of repeated, but unarticulated conduct have been shown to be insufficient to defeat summary judgment. *See Meiri,* 759 F.2d at 998 (plaintiff's allegations that employer " 'conspired to get of [her];' that he 'misconceived [her] work habits because of his subjective prejudice against [her] Jewishness;' and that she 'heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us,' " are conclusory and insufficient to satisfy the demands of Rule 56) (alterations and ellipses in original); *Dawes v. Pace Univ.,* 2000 WL 307382, at *5 (S.D.N.Y.2000) (plaintiff's attempts to create an appearance of pervasiveness by asserting "[t]he conduct to which I was subjected ... occurred regularly and over many months," without more "is conclusory, and is not otherwise supported in the record [and] therefore afforded no weight"); *Quiros v. Ciba-Geigy Corp.,* 7 F.Supp.2d 380, 385 (S.D.N.Y.1998) (plaintiff's allegations of hostile work environment without more than conclusory statements of alleged discrimination insufficient to defeat summary judgment); *Eng v. Beth Israel Med. Ctr.,* 1995 U.S. Dist. Lexis 11155, at *6 n. 1 (S.D.N.Y.1995) (plaintiff's "gut feeling" that he was victim of discrimination was no more than conclusory, and unable to defeat summary judgment). As plaintiff comes forward with no proper showing of either severe or pervasive conduct, her hostile environment claim necessarily fails.

B. Actual Knowledge / Deliberate Indifference

Even if plaintiff's allegations were sufficiently severe or pervasive, her hostile environment claim would still fail. As previously discussed, *see supra* note 5, the Supreme Court recently departed from the framework used to hold defendants liable for actionable conduct under Title VII. *See Davis,* 119 S.Ct. at 1671;*Gebser,* 118 S.Ct. at 1999. Pursuant to these new decisions, it is now clear that in order to hold an educational institution liable for a hostile educational environment under Title IX, it must be shown that "an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the [plaintiff's] behalf *has actual knowledge of [the] discrimination* [.]" *Gebser,* 118 S.Ct. at 1999 (emphasis supplied). What's more, the bar is even higher: after learning of the harassment, in order for the school to be liable, its response must then "amount to deliberate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

indifference to discrimination[,]" or, "in other words, [ ] *an official decision by the [school] not to remedy the violation."Id.* (Emphasis supplied). *Accord Davis,* 119 S.Ct. at 1671 ("we concluded that the [school] could be liable for damages only where the [school] itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge."). This requires plaintiff to show that the school's "own deliberate indifference effectively 'cause[d]' the discrimination." *Id.* (alteration in original) (quoting *Gebser,* 118 S.Ct. at 1999). The circuits that have taken the question up have interpreted this to mean that there must be evidence that actionable harassment continued to occur *after* the appropriate school official gained actual knowledge of the harassment. *See Reese v. Jefferson Sch. Dist.,* 208 F.3d 736, 740 (9th Cir.2000); *Soper v. Hoben,* 195 F.3d 845, 855 (6th Cir.1999); *Murreel v. School Dist. No. 1, Denver Colo.,* 186 F.3d 1238, 1246 (10th Cir.1999); *Wills v. Brown Univ.,* 184 F.3d 20, 26-27 (1st Cir.1999). There is no serious contention that plaintiff can satisfy this requirement.

**\*9** By the time plaintiff complained to Dean Crockett of sexual harassment in August of 1997, it is uncontested that her alleged harasser had no contact with her. Nor, for that matter, did he ultimately have any involvement in the third retake of her exam. She had a new advisor, exam committee and exam coordinator. Quite simply, by that point, Roopnarine had no involvement with her educational experience at all.[FN6] This undisputed fact is fatal to plaintiff's claim. As discussed above, the Supreme Court now requires some harm to have befallen plaintiff *after* the school learned of the harassment. As there have been no credible allegations of subsequent harassment, no liability can be attributed to the University.[FN7] *See Reese,* 208 F.3d at 740 ("There is no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations. Thus, under *Davis,* the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment.").

FN6. Of course, plaintiff contends that the University had notice of the harassment prior to this time, through her complaints to Burgess that she no longer could work with Roopnarine, because he yelled at her, was rude to her, and

refused to assist her with various requests. But it is undisputed that she never mentioned sexual harassment, and provided no details that might suggest sexual harassment. Indeed, as pointed out by defendant, plaintiff *herself* admits that she did not consider the conduct sexual harassment until another person later told her that it might be, in June of 1997. *See* Pl.'s Dep. at 258-59, 340. As a result, plaintiff can not seriously contend that the University was on notice of the alleged harassment before August of 1997.

FN7. As mentioned previously, *see supra* note 3, plaintiff maintains without any evidentiary support that Roopnarine played a role in her third exam. This allegation is purely conclusory, especially in light of the record evidence the University puts forward which demonstrates that he was not, in fact, involved in the examination.

As plaintiff's allegations of harassment are not severe or pervasive enough to state a claim, and in any event, this conduct can not be attributed to the University, her hostile environment claim is dismissed.

## II. Retaliation

Plaintiff's retaliation claim must be dismissed as well. She cannot establish an actionable retaliation claim because there is no evidence that she was given failing grades due to complaints about Roopnarine. *See Murray,* 57 F.3d at 251 (retaliation claim requires evidence of causation between the adverse action, and plaintiff's complaints of discrimination). The retaliation claim appears to be based exclusively on plaintiff's speculative and conclusory allegation that Roopnarine was involved in or influenced the grading of her third research methods exam.[FN8] In any event, the adverse action which plaintiff claims to be retaliation must be limited to her failing grade on the third research methods exam, since plaintiff made no complaints of sexual harassment until August of 1997, long after plaintiff failed her second examination. *See Murray,* 57 F.3d at 251 (retaliation claim requires proof that defendant had knowledge of plaintiff's protected activity at the time of the adverse reaction); *Weaver v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)
(Cite as: 2000 WL 1264122 (N.D.N.Y.))

*Ohio State Univ.*, 71 F.Supp.2d 789, 793-94 (S.D.Ohio) ("[c]omplaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity"), *aff'd,* 194 F.3d 1315 (6th Cir.1999).

FN8. As properly noted by defendant, *see* Def. Mem. of Law at 28 n. 14, plaintiff's complaint alleges that a number of individuals retaliated against her, but in her deposition she essentially conceded that she has no basis for making a claim against anyone other than Roopnarine and those who graded her third exam. *See* Pl.'s Dep. at 347-53.

The undisputed evidence establishes that Roopnarine had no role in the selection of who would grade plaintiff's exam. Nor, for that matter, did he grade the exam; this was done by three other professors. Each of these professors has averred that they graded the exam without any input or influence from Roopnarine. More importantly, it is undisputed that none of the three had any knowledge that a sexual harassment complaint had been asserted by plaintiff against Roopnarine, not surprising since two of the three did not even know whose exam they were grading. Plaintiff's inability to show that her failure was causally related in any way to her complaint of harassment is fatal to her retaliation claim. FN9

FN9. Plaintiff's claim also fails to the extent that the school's refusal to let her take the research methods exam for a fourth time was the retaliatory act she relies upon. It is undisputed that the University's policies for CFS department students only allow a comp. exam to be given three times. *See* Gaal Aff. Ex. 53. Plaintiff cannot claim that the University's refusal to depart from its own policies was retaliation without some concrete showing that its refusal to do so was out of the ordinary, i.e., that it had allowed other students to take the exam a fourth time without a remedial course, when these other students had not engaged in some protected activity. *SeeMurray,* 57 F.3d at 251 (there is "no allegation either that NYU selectively enforced its academic standards, or that the decision in

[plaintiff's] case was inconsistent with these standards.").

CONCLUSION

*10 For the aforementioned reasons, Syracuse University's motion for summary judgment is GRANTED; plaintiff's claims of hostile environment and retaliation are DISMISSED.

IT IS SO ORDERED.

N.D.N.Y.,2000.
Elgamil v. Syracuse University
Not Reported in F.Supp.2d, 2000 WL 1264122 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))



Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Anthony ROBINSON, Plaintiff,

v.

Jane DELGADO, Hearing Officer and Lieutenant; and Donald Selsky, Director of Inmate Special Housing Program, Defendants.

No. 96-CV-169 (RSP/DNH).

May 22, 1998.

Anthony Robinson, Veterans Shelter, Brooklyn, for Plaintiff, Pro Se.

Hon. Dennis C. Vacco, Attorney General of the State of New York, Attorney for Defendants, Albany, Ellen Lacy Messina, Esq., Assistant Attorney General, of Counsel.

ORDER

POOLER, D.J.

**\*1** Anthony Robinson, a former inmate incarcerated by the New York State Department of Corrections ("DOCS"), sued two DOCS employees, alleging that they violated his right to due process in the course of a disciplinary proceeding and subsequent appeal. On September 9, 1997, defendants moved for summary judgment. Defendants argued that plaintiff failed to demonstrate that the fifty days of keeplock confinement that he received as a result of the hearing deprived him of a liberty interest within the meaning of the Due Process Clause. Plaintiff did not oppose the summary judgment motion, and Magistrate Judge David N. Hurd recommended that I grant it in a report-recommendation filed April 16, 1998. Plaintiff did not file objections.

Because plaintiff did not file objections, I "need only satisfy [myself] that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b) advisory committee's note. After reviewing the record, I conclude that there is no clear error on the face of the record. After being warned by defendants' motion that he must offer proof in admissible form that his disciplinary confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Robinson failed to offer any such proof. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Consequently, he cannot maintain a due process challenge. *Id.* Therefore, it is

ORDERED that the report-recommendation is approved; and it is further

ORDERED that defendants' motion for summary judgment is granted and the complaint dismissed; and it is further

ORDERED that the Clerk of the Court serve a copy

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))

of this order on the parties by ordinary mail.

HURD, Magistrate J.

REPORT-RECOMMENDATION

The above civil rights action has been referred to the undersigned for Report and Recommendation by the Honorable Rosemary S. Pooler, pursuant to the local rules of the Northern District of New York. The plaintiff commenced the above action pursuant to 42 U.S.C. § 1983 claiming that the defendants violated his Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. The plaintiff seeks compensatory and punitive damages.

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. However:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P 56(e).

In addition, "[f]ailure to file any papers as required by this rule shall, unless for good cause shown, be deemed by the court as consent to the granting or denial of the motion, as the case may be." L.R. 7.1(b)(3).

*2 The defendants filed their motion on September 9, 1997. The response to the motion was due on October 23, 1997. It is now five months beyond the date when the plaintiff's response was due, and he has failed to file any papers in opposition to defendants' motion.

Therefore, after careful consideration of the notice of motion, affirmation of Ellen Lacy Messina, Esq., with exhibits attached, and the memorandum of law; and there being no opposition to the motion; it is

RECOMMENDED that the motion for summary judgment be GRANTED and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(l), the parties have ten days within which to file written objections to the foregoing report. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696(1992). Such objections shall be filed with the Clerk of the Court with a copy to be mailed to the chambers of the undersigned at 10 Broad Street, Utica, New York 13501. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(l); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989); and it is

ORDERED, that the Clerk of the Court serve a copy of this Order and Report-Recommendation, by regular mail, upon the parties to this action.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)

(Cite as: 1998 WL 278264 (N.D.N.Y.))


N.D.N.Y.,1998.

Robinson v. Delgado

Not Reported in F.Supp., 1998 WL 278264 (N.D.N.Y.)


END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Valery LATOUCHE, Plaintiff,
v.
Michael C. TOMPKINS, C.O., Clinton Correctional
Facility; Dean E. Laclair, C.O., Clinton Correctional
Facility; Jeffrey R. Ludwig, C.O ., Clinton Correctional
Facility; Michael B. King, Sgt., Clinton Correctional
Facility; D. Mason, C.O., Clinton Correctional Facility;
B. Malark, C.O., Clinton Correctional Facility; John
Reyell, C.O., Clinton Correctional Facility; Bob
Fitzgerald, R.N., Clinton Correctional Facility; John
Doe, C.O. (C.O. Gallery Officer Company Upper F–6);
John Doe, C.O. (Mess Hall Supervising C.O.),
Defendants.
No. 9:09–CV–308 (NAM/RFT).

March 23, 2011.
Valery LaTouche, Ossining, NY, pro se.

Eric T. Schneiderman, Attorney General for the State of
New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

NORMAN A. MORDUE, Chief Judge.

**INTRODUCTION**

*1 In this *pro se* action under 42 U.S.C. § 1983,
plaintiff, an inmate in the custody of the New York State
Department of Correctional Services ("DOCS"), claims
that defendants violated his Eighth Amendment rights as
a result of a physical altercation. Defendants moved for
summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure (Dkt. No. 46) and plaintiff
opposed the motion. (Dkt. No. 53). The motions were
referred to United States Magistrate Judge Randolph F.
Treece for a Report and Recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).

Magistrate Judge Treece issued a Report and
Recommendation (Dkt. No. 60) recommending that
defendants' motion be granted in part and denied in part.
Specifically, Magistrate Judge Treece recommended
awarding summary judgment dismissing the following: (1)
plaintiff's claims for monetary relief against all defendants
in their official capacity; (2) plaintiff's claims of medical
indifference against defendant Fitzgerald; and (3)
plaintiff's allegations of verbal harassment by defendant
Mason. Magistrate Judge Treece also recommended
denying defendants' motion for summary judgment on
plaintiff's excessive force claims against defendants
Tompkins, LaClair, Mason, Malark and Reyell and
plaintiff's failure to protect claims against defendants
Ludwig and King.

Defendants filed specific objections to portions of the
Report and Recommendation arguing: (1) that the
Magistrate Judge erred in "overlooking" plaintiff's failure
to comply with Local Rule 7.1(a) (3); (2) that the
Magistrate Judge erred when he failed to apply the
*Jeffreys* exception as plaintiff's testimony was incredible
as a matter of law; and (3) plaintiff's excessive force
claims against defendant Reyell are subject to dismissal
for lack of personal involvement. (Dkt. No. 61). Plaintiff
does not object to the Report and Recommendation. (Dkt.
No. 62).

In view of defendants' objections, pursuant to 28
U.S.C. § 636(b) (1)(c), this Court conducts a *de novo*
review of these issues. The Court reviews the remaining
portions of the Report–Recommendation for clear error or
manifest injustice. See *Brown v. Peters,* 1997 WL 599355,
*2–3 (N.D.N.Y.),* af'd without op., 175 F.3d 1007 (2d
Cir.1999); *see also Batista v. Walker,* 1995 WL 453299,
at *1 (S.D.N.Y.1995) (when a party makes no objection
to a portion of the report-recommendation, the Court reviews
that portion for clear error or manifest injustice). Failure
to object to any portion of a report and recommendation
waives further judicial review of the matters therein. See
*Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993).

**DISCUSSION**

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

## I. Local Rule 7.1(a)(3)

The submissions of *pro se* litigants are to be liberally construed. *Nealy v. U.S. Surgical Corp.,* 587 F.Supp.2d 579, 583 (S.D.N.Y.2008). However, a *pro se* litigant is not relieved of the duty to meet the requirements necessary to defeat a motion for summary judgment. *Id.* (citing *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003)). Where a plaintiff has failed to respond to a defendant's statement of material facts, the facts as set forth in defendant's Rule 7.1 statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *Littman v. Senkowski,* 2008 WL 420011, at *2 (N.D.N.Y.2008) (citing *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996)). [FN1]

> FN1. Local Rule 7.1(a)(3) provides:
>
> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.*
>
> The moving party shall also advise *pro se* litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. *The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.*
>
> Local Rule 7.1(a)(3) (emphasis in original).

**\*2** The record herein contains few undisputed facts. Plaintiff and defendants disagree on many of the events that transpired and provide conflicting accounts of the circumstances surrounding the incident. In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1 and notified plaintiff about the consequences of his failure to respond to the motion for summary judgment. Plaintiff does not dispute that he received such notification from defendants. Plaintiff responded with a handwritten "Statement of Facts", without citations to the record, and failed to specifically admit or deny defendants' factual statements as required by Local Rule 7.1. However, plaintiff also annexed a copy of his deposition transcript. In the deposition, upon questioning from defense counsel, plaintiff testified as follows:

Q. ... Have you read the complaint?

A. Yes, ma'am.

Q. So, you are aware of its contents?

A. Yes, ma'am.

Q. Did anyone help you prepare the complaint?

A. No, ma'am.

Q. Are there any statements contained in the complaint that you now wish to change or modify?

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

A. I'm not sure.

Q. Well, let me ask you this: So, do you adopt this document under oath as true to the best of your knowledge?

A. Yes, ma'am.

Transcript of Plaintiff's Deposition at 13.

A verified complaint may be treated as an affidavit for the purposes of a summary judgment motion and may be considered in determining whether a genuine issue of material fact exists. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (the plaintiff verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge). Based upon the aforementioned colloquy, the Court deems plaintiff's complaint to be "verified" and as such, will treat the complaint as an affidavit. *See Torres v. Caron,* 2009 WL 5216956, at *3 (N.D.N.Y.2009). While plaintiff has not formally and technically complied with the requirements of Local Rule 7.1(a)(3), his opposition to defendants' motion contains sworn testimony. In light of his *pro se* status and the preference to resolve disputes on the merits rather than "procedural shortcomings", to the extent that plaintiff's "Statement of Facts" and assertions in the complaint do not contradict his deposition testimony, the Court will consider those facts in the context of the within motion. *See Mack v. U.S.,* 814 F.2d 120, 124 (2d Cir.1987); *see also Liggins v. Parker,* 2007 WL 2815630, at *8 (N.D.N.Y.2007) (citing *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996)). The Court has reviewed plaintiff's complaint and compared the allegations with the testimony presented at his deposition and adopts Magistrate Judge Treece's summary of the "facts" as presented by both parties.[FN2]

> FN2. While the Court adopts Magistrate Judge Treece's recitation of defendants' and plaintiff's versions of the facts, the Court does not adopt the reasoning set forth in the Footnote 2 of the Report and Recommendation.

## II. *Jeffreys* Exception

Defendants argue that the Court should apply *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005) and award summary judgment dismissing all claims of excessive force based upon plaintiff's implausible and contradictory claims.

**\*3** "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment' ". *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (citing *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (unfavorable assessments of a plaintiff's credibility are not "within the province of the court on a motion for summary judgment")). A narrow exception to this general rule was created by the Second Circuit in *Jeffreys:*

> While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

> *Id.* at 554 (internal citations and citations omitted).

Here, while plaintiff relies exclusively on his own testimony, for *Jeffreys* to apply, the testimony must also be "contradictory and incomplete". In this regard, defendants argue that plaintiff's allegations are contradicted by his prior accounts of the incident. Defendants cite to the record and argue that plaintiff told Fitzgerald that, "I hit the officer first" and that "I was hurt when I was subdued". Moreover, defendants point out that these statements were documented in an Inmate Injury Report executed by plaintiff.

Plaintiff does not deny making the aforementioned statements. However, in his deposition, plaintiff explained

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

those discrepancies and testified:

Q. —did Nurse Fitzgerald ask you any questions while he was examining you?

A. I think he asked me how am I feeling, how did this happen?

Q. And what did you say?

A. I told him I was nervous and that [sic] whatever officer D. Mason told me to tell him.

Q. What did you say?

A. I told him I was nervous and whatever officer D. Mason told me to tell him, which was that I got hurt being subdued—

Q. Which was—

A. —and that I started this.

Q. And is that the truth?

A. No.

Q. Why did you tell the nurse that?

A. Because I was being forced to.

Q. Forced to how?

A. By the officers that [sic] was there.

Q. Did you sign a form admitting that you hit the officer first and you were hurt when you were subdued?

A. Yes, ma'am.

Q. Why did you do that?

A. Because the [sic] officer D. Mason kept smacking me for me to do that.

Transcript of Plaintiff's Deposition at 53–54.

**\*4** In the Report and Recommendation, Magistrate Judge Treece concluded that plaintiff's "fear of retribution" was a plausible explanation for the discrepancies in his testimony. This Court agrees and adopts the Magistrate Judge's conclusions. *See Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 112–13 (2d Cir.1998); *see also Cruz v. Church,* 2008 WL 4891165, at \*5 (N.D.N.Y.2008) ("[t]he Court notes that ... it would be have difficulty concluding that [the][p]laintiff's statement of June 5, 2005, and his statement of June 16, 2005, are wholly irreconcilable, given his proffered explanation that he made the statement of June 5, 2005, out of fear of retribution by [the] [d]efendants).

Defendants also argue that plaintiff cannot identify which individuals participated in the attack; that plaintiff's injuries are consistent with the brief use of force as described by defendants to subdue plaintiff; and that plaintiff's version is contradicted by defendants' affidavits. Magistrate Judge Treece found that plaintiff was able to identify some individuals involved in the assault which, "stands in stark contrast to the plaintiff in *Jeffreys* who was unable to identify any of the officers involved in the alleged assault". Upon review of the record, as it presently exists, the Court agrees and finds that plaintiff's testimony is not wholly conclusory or entirely inconsistent to warrant application of the *Jeffreys* exception. *See Percinthe v. Julien,* 2009 WL 2223070, at \*7 (S.D.N.Y.2009) (the court rejected the defendants' argument that the plaintiff's claims were subject to dismissal for implausibility as his injuries did not reflect the attack that he described and his description of the incident changed over time holding that the plaintiff's testimony, "[did] not reach the level of inconsistency and lack of substantiation that would permit the Court to dismiss on these grounds").

Magistrate Judge Treece provided an extensive summary of the record and applicable law and found that the evidence did not support deviating from the established rule that issues of credibility are not resolved on summary judgment. On review, the Court agrees with the Magistrate's recommendations and concludes that the *Jeffreys* exception does not apply. Accordingly, the Court accepts and adopts the Report and Recommendation on this issue.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

### III. Reyell's Personal Involvement

Defendants argue that the Magistrate Judge erred when he failed to dismiss the complaint against Reyell on the grounds that he was not personally involved in the attack. Defendants claim that the "RRO erroneously cites plaintiff's declaration as stating that 'it was defendant Reyell and another officer who removed the shirt' ". Defendants claim that the declaration and complaint clearly state that, "Officer Rock orchestrated the removal of plaintiff's shirt". [FN3] Defendants argue that the assertions in plaintiff's declaration (submitted in response to the motion for summary judgment) and complaint are contradicted by plaintiff's deposition testimony. Defendants claim that plaintiff testified that Reyell tried to cover up the incident by removing the shirt he was wearing.

> FN3. Officer Rock is not a defendant herein.

*5 The Court has reviewed plaintiff's complaint, declaration and deposition transcript and finds defendants' summary of plaintiff's assertions to be inaccurate. In plaintiff's complaint, on page 8, plaintiff alleges:

> Feeling extremely weak the claimant responded with a shake of his head. Once this performance was over with Correctional Officer R. Rock, the individual who held on to the photograph camera and who is responsible for capturing the claimant's injuries [sic] photos pointed to the claimant's bloodly [sic] stain kitchen white colored uniform [ ] as co-workers....

> Correctional Officer D. Mason then roughly removed the article of clothing and with the help of on[e] other they discarded the item of clothings [sic].

In Paragraph 22 of plaintiff's declaration, he states:

> Officer Rock, the individual who held the photograph camera and was responsible for capturing LaTouche injuries pointed to LaTouche [sic] bloody kitchen white colored uniform to his coworker asking them to remove the article of clothing before he take [sic] any pictures. Mason then roughly removed the clothing and with the help of an other [sic] officer they discarded the items of

clothing.

In his deposition, plaintiff testified:

Q. What about Defendant Reyell, why are you suing Reyell?

A. Because defendant Reyell, that's the officer that was holding the camera and he tried to cover up the incident.

Q. How so?

A. That's when him and the other officer that was there, when they was searching me, strip searching me they took my shirt and they kept screaming something about let's remove this bloodstained shirt, let's remove this bloodstained shirt, we can't have this for the camera.

* * *

Q. Reyell and another officer took your shirt off?

A. Yes, ma'am.

Q. Do you remember the other officer's name?

A. No, ma'am.

Transcript of Plaintiff's Deposition at 63–64.

Here, the Magistrate Judge stated that any inconsistency or discrepancy [in plaintiff's testimony], "go[es] to the weight ... accorded to plaintiff's testimony". The Court agrees. Any discrepancies or inconsistencies in plaintiff's testimony are for a jury to assess. In the Second Circuit case of *Fischl v. Armitage,* the plaintiff/inmate alleged that he was assaulted in his cell by other inmates. *Fischl,* 128 F.3d at 54. The district court dismissed the plaintiff's complaint as against one defendant based upon "inconsistent statements". *Id.* The Second Circuit vacated the judgment of the district court holding:

> [T]he district court apparently questioned whether there had been an attack on Fischl at all, principally because of inconsistencies in his accounts of the event, his failure to report such an attack to prison workers in the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)

(Cite as: 2011 WL 1103045 (N.D.N.Y.))

area on that morning, and the failure of those workers to notice any indications that he had been beaten. That skepticism, however, rests on both a negative assessment of Fischl's credibility and the drawing of inferences adverse to Fischl.

**\*6** Likewise, inconsistent statements by Fischl as to, for example, whether it was five, six, or seven inmates who attacked him, and as to what he observed or overheard just prior to the attack, go to Fischl's credibility. While inconsistencies of this sort provide ammunition for cross-examination, and they may ultimately lead a jury to reject his testimony, they are not a proper basis for dismissal of his claim as a matter of law. The jury might well infer, for example, that while Fischl was under siege he was understandably unable to take an accurate census of the number of inmates holding him and kicking him in the face.

*Fischl,* 128 F.3d at 56.

In this matter, without a credibility assessment of plaintiff, the record does not warrant an award of summary judgment. Accordingly, the Court adopts the Magistrate's recommendation and denies summary judgment on this issue.

### CONCLUSION

It is therefore

**ORDERED** that the Report and Recommendation of United States Magistrate Judge Randolph F. Treece (Dkt. No. 60) is adopted; and it is further

**ORDERED** that for the reasons set forth in the Memorandum–Decision and Order herein, defendants' motion for summary judgment is granted in part and denied in part; and it is further

**ORDERED** that the Clerk provide copies of this Order to all parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2011.

Latouche v. Tompkins
Not Reported in F.Supp.2d, 2011 WL 1103045 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 628641 (N.D.N.Y.)
**(Cite as: 2013 WL 628641 (N.D.N.Y.))**


Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Deandre WILLIAMS, Plaintiff,
v.
Brian FISHER, Cheryl V. Morris, Omega B.
Albton, D. Rock, M. Lira, J. Hawk, Don Haug,
Karen Bellamy, Kenneth S. Pearlmann, and Alec H.
Friedmann, Defendants.

No. 9:11–CV–379.
Feb. 20, 2013.

Deandre Williams, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of
the State of New York, Kevin P. Hickey, Esq.,
Assistant Attorney General, of Counsel, Albany,
NY, for Defendants.

***ORDER***
NORMAN A. MORDUE, District Judge.
**\*1** The above matter comes to me following a
Report–Recommendation by Magistrate Judge
Therese Wiley Dancks, duly filed on the 29th day
of January 2013. Following fourteen (14) days from
the service thereof, the Clerk has sent me the file,
including any and all objections filed by the parties
herein.

After careful review of all of the papers herein,
including the Magistrate Judge's
ReportRecommendation, and no objections
submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby
adopted in its entirety.

2. Defendants' motion to dismiss (Dkt. No. 36)
pursuant to Federal Rule of Civil Procedure

12(b)(6) is denied.

3. Defendants' motion pursuant to 28 U.S.C. §
1915(g) seeking the conditional dismissal of
plaintiff's complaint on the grounds that plaintiff
has failed to satisfy the imminent harm exception to
the three strike rule is denied without prejudice.

4. The Clerk of the Court shall serve a copy of
this Order upon all parties and the Magistrate Judge
assigned to this case.

**IT IS SO ORDERED.**

N.D.N.Y.,2013.
Williams v. Fisher
Not Reported in F.Supp.2d, 2013 WL 628641
(N.D.N.Y.)

END OF DOCUMENT

2010 WL 2773343
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Joaquin R. WINFIELD, Plaintiff,
v.
Walter BISHOP, David Leclair,
Nancy Marocco, Defendants.

No. 9:09–CV–1055 (LEK/
GHL).   |   June 21, 2010.

**Attorneys and Law Firms**

Joaquin R. Winfield, Auburn, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, Richard Lombardo, Esq., of Counsel, Albany,
NY, for Defendants.

### *REPORT AND RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me for
Report and Recommendation by the Honorable Lawrence E.
Kahn, Senior United States District Judge, pursuant to 28
U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Joaquin R.
Winfield alleges that Defendant Walter Bishop [1] subjected
him to excessive force, that Defendant Nancy Marocco [2]
conducted a flawed disciplinary hearing, and that Defendant
David LeClair wrongfully imposed a restricted diet on him
and failed to respond properly to his grievances. Currently
pending before the Court is the motion of Defendant David
LeClair [3] to dismiss for failure to state a claim pursuant to
Federal Rules of Civil Procedure 12(b)(6). (Dkt. No. 14.) For
the reasons that follow, I recommend that Defendant's motion
be granted.

### I. BACKGROUND

Plaintiff alleges that he was issued a misbehavior report on
November 26, 2006, for refusing to return his lunch tray.
(Dkt. No. 1 at 8, 10.) Pending a hearing on the misbehavior
report, Defendant LeClair authorized staff to place Plaintiff
on a restricted diet from November 27, 2006, to December
3, 2006. *Id.* at 10. The hearing on the misbehavior report
was held on December 7, 2006. *Id.* at 9. The hearing officer
imposed a penalty of seven days of restricted diet. *Id.* at
11. Defendant LeClair issued a memo to the facility's health
services director stating that Plaintiff would be on a restricted
diet from December 14 through December 20 as a result of
the December 7 hearing. *Id.* at 11–12. Although it is not
entirely clear from the complaint, it appears that Plaintiff
continuously received the restricted diet from November
27 through December 20. Plaintiff appears to allege that,
essentially, he was punished more than once for the conduct
alleged in the misbehavior report because he received the
restricted diet for longer than seven days. [4]

Plaintiff alleges that Defendant Bishop subjected him to
excessive force on December 5, 2006. (Dkt. No. 1 at 4–5.)
Plaintiff alleges that he sent a written complaint about this
incident to Defendant David LeClair. *Id.* at 6.

On December 14, 2006, Plaintiff was served with another
misbehavior report. (Dkt. No. 1 at 14–15.) In preparation
for his disciplinary hearing, Plaintiff requested a videotape
of the incident. *Id.* at 15. Defendant Nancy Marocco
conducted the disciplinary hearing. *Id.* She adjourned and
continued the hearing at least twice. *Id.* at 17–18. Ultimately,
she denied Plaintiff's request to call an inmate witness,
found a photograph of Plaintiff's wrist inadmissible, found
Plaintiff guilty, and sentenced him to nine months of SHU
confinement with loss of privileges and good time credits. *Id.*
at 15, 21.

Plaintiff alleges that he informed Defendant LeClair of his
"inferred fear ... of further punitive informalities resulting
from both the 8th U.S. Constitutional Amendment tort per se
and also the past shown and highly prone history of losing/
or erasing the B–1 c. (S.H.U.) video recordings of probative
value." (Dkt. No. 1 at 7 .)

**\*2** Plaintiff alleges that Defendants' conduct violated
his constitutional rights. (Dkt. No. 1.) Plaintiff alleges
that Defendant LeClair, as the Superintendent of Great
Meadow Correctional Facility, should be held responsible
because he "managed ... daily operation[s] and executed both

the N.Y. State Department of Corrections and the prison policies." (Dkt. No. 1 at 4.)

Defendant LeClair moves to dismiss the claims against him. (Dkt. No. 14.) Plaintiff has opposed the motion. (Dkt. No. 19.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U .S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

## III. ANALYSIS

### A. Personal Involvement

Plaintiff alleges that Defendant LeClair is liable because he, as the Superintendent of Great Meadow Correctional Facility, "managed its daily operation and executed both the N.Y. State Department of Corrections and the prison policies." (Dkt. No.

1 at 4.) Defendant's motion to dismiss does not address this claim. I recommend that the claim be dismissed *sua sponte.*

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v.. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). [5]

**\*3** Thus, Defendant LeClair cannot be held liable merely because he, as the Superintendent of Great Meadow Correctional Facility, "managed its daily operation and executed both the N.Y. State Department of Corrections and the prison policies." (Dkt. No. 1 at 4.) Therefore, I recommend that this claim against Defendant LeClair be dismissed.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Id.* at 112 (citation

omitted). Here, better pleading would not cure the problem with Plaintiff's *respondeat superior* claim against Defendant LeClair. Therefore, I recommend that the claim be dismissed with prejudice.

## B. Restricted Diet

Plaintiff alleges that Defendant LeClair violated his constitutional rights by placing him on a restricted diet for seven days prior to his disciplinary hearing, continuing the restricted diet for seven days after the disciplinary hearing, and 'reimposing' the penalty from December 14 to 20. (Dkt. No. 1 at 11–12.) This claim implicates both the Due Process Clause and the Eighth

Amendment. Defendant argues that Plaintiff has failed to state a claim under either theory. (Dkt. No. 14–1 at 2–5.) Defendant is correct. In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000). In order to demonstrate the existence of a liberty interest, the plaintiff must allege facts plausibly suggesting that he was subjected to a deprivation that imposed "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Plaintiff here cannot allege such facts. The Second Circuit has held that the imposition of a restricted diet does not impose an atypical and significant hardship on inmates. *McEachin v. McGuinnis,* 357 F.3d 197, 200–01 (2d Cir.2004). As Defendant notes, district courts in this circuit have routinely dismissed due process claims regarding restricted diets. (Dkt. No. 14–1 at 3–4, collecting cases.) Therefore, I recommend that the Court dismiss Plaintiff's due process claim with prejudice.

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). To state an Eighth Amendment conditions of confinement claim, a plaintiff must allege facts plausibly suggesting both an objective and a subjective component. *Id.* at 834. To satisfy the objective component, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities."

*Id.* Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). The Second Circuit has held that allegations regarding the imposition of a restricted diet do not state an Eighth Amendment claim absent an allegation that the diet was nutritionally inadequate, posed an imminent health risk, or physically injured the prisoner. *McEachin,* 357 F.3d at 199–201. Here, Plaintiff makes no such claims. As Defendant notes, district courts in this circuit have routinely dismissed similar claims. (Dkt. No. 14–1 at 4–5.) Therefore, I recommend that the Court dismiss this claim. Because there is a possibility that better pleading could cure the defect with this claim, I recommend that Plaintiff be granted leave to amend.

## C. Grievances

**\*4** Plaintiff alleges that he sent a written complaint about the alleged excessive force incident involving Defendant Bishop to Defendant LeClair. (Dkt. No. 1 at 6.) He also alleges that he informed Defendant LeClair of his "inferred fear ... of further punitive informalities resulting from both the 8th U.S. Constitutional Amendment tort per se and also the past shown and highly prone history of losing/or erasing the B–1 c. (S.H.U.) video recordings of probative value." (Dkt. No. 1 at 7.) Defendant has not addressed these claims. I find that they are subject to *sua sponte* dismissal.

Plaintiff has failed to sufficiently allege Defendant's personal involvement. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327, 344–45 (S.D.N.Y.2000). *See also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Moreover, "[i]t has been held that an appropriate guiding principle for determining personal responsibility is where a grievance alleges an ongoing constitutional violation, the supervisory official who reviews the grievance is personally involved if he is confronted with a situation that he can remedy directly. If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation." *Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N.Y.2008) (Hurd, J.). Here, Plaintiff complained to Defendant LeClair of two one-time events: the excessive force and the allegedly

flawed disciplinary hearing. Although Plaintiff alleges that there was a "highly prone history of losing/or erasing the B–1 c. (S.H.U.) video recordings of probative value" prior to his hearing, he has not alleged that Defendant LeClair was aware of this history. Accordingly, Plaintiff has not adequately alleged that Defendant LeClair failed to remedy a wrong after learning of the violation. Therefore, I recommend that the Court dismiss this claim *sua sponte.* Because Plaintiff could conceivably cure the defect with this claim through better pleading, I recommend that he be granted leave to amend.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendant LeClair's motion to dismiss for failure to state a claim (Dkt. No. 14) be *GRANTED* without leave to amend the due process claim and with leave to amend the Eighth Amendment claim; and it is further

**RECOMMENDED** that Plaintiff's *respondeat superior* claim against Defendant LeClair be dismissed *sua sponte* without leave to amend; and it is further

**\*5 RECOMMENDED** that Plaintiff's claims that Defendant LeClair did not respond to his grievances be dismissed *sua sponte* with leave to amend.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

---

Footnotes

1    This defendant was identified in the complaint as "John Doe Bishop." Pursuant to a request from Defendants, I directed the Clerk to list his correct name on the docket. (Dkt. No. 18.) I will refer to him throughout this action as Walter Bishop.

2    This defendant was identified in the complaint as "Nancy Machell." Pursuant to a request from Defendants, I directed the Clerk to list her correct name on the docket. (Dkt. No. 18.) I will refer to her throughout this action as Nancy Marocco.

3    Defendants Walter Bishop and Nancy Marocco have answered the complaint. (Dkt. No. 15.)

4    Specifically, Plaintiff alleges that "though only verbally enlightened and *never* checked incident to by any medical staff therein pursuant to Dept. protocols, the resulting misbehavior report *at least* provided an initial basis of/or for and/or by both § § 304.2(c) of Title 7 N.Y.C.R.R.'s N.Y. State Dept. of Correctional Svcs. Directive 4933 of Ch. VI and § 138.5 of N.Y. States Correction Law. Any properly corresponding punitive sanction would have been and was imposed and completed in a/the pre-hearing context commencing the morning meal of breakfast on November 27, 2006, and ending the evening/or dinner meal of December 3, 2006. Both the second encaptioned defendant Superintendent David LeClair's cognizance, as well as, twice (2x) the above allegations are demonstrated by the on record actions of Defendant D. LeClair's designated delegate Lt. K. Smith four days later on the date of December 7, 2006." (Dkt. No. 1 at 8–9, emphases in original.)

5    The Supreme Court's decision in *Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937 (2009) arguably casts in doubt the continued viability of some of the categories set forth in *Colon. See Sash v. United States,* 674 F.Supp.2d 531 (S.D.N.Y.2009). Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2773346
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Joaquin R. WINFIELD, Plaintiff,
v.
Walter BISHOP, David Leclair,
Nancy Marocco, Defendants.

No. 9:09–CV–1055 (LEK/
GHL).    |    July 12, 2010.

**Attorneys and Law Firms**

Joaquin R. Winfield, Auburn, NY, pro se.

Richard Lombardo, New York State Attorney General,
Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report–
Recommendation filed on June 21, 2010, by the Honorable
George H. Lowe, United States Magistrate Judge, pursuant
to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York. Report–Rec. (Dkt. No. 22). Within
fourteen days after a party has been served with a copy of
a Magistrate Judge's Report–Recommendation, the party "may
serve and file specific, written objections to the proposed
findings and recommendations," FED. R. CIV. P. 72(b),
in compliance with L.R. 72.1. Plaintiff Joaquin Winfield
("Plaintiff") filed his objections ("Objections") with respect
to Magistrate Judge Lowe's Report–Recommendation on July
8, 2010.

It is the duty of this Court to "make a de novo determination
of those portions of the report or specified proposed findings
or recommendations to which objection is made." 28 U.S.C.
§ 636(b) (1). Where, however, an objecting " 'party makes
only conclusory or general objections, or simply reiterates
his original arguments, the Court reviews the Report and
Recommendation only for clear error .' " *Farid v. Bouey,* 554

F.Supp.2d 301, 307 (N.D.N.Y.2008) (quoting *McAllan v. Von
Essen,* 517 F.Supp.2d 672, 679 (S.D.N.Y.2007) (citations and
quotations omitted)); see also *Brown v. Peters,* No. 95–CV–
1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept. 22, 1997).
"A [district] judge ... may accept, reject, or modify, in whole
or in part, the findings or recommendations made by the
magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Report–Recommendation and Objections
thereto, the Court notes, firstly, that the bulk of Plaintiff's
Objections is an exact duplication of his previously filed
Opposition to Defendant LeClair's Motion to dismiss.
*Compare* Dkt. Nos. 14 *and* 27 at 1–11. To the extent that
Plaintiff thereby reiterates his original arguments, the Court
has reviewed the Report–Recommendation only for clear
error and has determined that no such error is present.

Plaintiff makes specific objections to Part II.A. of the Report–
Recommendation, *see* Dkt. No. 22 at 5–7, wherein Magistrate
Judge Lowe recommends *sua sponte* dismissal of Plaintiff's
*respondeat superior* claim against Defendant LeClair for
lack of personal involvement. Objections at 12–14. In
recommending dismissal of Plaintiff's *"respondeat superior*
claim," Magistrate Judge Lowe notes that, while Defendant
LeClair's Motion did not addressed this claim, Plaintiff's
Complaint should be dismissed insofar as it alleges LeClair's
liability under § 1983 by reason of the latter's position
of Superintendent or Warden of the Great Meadow State
Prison and, "as such, h[is] manag[ing] its daily operation and
execut[ing] both the N.Y. State Department of Corrections
and the prison policies." [1] Dkt. Nos. 1 at 4; 22 at 5. The
substance of Plaintiff's objection to the Magistrate Judge's
recommendation is difficult to discern. *See* Dkt. No. 27 at 12–
14. It appears that Plaintiff objects to any construction of his
claims that is based on a theory of *respondeat superior. Id.* at
13. To the extent that Plaintiff is denying that he ever made
the claim that the Magistrate Judge construed and dismissed,
the construction error is harmless. To the extent that such a
claim was advanced, the Report–Recommendation should be
approved for the reasons stated therein.

**\*2** Plaintiff may instead be objecting to the recommendation
that the Court dismiss with prejudice Plaintiff's due process
claims. In this regard, Plaintiff's Objections are unavailing.
As noted in the Report–Recommendation, case law from this
Circuit makes clear, that absent allegations that a restricted
diet endangers an inmate's health, a due process claim based
on the imposition of such a diet is incognizable, including
in instances where that imposition was for a longer duration

than that endured by Plaintiff. Dkt. 22 at 7–8. Plaintiff has not alleged in his Complaint that the restricted diet imposed upon him endangered his health and has, in fact, quoted language from a communication allegedly signed by Defendant LeClair stressing that the restricted diet should be "wholesome and nutritious" and should be stopped if it is determined that the diet "is causing physical harm to the [Plaintiff]." Dkt. No. 1; *see also* Objections at 13–14. Therefore, the Court adopts the Magistrate Judge's recommendation that Plaintiff's due process claim be dismissed with prejudice.

Plaintiff raises no specific objection to the Magistrate Judge's recommendation that his Eighth Amendment claim be dismissed without prejudice. As noted above, the Court finds no clear error in this finding and hereby adopts that recommendation.

Accordingly, it is hereby

**ORDERED,** that the Report–Recommendation (Dkt. No. 22) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Defendant LeClair's Motion to dismiss (Dkt. No. 14) is **GRANTED** without leave to amend the due process claim but with leave to amend the Eighth Amendment claim; and it is further

**ORDERED,** that Plaintiff's *respondeat superior* claim against Defendant LeClair is **DISMISSED** *sua sponte* without leave to amend; and it is further

**ORDERED,** that Plaintiff's claims that Defendant LeClair did not respond to his grievances is **DISMISSED** *sua sponte* with leave to amend; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

Footnotes

1    In finding Plaintiff to have alleged a *respondeat superior* claim under § 1983, Magistrate Judge Lowe appears to have been affording Plaintiff, a *pro se* litigant, the special solicitude that this Court owes such litigants. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*pro se* pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they suggest."). Nowhere in Plaintiff's Complaint is a *respondeat superior* claim explicitly announced, but, as Magistrate Judge Lowe notes, one could be inferred from the above-quoted language and other allegations in the Complaint. *See, e.g.,* Dkt. No. 1 at 4, 6, 9–10.